# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVIS NICHOLS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>Defendants. | Honorable Lorna G. Schofield<br><br>Case No. 1:21-cv-03362 (LGS) (SN) |
| VICTOR J. TONER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>Defendants. | Honorable Lorna G. Schofield<br><br>Case No. 1:21-cv-04058 (LGS) (SN) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE RMG-ROMEO INVESTOR GROUP FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     INTRODUCTION ......................................................................................................... 1

II.    SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND ...................... 2

III.   ARGUMENT.................................................................................................................. 7

     A.    The Related Actions Should Be Consolidated............................................................ 7

     B.    The PSLRA Standard for Appointing Lead Plaintiff.................................................. 8

     C.    The RMG-Romeo Investor Group Is the "Most Adequate Plaintiff" ......................... 9

          1.    The RMG-Romeo Investor Group Has Satisfied the PSLRA's
              Procedural Requirements .................................................................................10

          2.    The RMG-Romeo Investor Group Has the Largest Financial Interest in
              the Relief Sought by the Class ..........................................................................10

     D.    The RMG-Romeo Investor Group Is Qualified Under Rule 23 .............................. 11

          1.    The RMG-Romeo Investor Group Claims Are Typical of the Claims of
              the Class ..........................................................................................................12

          2.    The RMG-Romeo Investor Group Will Fairly and Adequately
              Represent the Class' Interests ...........................................................................12

          3.    This Court Should Approve the RMG-Romeo Investor Group's Choice
              of Counsel .......................................................................................................13

IV.   CONCLUSION............................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) .................................................................................. 7

*Faig v. Bioscrip, Inc.*,
   No. 13-cv-6922, 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) .................................. 7

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   No. 17 CIV. 1446 (PAE), 2017 WL 2491494 (S.D.N.Y. June 6, 2017) .................................. 12

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
   No. 16-CV-03495, 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016)...................................... 11, 13

*In re Drexel Burnham Lambert*, *Grp. Inc.*,
   960 F.2d 285 (2d Cir. 1992)...................................................................................... 12

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)...................................................................................... 7

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................... 7, 8,

*Kux-Kardos v. Vimpelcom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016)......................................................................... 7

*Logan v. QRx Pharma Ltd.*,
   No. 15 CIV. 4868 (PAE), 2015 WL 5334024 (S.D.N.Y. Sept. 14, 2015)................................. 12

*Peifa Xu v. Gridsum Holding Inc.*,
   No. 18 CIV. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) .................................. 10

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Tele. Corp.*,
   No. CV 09-3007(SJF)(AKT), 2010 WL 3924862 (E.D.N.Y. Aug. 17, 2010) .......................... 7

*Xiangdong Chen v. X Fin.*,
   No. 19-CV-6908-KAM-SJB, 2020 WL 2478643 (E.D.N.Y. May 13, 2020).......................... 12

**Statutes**

15 U.S.C. § 78j(b) ........................................................................................................... 1

15 U.S.C. § 78t(a) ........................................................................................................... 1

15 U.S.C. § 78u-4(a)(1) .................................................................................................. 8

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................ 10

15 U.S.C. § 78u-4(a)(3)(A)(i) ........................................................................................... 2, 8

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................... 1, 9

15 U.S.C. § 78u-4(a)(3)(B)(i) .............................................................................................. 2

15 U.S.C. § 78u-4(a)(3)(B)(ii) ............................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ......................................................................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ....................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................. 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ............................................................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................... 1, 2, 13

15 U.S.C. § 78u-4(a)(3)(B)(vi) ............................................................................................ 1

15 U.S.C. § 78u-4(3)(B)(i) .................................................................................................. 8

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 2, 9-12

Putative class members Travis Nichols, Sion Sung, and Daniel Theriault (collectively, the "RMG-Romeo Investor Group"), by its counsel, respectfully submits this Memorandum of Law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (i) consolidating the above-captioned related actions (the "Related Actions"); (ii) appointing the RMG-Romeo Investor Group as lead plaintiff pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B); (iii) approving the RMG-Romeo Investor Group's selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as lead counsel under 15 U.S.C. §§ 78u-4(a)(3)(B)(v); and (iv) granting such other and further relief as the Court may deem just and proper.

