**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVIS NICHOLS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>Defendants. | Case No. 1:21-cv-03362-LGS<br><br>CLASS ACTION |
| VICTOR J. TONER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>Defendants. | Case No. 1:21-cv-04058-LGS<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONSOLIDATE THE RELATED ACTIONS, APPOINT DALE DAVISON AS LEAD PLAINTIFF AND APPROVE THE SELECTION OF LEAD COUNSEL**

011001-11/1561720 V1

Dale Davison ("Mr. Davison" or "Movant") respectfully submits this Memorandum of Law in support of his Motion for: (1) consolidation of the two above-captioned related actions; (2) appointment as Lead Plaintiff pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approval of his selection of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as Lead Counsel for the class; and (4) granting such other and further relief as the Court may deem just and proper.

## I.    INTRODUCTION

The two above-captioned actions allege that Romeo Power, Inc. ("Romeo," "RMO," or the "Company") and certain of its officers made materially false and misleading statements in violation of the Securities Exchange Act of 1934. Specifically, the actions allege Defendants made material misrepresentations and omissions concerning Romeo Power Inc., f/k/a/ RMG Acquisition Corp.'s ("RMO," "Romeo" or the "Company") business, operations and prospects. Given that the two actions assert similar claims against common Defendants on behalf of overlapping classes of investors that purchased Romeo securities during the same class period, the cases should be consolidated. *See* Fed. R. Civ. P. 42(a).

Next, pursuant to the PSLRA, the Court is to appoint "the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

1

Here, Dale Davison respectfully submits that he is the "most adequate plaintiff" under the PSLRA's analysis and should be appointed Lead Plaintiff. Dale Davison believes he has the largest financial interest in the above-captioned actions by virtue of his substantial investments in RMO securities during the alleged class period. *See* Certification, Loss Chart, and Declaration attached to the Declaration of Lucas E. Gilmore ("Gilmore Decl."), Exhibits ("Ex.") A, B, and C, submitted herewith; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Specifically, Dale Davison purchased a total 21,000 RMO securities and suffered over $339,653 in losses during the alleged class period.

## II.    FACTUAL BACKGROUND

The Related Actions are securities fraud class action suits brought on behalf of investors who purchased the publicly traded securities of Romeo during the period October 5, 2020 through March 30, 2021, inclusive (the "Class Period").

RMG Acquisition Corp. ("RMG") is a New York City-based special purpose acquisition company, or SPAC, formed for the purpose of entering into a business combination in the diversified resources and industrial materials sectors.  Romeo was founded in 2016, and purports to be an industry leading energy technology company focused on designing and manufacturing lithium-ion battery modules and packs for commercial electric vehicles. Romeo asserts that through its industry leading energy dense battery modules and packs, it enables large-scale sustainable transportation by delivering safe, longer lasting batteries with shorter charge times. Romeo's core product offering purportedly serves the battery electric vehicle (BEV) medium duty short haul and heavy duty long haul trucking markets, as well as specialty trucking and buses.

The Class Period begins on October 5, 2020, when RMG announced a definitive agreement for a business combination with Romeo that would result in Romeo becoming a publicly listed company. Upon closing of the transaction, the combined entity would be named Romeo Power,

Inc. and would remain listed on the NYSE and trade under the new ticker symbol "RMO" and its warrants would trade under the new symbol "RMO.WT". Under the proposed transaction, at closing, Romeo would receive approximately $340 million in cash, which was a combination of RMG cash and cash from a PIPE (private investment in public entity) investment.

On December 29, 2020, Romeo announced that it completed its business combination with RMG. The business combination was approved by RMG stockholders in a special meeting held on December 28, 2020 and consummated on December 29, 2020.

The Complaint alleges that during the Class Period, Defendants made materially false and misleading representations and omissions. Specifically, Defendants represented that for 2020 Romeo estimated revenue of $11 million, and for 2021 Romeo estimated revenue of $140 million. The Complaint further alleges that Defendants represented that Romeo had the capacity and supply to meet end-user demand for Romeo's products, that Romeo was not beholden "to any level of the value chain," that its supply was hedged, and that they did not see any material challenges that would hamper growth. But according to the Complaint, in truth, Romeo was suffering from an acute shortage of high quality battery cells, which are key raw materials for Romeo's battery packs and modules, due to supply constraints.

Thus, contrary to Defendants" representations, (i) Romeo had only two battery cell suppliers, not four, (ii) the future potential risks that Defendants warned of concerning supply disruption or shortage had already occurred and were already negatively affecting Romeo's business, operations and prospects, (iii) Romeo did not have the battery cell inventory to accommodate end-user demand and ramp up production in 2021, (iv) Romeo's supply constraint was a material hindrance to Romeo's revenue growth, and (v) Rome's supply chain for battery cells was not hedged, but in fact, was totally at risk and beholden to just two battery cell suppliers

3

and the spot market for their 2021 inventory. Moreover, given the supply constraint that Romeo was experiencing during the Class Period, Defendants had no reasonable basis to represent that the Company had the ability to meet customer demand and that it would support growth in revenue in 2021.

