UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVIS NICHOLS, on behalf of himself and all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>                    Defendants. | Case No.  1:21-cv-03362-LGS [rel. 1:21-cv-04058-LGS]<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MOATASSEM YOUSEF AND MOATH MAJED YOUSEF FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL |
| VICTOR J. TONER, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>ROMEO POWER, INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK,<br><br>                    Defendants. | Case No.  1:21-cv-04058-LGS [rel. 1:21-cv-03362-LGS] |

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT............................................................................................................................. 7

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.. 7

II.     THE YOUSEF BROTHERS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ...... 8

        A.      The Yousef Brothers Are Willing to Serve as Class Representatives .................... 9

        B.      The Yousef Brothers Have the "Largest Financial Interest" in the Related Actions
                ................................................................................................................................ 9

        C.      The Yousef Brothers Otherwise Satisfy the Requirements of Rule 23 ................ 10

        D.      The Yousef Brothers Will Fairly and Adequately Represent the Interests of the
                Class and Are Not Subject to Unique Defenses.................................................... 14

III.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED... 15

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
    2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)............................................................................11

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ............................................................................................13

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) ..............................................................................................8

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (2d Cir. 1992) ................................................................................................12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ..............................................................................................7

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
    2018 WL 3093965 (S.D.N.Y. June 21, 2018) ........................................................................10

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
    2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................................................................12

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................12

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
    2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ........................................................................13

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................................................10, 13

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)........................................................................10, 15

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)....................................................................................................11

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 WL 2259502 (S.D.N.Y. July 29, 2009) .......................................................................7, 8

*In re Molson Coors Brewing Co. Sec. Litig.*,
    233 F.R.D. 147 (D. Del. 2005) ...............................................................................................15

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................................10

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
   2008 WL 2811358 (S.D.N.Y. July 7, 2008) .......................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................11

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ........................................................................................7

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ......................................................................................11

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)..............................................................................................7

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................................15

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
   1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ......................................................................9, 10

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
   No. 2:11-CV-289,
   2012 WL 12985571 (D. Vt. Apr. 27, 2012)........................................................................14

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)................................................................................................7

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017)....................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................................15

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731,
   2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) .....................................................................14

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................................................13

## Statutes

15 U.S.C. § 78u-4(a)(3) .................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ...............................................................1, 9, 13

## Rules

Fed. R. Civ. P. 23.......................................................................................................... *passim*

Fed. R. Civ. P. 42.................................................................................................................1, 7

Moatassem Yousef and Moath Majed Yousef (collectively, the "Yousef Brothers") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42 ("Rule 42"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Yousef Brothers as Co-Lead Plaintiffs on behalf of a class of all persons and entities who purchased the publicly traded securities of Romeo Power Inc. ("Romeo" or the "Company") (f/k/a RMG Acquisition Corp. ("RMG")) during the period October 5, 2020 through March 30, 2021, inclusive (the "Class Period") (the "Class"); and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  Romeo investors, including the Yousef Brothers, incurred significant losses following the disclosure of the Company's alleged fraud, which caused Romeo's share price to fall sharply, damaging the Yousef Brothers and other Romeo investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the federal securities laws by the same group of defendants arising from the same alleged wrongful misconduct.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies

1

the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   In connection with their purchases of Romeo securities during the Class Period, the Yousef Brothers collectively incurred losses of approximately $434,939.   *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A.  Accordingly, the Yousef Brothers believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, the Yousef Brothers also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, the Yousef Brothers have selected Pomerantz as Lead Counsel for the Class.   Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, the Yousef Brothers respectfully request that the Court enter an order consolidating the Related Actions, appointing the Yousef Brothers as Co-Lead Plaintiffs for the Class, and approving the Yousef Brothers' selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaint in the first-filed of the Related Actions, on February 12, 2019, RMG, a New York City-based special purpose acquisition company, or SPAC, announced that it closed its initial public offering of 20 million units at $10 per share, resulting in gross proceeds of $200 million.  The units began trading on the New York Stock Exchange ("NYSE") under the ticker symbol "RMG.U".  Each unit consisted of one share of the Company's Class A

2

common stock and one-third of one warrant, with each whole warrant enabling the holder thereof to purchase one share of Class A common stock at a price of $11.50 per share. When the shares of Class A common stock and warrants began separate trading, they traded on the NYSE under the symbols "RMG" and "RMG.WS."

RMG was formed by Defendants D. James Carpenter, Robert Mancini, and Philip Kassin, and was formed for the purpose of entering into a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses in the diversified resources and industrial materials sectors.

On October 5, 2020, RMG announced a definitive agreement for a business combination with Romeo that would result in Romeo becoming a publicly listed company. Romeo was founded in 2016, and according to its United States Securities and Exchange Commission ("SEC") filings, Romeo purports to be an industry leading energy technology company focused on designing and manufacturing lithium-ion battery modules and packs for commercial electric vehicles. Romeo asserts that through its industry leading energy dense battery modules and packs, it enables large-scale sustainable transportation by delivering safe, longer lasting batteries with shorter charge times. Romeo's core product offering purportedly serves the battery electric vehicle (BEV) medium duty short haul and heavy duty long haul trucking markets, as well as specialty trucking and buses.