The RMG-Romeo Investor Group believes that it has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed lead plaintiff and that its choice of counsel should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## I.   INTRODUCTION

Presently pending in this District are at least two related securities class actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against Romer Power Inc. ("Romeo" or the "Company") formerly known as RMG Acquisition Corp. ("RMG"); Lionel E. Selwood, Jr., the Company's President and Chief Executive Officer, and a member of the Company's board of directors; Lauren Webb, the Company's Chief Financial Officer and a member of the Company's board of directors; as well as certain current directors of Romeo, and former directors of RMG ("Defendants") for violations of federal securities laws on behalf of a class of investors that purchased or otherwise acquired Romeo securities between November 5, 2020 and March 30, 2021, both dates inclusive (the "Class Period").

Pursuant to the PSLRA, this Court must appoint the member of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  The RMG-Romeo Investor Group, with losses of approximately $237,245, believes it is entitled to appointment as lead plaintiff as the movant with the largest financial interest that otherwise meets the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* Declaration of Jeffrey P. Campisi in Support of the Motion of the RMG-Romeo Investor Group for Consolidation of the Related Actions, Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Campisi Decl."), dated June 15, 2021, Exs. A-C attached thereto.

The RMG-Romeo Investor Group fully understands the lead plaintiff's obligations under the PSLRA and is willing and able to undertake the responsibilities of a lead plaintiff to guarantee vigorous prosecution of the Action.  *See id.*

The RMG-Romeo Investor Group also respectfully requests that the Court approve Kaplan Fox as lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class").  Kaplan Fox is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors.  *See* Campisi Decl., Ex. D.

Accordingly, the RMG-Romeo Investor Group respectfully requests that the Court consolidate the Related Actions, appoint it as lead plaintiff for the Class and approve its selection of lead counsel.

## II.    SUMMARY OF THE ACTION AND PROCEDURAL BACKGROUND

On April 16, 2021, the *Nichols* Action was filed by Travis Nichols, a member of the RMG-Romeo Investor Group, alleging violations of Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of purchasers of Romeo securities during the Class Period.  Also on April 16, 2021, in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, notice of the *Nichols* Action

was published to class members on *Globe Newswire* (the "Notice") advising purchasers of Romeo securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and alleged conduct. *See* Campisi Decl., Ex. E. The Notice further advised class members of their right to move the Court to be appointed Lead Plaintiff until June 15, 2021.

Accordingly, the RMG-Romeo Investor Group now moves this Court to be appointed as lead plaintiff.

The Related Actions allege claims brought under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of a class of all persons and entities who purchased the publicly traded securities of Romeo during Class Period. *Nichols Action*, Compl. ¶ 1.

On February 12, 2019, RMG, a New York City-based special purpose acquisition company, or SPAC, announced that it closed its initial public offering of 20 million units at $10 per share, resulting in gross proceeds of $200 million. *Id.* ¶ 2. The units began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "RMG.U". *Id.* Each unit consisted of one share of the Company's Class A common stock and one-third of one warrant, with each whole warrant enabling the holder thereof to purchase one share of Class A common stock at a price of $11.50 per share. *Id.* When the shares of Class A common stock and warrants began separate trading, they traded on the NYSE under the symbols "RMG" and "RMG.WS." *Id.*

RMG was formed by Defendants D. James Carpenter ("Carpenter"), Robert Mancini ("Mancini") and Philip Kassin ("Kassin"), and was formed for the purpose of entering into a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses in the diversified resources and industrial materials sectors. *Id.* ¶ 3.

On October 5, 2020, RMG announced a definitive agreement for a business combination with Defendant Romeo that would result in Romeo becoming a publicly listed company. *Id.* ¶ 4. Romeo was founded in 2016, and according to its SEC filings, Romeo purports to be an industry leading energy technology company focused on designing and manufacturing lithium-ion battery modules and packs for commercial electric vehicles. *Id.* Romeo asserts that through its industry leading energy dense battery modules and packs, it enables large-scale sustainable transportation by delivering safe, longer lasting batteries with shorter charge times. *Id.* Romeo's core product offering purportedly serves the battery electric vehicle (BEV) medium duty short haul and heavy duty long haul trucking markets, as well as specialty trucking and buses. *Id.*

Upon closing of the transaction, the combined entity would be named Romeo Power, Inc. and would remain listed on the NYSE and trade under the new ticker symbol "RMO" and its warrants would trade under the new symbol "RMO.WT". *Id.* ¶ 5.  Under the proposed transaction, at closing, Romeo would receive approximately $340 million in cash, which was a combination of RMG cash and cash from a PIPE (private investment in public entity) investment. *Id.*