The Complaint alleges that the truth emerged on March 30, 2021 when, after the market closed, Romeo disclosed its financial results for the quarter and year ended December 31, 2020, and conducted a conference call with investors and analysts. Defendants shocked investors by disclosing that the Company's production had been hampered by a shortage in supply of battery cells and that Romeo's estimated 2021 revenue would therefore be reduced by approximately 71-87%. During the conference call with investors, Defendants disclosed that the Company had been relying solely on Samsung and LG for its supply of power cells.

In response to this news, analysts such as Morgan Stanley issued research reports, downgrading Romeo's stock. As a result of these disclosures, Romeo shares declined from a closing price on March 30, 2021 of $10.37 per share to close on March 31, 2021 at $8.33 per share, a decline of $2.04 per share, or almost 20%, on heavier than usual volume, injuring classmembers such as Movant.

## III.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475 (S.D.N.Y. 2011).

Here, consolidation is appropriate because the actions "involve 'substantially identical questions of law and fact.'" *Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *1 (S.D.N.Y. Mar. 27,

4

2019) (quoting *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014)). Both actions allege that Romeo, as well as some of its senior executives, made false statements and misrepresentations about its business, operations, and prospects throughout the Class Period.

**B.    Movant Should Be Appointed Lead Plaintiff**

Dale Davison should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws and provides a presumption in favor of the movant with the "largest financial interest" in the relief sought by the Class and that satisfies the relevant requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Dale Davison believes he is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

**1.    Movant's Motion Is Timely**

Under the PSLRA, any class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). The notice published in this action on April 16, 2021 advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff by the lead plaintiff deadline. *See* Published Notice, Gilmore Decl., Ex. D. Because Movant filed the motion within sixty days of publication of the notice of action, the motion is timely.

**2.    Movant Has The Largest Financial Interest In The Relief Sought By The Class**

To determine which movant has the largest financial interest, the Court is to consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased

during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Lundy v. Ideanomics*, Inc., 2020 WL 7389027, at *1 (S.D.N.Y. Dec. 16, 2020) (quoting *Varghese v. China Shenghuo Pharm. Holdings*, *Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)).

During the Class Period, Dale Davison expended $518,795.20 purchasing 21,000 RMO shares on NYSE during the Class Period at the artificially inflated prices and suffered total losses of $339,653.08. *See* Gilmore Decl., Exs. A and B. To the best of Dale Davison's counsel's knowledge, there is no other movant with a larger financial interest. Therefore, Movant satisfies the PSLRA's prerequisite of having the largest financial interest in the relief sought by the Class.

### 3.    Movant Satisfies The Requirements Of Rule 23

In addition to possessing a significant financial interest, Movant "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "As for satisfying the requirements of Fed. R. Civ. P. 23, at this stage of the litigation, the moving plaintiff is only required to make a preliminary showing that the adequacy and typicality requirements have been met." *In re eSpeed, Inc. Sec. Litig*., 232 F.R.D. 95, 102 (S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted).

Dale Davison's claims are typical because, like all members of the class, he alleges that he purchased Romeo stock during the class period and suffered losses after it was discovered that Defendants' misleading statements artificially inflated its stock price during that period. *Aphria, Inc*., 2019 WL 1522598, at *5.

Movant will also fairly and adequately represent the proposed class. As set forth in greater detail below, Movant has retained counsel highly experienced in vigorously and efficiently

6

prosecuting securities class actions such as this action. There is no evidence of antagonism or conflict between Movant's interests and the interests of the Class. Finally, Movant has the sophistication and interest to ensure this case is vigorously prosecuted. Mr. Davison, a retired co-owner of a construction contracting business, has managed his own investments for over 50 years. *See* Gilmore Decl., Ex. C at ¶2. Moreover, Dale Davison has submitted a signed Certification and declaration confirming his commitment to protecting the interests of the Class. *See* Gilmore Decl., Ex. A, C. Finally, the significant losses he has incurred demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous prosecution of the litigation. *See* Gilmore Decl., Ex. A, B.

## C.    The Court Should Approve Movant's Selection of Counsel

Under the PSLRA, "the most adequate plaintiff shall, subject to approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015).

Dale Davison has selected Hagens Berman to serve as Lead Counsel for the proposed Class. Hagens Berman has previously been appointed as lead counsel and has a demonstrated ability to work in an efficient fashion in the class's best interests. *See* Hagens Berman Firm Résumé, Gilmore Decl., Ex. E. Hagens Berman is one of the country's leading securities litigation firms, advising clients in both individual and class-action cases. *See* Ex. E at page 31. Hagens Berman is currently serving as Lead Counsel or Co-lead Counsel in several high-profile securities class actions, *see* Ex. E at page 32. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## IV.   CONCLUSION

For the foregoing reasons, Dale Davison respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Dale Davison as Lead Plaintiff pursuant to the PSLRA; (3) approve Dale Davison's selection of Hagens Berman to serve as Lead Counsel for the putative Class; and (4) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED:  June 15, 2021                                    HAGENS BERMAN SOBOL SHAPIRO LLP

By     /s/ Nathaniel A. Tarnor
          NATHANIEL A. TARNOR

322 8th Avenue, Suite 802
New York, NY  10001
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
nathant@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
Wesley A. Wong
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff*
*Dale Davison*

## CERTIFICATE OF SERVICE

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Nathaniel A. Tarnor
NATHANIEL A. TARNOR