Upon closing of the transaction, the combined entity would be named Romeo Power, Inc. and would remain listed on the NYSE and trade under the new ticker symbol "RMO" and its warrants would trade under the new symbol "RMO.WT". Under the proposed transaction, at closing, Romeo would receive approximately $340 million in cash, which was a combination of RMG cash and cash from a PIPE (private investment in public entity) investment.

During the Class Period, Defendants represented that for 2020 Romeo estimated revenue of $11 million, and for 2021 Romeo estimated revenue of $140 million.  Defendants further represented that Romeo had "key partnerships" and close relationships with LG Chem, Samsung, Murata, and SK Innovation, which manufacture battery cells, a key component in Romeo's battery modules and packs and that they were supplying Romeo with battery cells.  Furthermore, Defendants represented that Romeo had the capacity and supply to meet end-user demand for Romeo's products, that Romeo was not beholden "to any level of the value chain", that its supply was hedged, and that it did not see any material challenges that would hamper growth.

On December 29, 2020, Romeo announced that it completed its business combination with RMG.  The business combination was approved by RMG stockholders in a special meeting held on December 28, 2020 and consummated on December 29, 2020.  Beginning on December 30, 2020, Romeo's common stock and warrants began trading on the NYSE under the new ticker symbols "RMO" and "RMO.WT".

Unknown to investors, Romeo was suffering from an acute shortage of high quality battery cells, which are key raw materials for Romeo's battery packs and modules, due to supply constraints.  Contrary to Defendants' representations, (i) Romeo had only two battery cell suppliers, not four, (ii) the future potential risks that Defendants warned of concerning supply disruption or shortage had already occurred and were already negatively affecting Romeo's business, operations and prospects, (iii) Romeo did not have the battery cell inventory to accommodate end-user demand and ramp up production in 2021, (iv) Romeo's supply constraint was a material hindrance to Romeo's revenue growth, and (v) Romeo's supply chain for battery cells was not hedged, but in fact, was totally at risk and beholden to just two battery cell suppliers and the spot market for their 2021 inventory.  Given the supply constraint that Romeo

4

was experiencing during the Class Period, Defendants had no reasonable basis to represent that the Company had the ability to meet customer demand and that it would support growth in revenue in 2021.

Then, on March 30, 2021, after the market closed, Romeo issued a press release and filed a report with the SEC on Form 8-K that disclosed its financial results for the quarter and year ended December 31, 2020, and conducted a conference call with investors and analysts. Defendants shocked investors by disclosing that the Company's production had been hampered by a shortage in supply of battery cells and that its estimated 2021 revenue would therefore be reduced by approximately 71-87%:

> Regarding our 2021 outlook, we expect that our near term production and revenues will be constrained by the shortage in supply of battery cells. As the electric vehicle industry has experienced massive acceleration in recent months, the demand for raw materials and cells has outpaced supply. We expect that this cell shortage will result in Romeo Power's full year 2021 revenues being materially lower than originally projected. While frustrated, by this delay in bringing our solutions to market, we are working diligently with our preferred cell supply partners to secure allocation and continuous cell innovation for the near-intermediate and longer-term . . . .

> **2021 Outlook**

> As global electrification of the powertrain has hit an inflection point, the industry is experiencing a massive acceleration in growth and the demand for raw materials is outpacing supply. Romeo Power is currently subject to these supply constraints and, as a result of the significant shortfall in battery cell capacity industrywide, Romeo Power now expects its revenue for 2021 to be in the range of $18-40 million. The Company is currently pursuing extensive discussions with several preferred providers regarding establishing long-term cell supply agreements . . . .

During a conference call with investors after the disclosure of Romeo's financial results and projected results, Defendant Lionel E. Selwood, Jr. ("Selwood, Jr.") disclosed the following concerning Romeo's battery cell suppliers:

5

[Analyst]: . . . I just kind of want to hear how that went down, when you first realized there was a serious problem with the supply that cut the revenue, because part of the story I thought was you know, you have four suppliers, four main cell suppliers well down to your selection process from I get you get the 100 and 10 to 4 and part of the investment thesis on this is that, because you had spread out these relationships across the four the best [c]ell suppliers in the world, that we could have really managed the risk or at least had visibility on something like this. So I'm curious, when did it first come up and was it all four cell suppliers at the same time? Or is there kind of a disproportionate just dependency on one or two of them? My first question.

[Defendant Selwood, Jr.]: Hey, Adam. Thanks again for joining us. So, just a quick clarification, four part numbers, not four different cell suppliers, so our, our preferred cell suppliers that we -- that we put in the forecast are LG and Samsung, okay. I just wanted to clarify from those two suppliers.