During the Class Period, Defendants represented that for 2020 Romeo estimated revenue of $11 million, and for 2021 Romeo estimated revenue of $140 million. *Id.* ¶ 6.  Defendants further represented that Romeo had "key partnerships" and close relationships with LG Chem, Samsung, Murata and SK Innovation, which manufacture battery cells, a key component in Romeo's battery modules and packs and that they were supplying Romeo with battery cells.  *Id.*  Furthermore, Defendants represented that Romeo had the capacity and supply to meet end-user demand for Romeo's products, that Romeo was not beholden "to any level of the value chain", that its supply was hedged, and that it did not see any material challenges that would hamper growth. *Id.*

On December 29, 2020, Romeo announced that it completed its business combination with

RMG. *Id.* ¶ 7.  The business combination was approved by RMG stockholders in a special meeting held on December 28, 2020 and consummated on December 29, 2020.  *Id.*  Beginning on December 30, 2020, Romeo's common stock and warrants began trading on  the NYSE under the new ticker symbols "RMO" and "RMO.WT".  *Id.*

Unknown to investors, Romeo was suffering from an acute shortage of high quality battery cells, which are key raw materials for Romeo's battery packs and modules, due to supply constraints.  *Id.* ¶ 8.  Contrary to Defendants' representations, (i) Romeo  had only two battery cell suppliers, not four, (ii) the future potential risks that Defendants warned of concerning supply disruption or shortage had already occurred and were already negatively affecting Romeo's business, operations and  prospects, (iii) Romeo did not have the battery cell inventory to accommodate end-user demand and ramp up production in 2021, (iv) Romeo's supply constraint was a material hindrance to Romeo's revenue growth, and (v) Romeo's supply chain for battery cells was not hedged, but in fact, was totally at risk and beholden to just two battery cell suppliers and the spot market for their 2021 inventory.  *Id.*  Given the supply constraint that Romeo was experiencing during the Class Period, Defendants had no reasonable basis to represent that the Company had the ability to meet customer demand and that it would support growth in revenue in 2021.  *Id.*

Then, on March 30, 2021, after the market closed, Romeo issued a press release  and filed a report with the SEC on Form 8-K that disclosed its financial results for the quarter and year ended December 31, 2020, and conducted a conference call with investors and analysts. Defendants shocked investors by disclosing that the Company's production had been hampered by a shortage in supply of battery cells and that its estimated 2021 revenue would therefore be reduced by approximately 71-87%:

> Regarding our 2021 outlook, we expect that our near term production and revenues will be constrained by the shortage in supply of battery cells. As the electric vehicle industry has experienced massive acceleration in recent months, the demand for raw materials and cells has outpaced supply. We expect that this cell shortage will result in Romeo Power's full year 2021 revenues being materially lower than originally projected. While frustrated, by this delay in bringing our solutions to market, we are working diligently with our preferred cell supply partners to secure allocation and continuous cell innovation for the near-intermediate and longer-term. . . .

> **2021 Outlook**

> As global electrification of the powertrain has hit an inflection point, the industry is experiencing a massive acceleration in growth and the demand for raw materials is outpacing supply. Romeo Power is currently subject to these supply constraints and, as a result of the significant shortfall in battery cell capacity industrywide, Romeo Power now expects its revenue for 2021 to be in the range of $18-40 million. The Company is currently pursuing extensive discussions with several preferred providers regarding establishing long-term cell supply agreements. . . .

*Id.* ¶ 9.

During a conference call with investors after the disclosure of Romeo's financial results and projected results, Defendant Selwood, Jr. disclosed the following concerning Romeo's battery cell suppliers:

> [Analyst]: . . . I just kind of want to hear how that went down, when you first realized there was a serious problem with the supply that cut the revenue, because part of the story I thought was you know, you have four suppliers, four main cell suppliers well down to your selection process from I get you get the 100 and 10 to 4 and part of the investment thesis on this is that, because you had spread out these relationships across the four the best [c]ell suppliers in the world, that we could have really managed the risk or at least had visibility on something like this. So I'm curious, when did it first come up and was it all four cell suppliers at the same time? Or is there kind of a disproportionate just dependency on one or two of them? My first question.

> [Defendant Selwood, Jr.]: Hey, Adam. Thanks again for joining us. So, just a quick clarification, four part numbers, not four different cell suppliers, so our, our preferred cell suppliers that we -- that we put in the forecast are LG and Samsung, okay. I just wanted to clarify from those two suppliers.