On March 31, 2021, Morgan Stanley issued a research report in which it downgraded Romeo's target price per share from $12 to $7 and stated the following:

When we initiated on RMO at UW on February 12th our concerns around the battery pack business centered mainly on competition. While we have expressed concerns around potential industry-wide battery shortages in the next few years, we had not contemplated this risk to hit RMO in its very first quarter as a public company. Following management guidance on revenue, opex/R&D/capex and other items, we have made material downward revisions to our forecasts and price target and reiterate our UW rating . . . .

While the company says it is aggressively pursuing paths to achieve long term supply contracts with key cell providers, given the risks in doing so we believe investors should allow for a high degree of margin of safety and should have a significantly better risk/reward before investing in the shares.

On March 31, 2021, Romeo shares declined from a closing price on March 30, 2021 of $10.37 per share to close at $8.33 per share, a decline of $2.04 per share, or almost 20%, on heavier than usual volume of over 20 million shares.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

6

ARGUMENT

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).   Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action is brought against the Company, as well as certain officers or directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Romeo's

securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 WL 2259502, at \*2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

II.    THE YOUSEF BROTHERS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The Yousef Brothers should be appointed Co-Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the Related Actions and otherwise satisfy the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;

> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

8

As set forth below, the Yousef Brothers satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

A.      The Yousef Brothers Are Willing to Serve as Class Representatives

On April 16, 2021, counsel for plaintiff in the first-filed of the Related Actions caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "PSLRA Notice"), which announced that a securities fraud class action had been filed against Defendants, and which advised investors in Romeo securities that they had sixty days from the date of the PSLRA Notice—*i.e.*, until June 15, 2021—to file a motion to be appointed as lead plaintiff. *See* Lieberman Decl., Ex. B.

The Yousef Brothers have filed the instant motion pursuant to the PSLRA Notice, and have attached sworn Certifications attesting that they are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, the Yousef Brothers satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

B.      The Yousef Brothers Have the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, the Yousef Brothers have the largest financial interest of any Romeo investor or investor group seeking to serve as Lead Plaintiffs.  For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during

9

the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).  In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

During the Class Period, the Yousef Brothers collectively: (1) purchased 238,890 shares of Romeo securities; (2) expended $3,867,803 on their purchases of Romeo securities; (3) retained 6,451 of their shares of Romeo securities; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $434,939 in connection with their Class Period purchases of Romeo securities.  *See* Lieberman Decl., Ex. A.  To the extent that the Yousef Brothers possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.    The Yousef Brothers Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1] *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

Fed. R. Civ. P. 23(a).

In making its determination that lead plaintiffs satisfy the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements."). Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including the Yousef Brothers.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v.*

11

*Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

The claims of the Yousef Brothers are typical of those of the Class. The Yousef Brothers allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Romeo. The Yousef Brothers, as did all Class members, purchased Romeo securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Romeo's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, the Yousef Brothers have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions, and submit their choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, the Yousef Brothers are also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation. There is no

evidence of antagonism or conflict between the interests of the Yousef Brothers and the interests of the Class.  Moreover, the Yousef Brothers have submitted signed Certifications declaring their commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and the significant losses incurred by the Yousef Brothers demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Moreover, the Yousef Brothers constitute an appropriate group of the type routinely appointed to serve as Co-Lead Plaintiffs.  *See, e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at \*4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).

The Yousef Brothers likewise have demonstrated their adequacy because they are a small and cohesive group of two brothers who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Lieberman Decl., Ex. D.  Courts routinely appoint more than one investor as Lead Plaintiffs under such circumstances.  *See, e.g.*, *Blue Apron*, 2017 WL

13

6403513, at *4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-*9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

D.     The Yousef Brothers Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Yousef Brothers as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiffs:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    [are] subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of the Yousef Brothers to fairly and adequately represent the Class has been discussed above.  The Yousef Brothers are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, the Yousef Brothers should be appointed Co-Lead Plaintiffs for the Class.

14

III.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should only interfere with lead plaintiffs' choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

The Yousef Brothers have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume.  *See* Lieberman Decl., Ex. E.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer.  *See id.*  Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010.  *Id.*  Most recently, Pomerantz announced as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors that it has reached a $110 million settlement with the company.  *See id.*  As a result of its extensive experience in similar litigation, the choice of counsel by the Yousef Brothers, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Class's claims in this litigation effectively and

15

expeditiously.  The Court may be assured that by approving the Yousef Brothers' selection of Pomerantz as Lead Counsel, the Class members will receive the best legal representation available.  Thus, the Yousef Brothers respectfully urge the Court to appoint Pomerantz to serve as Lead Counsel.

CONCLUSION

For the foregoing reasons, the Yousef Brothers respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Yousef Brothers as Co-Lead Plaintiffs for the Class; and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz as Lead Counsel for the Class.

Dated:  June 15, 2021

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Moatassem Yousef and Moath Majed Yousef and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

16

*Additional Counsel for Moatassem Yousef and Moath Majed Yousef*

17