*Id.* ¶ 10.

6

On March 31, 2021, Romeo shares declined from a closing price on March 30, 2021 of $10.37 per share to close at $8.33 per share, a decline of $2.04 per share, or almost 20%, on heavier than usual volume of over 20 million shares. *Id.* ¶ 12. Similarly, the price of Romeo warrants substantially declined from a closing price on March 30, 2021 of $0.37 per warrant, to close at $0.12 per warrant on April 1, 2021, a decline over two days of $0.25 per warrant, or by approximately 69% on very heavy volume.[1]

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall appoint a lead plaintiff "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Faig v. Bioscrip, Inc.*, No. 13-cv-6922, 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013) ("The Court must decide whether to consolidate the actions before deciding on the competing motions for appointment as lead plaintiff.").  There are at least two related securities class actions pending in this District.

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Kux-Kardos v. Vimpelcom, Ltd.*, 151 F. Supp. 3d 471, 474 (S.D.N.Y. 2016);  *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecommunications. Corp.*, No. CV 09-3007(SJF)(AKT), 2010 WL 3924862, at *2 (E.D.N.Y. Aug. 17, 2010); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 124 (E.D.N.Y. 2008).   The Court has "broad discretion to determine whether consolidation is appropriate" under Rule 42(a). *Bioscrip*, 2013 WL 6705045, at *1 (citing *Johnson v. Celotex Corp.*,

---

[1] https://quotes.freerealtime.com/quotes/RMO.WS/Historical (last visited June 15, 2021).

899 F.2d 1281, 1284 (2d Cir. 1990)); *Kux-Kardos*, 151 F. Supp. 3d at 475 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)).  Courts have recognized that class action shareholder suits are well-suited for consolidation because unification conserves judicial resources, expedites pretrial proceedings, reduces case duplication, and lessens the confusion and delay that may result from prosecuting related class action cases separately.  *See*, *e.g.*, *Kaplan*, 240 F.R.D. at 92 (consolidating securities class actions with common allegations noting "the well[-]recognized principle that the consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs") (internal citation omitted).

The Related Actions concern the same defendants, arise out of the same or similar courses of misconduct during the same class periods, and involve substantially similar alleged issues of fact and law.  *Compare Nichols* Action Complaint, 21cv3362, ECF No. 12, *with Toner* Action Complaint, 21cv4058, ECF No. 1.  Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a), and the Court should grant the motion for consolidation of the Related Actions.

**B.      The PSLRA Standard for Appointing Lead Plaintiff**

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1); 78u-4(3)(B)(i).  Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)      of the pendency of the action, the claims asserted therein, and
> the purported class period; and

> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims.  15 U.S.C. § 78u-4(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

> (aa)    has either filed the complaint or made a motion in response to a notice . . .;
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### C.    The RMG-Romeo Investor Group Is the "Most Adequate Plaintiff"

The RMG-Romeo Investor Group respectfully submits that it is the "most adequate plaintiff" because it has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.  In addition, members of the RMG-Romeo Investor Group have duly signed and filed a certification stating that they are willing to serve as representative parties on behalf of the class.  *See* Campisi Decl., Ex. A.  Further, members of the RMG-Romeo Investor Group have submitted a joint declaration concerning their ability and willingness to jointly prosecute the claims alleged in the Related Actions. *See* Campisi Decl., Ex. C.

9

Finally, the RMG-Romeo Investor Group has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See id.*, Ex. D (Kaplan Fox Firm Resume).    Accordingly, the RMG-Romeo Investor Group satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff and, therefore should be appointed lead plaintiff.

### 1.    The RMG-Romeo Investor Group Has Satisfied the PSLRA's Procedural Requirements

The Action was filed on April 16, 2021 and Notice was published the same day. *See id.*, Ex. E.  Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on June 15, 2021. *See* 15 U.S.C. § 78u-4(a)(3)(A).  Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, the RMG-Romeo Investor Group timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

### 2.    The RMG-Romeo Investor Group Has the Largest Financial Interest in the Relief Sought by the Class

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action.  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see Peifa Xu v. Gridsum Holding Inc.*, No. 18 CIV. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018).  Here, the RMG-Romeo Investor Group suffered losses of approximately $237,245 as a result of investing in Romeo securities. *See* Campisi Decl., Ex. C.  The RMG-Romeo Investor Group is not aware of any other movant with a larger financial interest and believes it has the largest financial interest of any lead plaintiff movant.  Therefore, the RMG-Romeo Investor Group believes it is presumptively entitled to appointment as the lead plaintiff.

10

**D.      The RMG-Romeo Investor Group Is Qualified Under Rule 23**

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representatives.  *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-CV-03495, 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016) ("For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'") (citation omitted).  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed below, each member of the RMG-Romeo Investor Group satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as lead plaintiff for the Related Actions.

11

### 1. The RMG-Romeo Investor Group Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct.  *See, e.g.*, *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at \*5 ("The typicality requirement is satisfied if each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (internal citations omitted); *see Xiangdong Chen v. X Fin.*, No. 19-CV-6908-KAM-SJB, 2020 WL 2478643, at \*4 (E.D.N.Y. May 13, 2020); *In re Aratana Therapeutics Inc. Sec. Litig.*, No. 17 CIV. 880 (PAE), 2017 WL 2491494, at \*4 (S.D.N.Y. June 6, 2017).

The claims asserted by the RMG-Romeo Investor Group are based on the same legal theory and arise out of the same course of events as the other purported class members' claims.  Each member of the RMG-Romeo Investor Group purchased Romeo securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby.  *Logan v. QRx Pharma Ltd.*, No. 15 CIV. 4868 (PAE), 2015 WL 5334024, at \*3 (S.D.N.Y. Sept. 14, 2015) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose).  Thus, the RMG-Romeo Investor Group satisfies the typicality requirement of Rule 23(a).

### 2. The RMG-Romeo Investor Group Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4).  A lead plaintiff

12

is adequate where it has retained counsel that is "qualified, experienced and generally able" to conduct the litigation and does not have interests that are "antagonistic" to the class that it seeks to represent. *In re Drexel Burnham Lambert*, *Grp. Inc.,* 960 F.2d 285, 291 (2d Cir. 1992); *see Xiangdong Chen*, 2020 WL 2478643, at \*4; *In re Aratana*, 2017 WL 2491494, at \*4.  Here, the interests of the RMG-Romeo Investor Group are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism between its interests and those of the class.  As detailed above, the RMG-Romeo Investor Group's claims raise similar questions of law and fact as claims of the members of the class, and its claims are typical of the members of the class. Further, each member of the RMG-Romeo Investor Group has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff.  *See* Campisi Decl., Exs. A, C.  Having suffered substantial losses, the RMG-Romeo Investor Group will be a zealous advocate on behalf of the class.  In addition, the RMG-Romeo Investor Group has selected Kaplan Fox – counsel highly experienced in prosecuting securities class actions – to represent it. *See* Campisi Decl., Ex. D.  Thus, the close alignment of interests between the RMG-Romeo Investor Group and other class members, and the RMG-Romeo Investor Group's strong desire to prosecute the Related Actions on behalf of the class, provide ample reason to grant the RMG-Romeo Investor Group's motion for appointment as Lead Plaintiff.  Accordingly, the RMG-Romeo Investor Group satisfies the prerequisites for appointment as lead plaintiff pursuant to the Exchange Act.

### 3. This Court Should Approve the RMG-Romeo Investor Group's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, 2016 WL 5867497, at \*5 ("There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'") (citations

13

omitted).  The RMG-Romeo Investor Group has retained Kaplan Fox to file moving papers on its behalf seeking appointment as lead plaintiff and to serve as lead counsel to pursue this litigation on behalf of itself and the class.  Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors.  *See* Campisi Decl., Ex. D.  Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

## IV.    CONCLUSION

For all of the foregoing reasons, the RMG-Romeo Investor Group respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint the RMG-Romeo Investor Group as lead plaintiff; (3) approve the RMG-Romeo Investor Group's selection of Kaplan Fox as lead counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated:  June 15, 2021                                      Respectfully submitted,

*/s/ Jeffrey P. Campisi*
Robert N. Kaplan
Hae Sung Nam
Jeffrey P. Campisi
Jason A. Uris
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
rkaplan@kaplanfox.com
hnam@kaplanfox.com
jcampisi@kaplanfox.com
juris@kaplanfox.com

*Attorneys for Movant the RMG-Romeo*
*Investor Group and Proposed Lead Counsel*
*for the Proposed Class*

14

**CERTIFICATE OF SERVICE**

I, Jeffrey P. Campisi, hereby certify that, on June 15, 2021, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

<i>/s/ Jeffrey P. Campisi</i>
Jeffrey P. Campisi

1