**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVIS NICHOLS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK, <br><br> Defendants. | Case No. 1:21-cv-03362-LGS <br><br> <u>CLASS ACTION</u> |
| VICTOR J. TONER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK, <br><br> Defendants. | Case No. 1:21-cv-04058-LGS <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS TO CONSOLIDATE THE RELATED ACTIONS, APPOINT DALE DAVISON AS LEAD PLAINTIFF AND APPROVE THE SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT .....................................................................................1

II.    ARGUMENT...............................................................................................................5

       A.    Nguyen/Longan/Yao is an Improper Group ...........................................................5

             1.    The Nguyen/Longan/Yao Group Lacks a Pre-Litigation Relationship .......6

             2.    The Nguyen/Longan/Yao Group's Involvement in the Litigation

                   Thus Far Has Been *De Minimis* ...................................................................7

             3.    The Nguyen/Longan/Yao Group Have No Coherent Plan

                   for Managing the Litigation........................................................................7

             4.    The Nguyen/Longan/Yao Group Are Not Uniquely Qualified

                   to Lead this Litigation.................................................................................8

             5.    Counsel Plainly Arranged this Group..........................................................9

       B.    The Yousef Brothers Have Inflated Their Financial Interest by Including

             Trading Losses Realized Before the Alleged Corrective Disclosure.....................9

III.   CONCLUSION...........................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Afr. v. Jianpu Tech. Inc.*,
    2021 WL 1999467 (S.D.N.Y. May 19, 2021) .................................................................4, 11

*Bang v. Acura Pharm., Inc.*,
    2011 WL 91099 (N.D. Ill. Jan. 11, 2011) ...........................................................................13

*Camp v. Qualcomm Inc.*,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019).........................................................................15

*In re Cendant Corp.*,
    264 F.3d 201 (3rd Cir. 2001) ................................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)..........................................................................10

*Cook v. Allergan plc*,
    2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ......................................................................13

*In re Donnkenny Inc. Secs. Litig.*,
    171 F.R.D. 156 (S.D.N.Y. 1997) ...........................................................................................5

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)....................................................................................................3, 9, 10

*Gutman v. Sillerman*,
    2015 WL 13791788 (S.D.N.Y. Dec. 8, 2015) .......................................................................10

*Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM, Inc.*,
    2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015).........................................................................6

*Jakobsen v. Aphria, Inc.*,
    2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) .....................................................................3, 7

*Karp v. Diebold Nixdorf, Inc.*,
    2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019)........................................................................15

*Khunt v. Alibaba Grp. Holding, Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)..........................................................................5, 7, 10

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019)..................................................................3, 6, 9

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
    2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) .....................................................9, 10

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015)....................................................................8, 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) ..............................................................................8

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001).......................................................................7

*Sallustro v. CannaVest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015)....................................................................4, 11

*Simco v. Aegean Marine Petroleum Network Inc.*,
    2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018) ........................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)........................................................................6

## Federal Statutes

15 U.S.C. § 78u-4 *et seq.* ........................................................................ *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)................................................................................14

## Other Authorities

Fed. R. Civ. P. 23 .........................................................................................................1, 14

Fed. R. Civ. P. 23(a)(4)..................................................................................................14

## I.    PRELIMINARY STATEMENT

Presently, there are four competing motions seeking appointment as lead plaintiff: (1) Dale Davison ("Mr. Davison") (ECF Nos. 34-36); (2) Anh Nguyen, Cameron Longan, and Xiankang Yao (the "Nguyen/Longan/Yao Group") (ECF Nos. 37-39), a group composed of three unrelated retail investors cobbled together by counsel; (3) Moatassem Yousef and Moath Majed Yousef (the "Yousef Brothers"), brothers who reside in Saudi Arabia and Iowa, respectfully, and engaged in highly unusual trading (ECF Nos. 40-43); and (4) Mike Castleberg, an unknown individual investor (ECF Nos. 25-26, 28).[1]

Under the PSLRA, the Court is to appoint the "most capable" plaintiff as lead plaintiff – the movant who has the greatest financial stake in the outcome of the case, ***so long as*** that plaintiff meets the requirements of Rule 23. Here, Mr. Davison is demonstrably the "most capable" plaintiff, since he is the movant with the largest financial interest, who also satisfies Rule 23's requirements.

As reflected in Mr. Davison's revised loss calculation chart submitted herewith, Mr. Davison individually has suffered losses in excess of $339,653 under the last-in, first-out method ("LIFO") of calculation – tens of thousands of dollars more than the LIFO loss claimed individually by any competing movant.[2]

---

[1] Movants Travis Nichols, Sion Sung, and Daniel Theriault ("Nichols/Sung/Theriault") (ECF Nos. 30, 32-33) and Anthony Farah ("Farah") (ECF Nos. 24, 27, 29, 31) filed notices of non-oppositions to the competing motions. ECF Nos. 52-53. Movant Humam Bianouni (ECF Nos. 45-48) filed a withdrawal of motion. ECF No. 51.

[2] Initially, Mr. Davison submitted a loss calculation worksheet that expressed Mr. Davison's losses under a "net loss" method of calculation. In accordance with the Court's June 16, 2021 Order (ECF No. 50), however, Mr. Davison's has revised his loss chart to express Mr. Davison's losses under the LIFO calculation. *See* Declaration of Lucas E. Gilmore in Support of Opposition to Competing Motions to Appoint Dale Davison as Lead Plaintiff ("Gilmore Opp. Decl."), Exhibit ("Ex.") A, filed concurrently herewith. In addition, one Class Period buy transaction of

| Competing Movant | Claimed Individual Loss (Method of Calculation) |
|---|---|
| Dale Davison | $339,653.08 (LIFO) |
| Moath Majed Yousef | $313,041.00 (Not Stated)[3] |
| Mike Castleberg | $204,476.36 (Not Stated) |
| Xiankang Yao | $184,826.23 (LIFO) |
| Cameron Longan | $176,534.69 (LIFO) |
| Moatassem Yousef | $121,898.00 (Not Stated) |
| Anh Nguyen | $83,432.72 (LIFO) |

Moreover, Mr. Davison, a successful construction business owner in the Pacific Northwest, is an experienced investor committed to overseeing counsel and prosecuting the Class' claims. ECF No. 36-3 at ¶ 2. The Court can therefore be assured that Mr. Davison will deliver the vigorous, investor-driven representation to which the Class is entitled.

By contrast, the two competing groups who seek to supplant Mr. Davison – the Nguyen/Longan/Yao Group, and the Yousef Brothers – suffer from a plethora of fatal deficiencies.

*First*, the Nguyen/Longan/Yao Group, is an artificial trio patched together by counsel in an effort to aggregate their individual losses and leapfrog Mr. Davison. Individually, each member of this group has smaller LIFO losses than Mr. Davison. Moreover, the Nguyen/Longan/Yao

---

11,000 Romeo shares was inadvertently identified on Mr. Davison's certification and loss chart as occurring on December 22, 2021. The revised loss calculation worksheet has been corrected to show that those transactions were made on **December 18, 2020**. *Id*. at 1. Mr. Davison, who is presently traveling, will be submitting an amended certification to correct this transposition error on the attached schedule of transactions.

[3] As discussed below, Moath Majed Yousef sold all of his shares a week before the disclosure except for one (and was short shares two weeks before that). In reality he has only between $3.15 and $17.46 in losses. *See* Gilmore Opp. Decl. Exs. C-D.

Group's joint declaration demonstrates that aggregation is improper since they are a random assemblage of unlike individuals that not only had no pre-existing relationship before this action, but apparently did not even know of one another before counsel introduced them just hours before the lead plaintiff filing deadline. *See* ECF No. 39-4 at ¶ 10. In addition, the group has had minimal involvement in the litigation thus far, and has failed to offer a cogent plan for cooperation. *Id*. Moreover, the movants have failed to articulate why the class would benefit from this proposed group of three dispersed investors, as opposed to a single lead plaintiff accountable to the Class. *Id*. Indeed, from the disparate nature of the Nguyen/Longan/Yao Group, it is evident that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel. Accordingly, the Nguyen/Longan/Yao Group fail to meet their burden of showing that aggregating them as lead plaintiffs is appropriate, and therefore their motion for appointment as lead plaintiffs should be denied. *See, e.g., Kniffin v. Micron Tech., Inc*., 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (rejecting two unrelated investor groups' attempt to aggregate losses in seeking appointment of lead plaintiff there was no indication they would be able to function cohesively); *Jakobsen v. Aphria, Inc*., 2019 WL 1522598, at *4 (S.D.N.Y. Mar. 27, 2019) (same).

**Second**, the Yousef Brothers – who purport to claim LIFO losses greater than Mr. Davison in the aggregate – fare no better, as they have grossly inflated their financial interest by including trading losses realized before Romeo's corrective disclosures occurring after trading hours on March 30, 2020. Following the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), courts have recognized that "[l]osses resulting from in-and-out transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public are not to be included in loss calculations for purposes of selecting lead

3

plaintiff." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (holding that losses resulting from "in-and-out" transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public are not to be included in loss calculations for purposes of selecting lead plaintiff in a securities class action).

While the Yousef Brothers claim an aggregate net loss of $434,758.23, nearly 75% of these claimed losses are attributable to shares that they purchased and then sold before the alleged corrective disclosure occurring after trading hours on March 30, 2021. Gilmore Opp. Decl., Ex. B-D. Moath Yousef actually sold out all but one share five days before the end of the Class Period and went short Romeo shares two weeks prior to the end of the Class Period. *Id.* at Ex. B. Moatassem Yousef actually sold his remaining shares on the day of the disclosure, but does not claim to have sold before the disclosure that same day. As Judge Furman recently held in *Afr. v. Jianpu Tech. Inc.*, 2021 WL 1999467, at *2 (S.D.N.Y. May 19, 2021), "losses" from these in-and-out transactions are not recoverable, and therefore do not count for purposes of determining a lead plaintiff movant's financial interest.

When the Yousef Brothers' in and out trades – buys and sells of Romeo stock during the class period before the March 30, 2021 disclosure – are properly removed from the Yousef Brothers' loss calculation, and even assuming Moatassem Yousef sold his remaining shares subsequent to Romeo's March 30, 2021 disclosure, the Yousef Brothers total LIFO losses are a mere $105,360.35 – less than a third of Mr. Davison's claim financial interest.

| Movant | Losses Excluding In-and-Out Transactions | Claimed Loss |
|---|---|---|
| Moath Majed Yousef | $3.15 | $121,898.00 |
| Moatassem Yousef | $105,357.20 | $313,041.00 |
| **Total** | **$105,360.35** | **$434,939.00** |

4

Further, the Yousef brothers' erratic trading, inexperience and dispersed residencies raises unique defenses and adequacy risks. Accordingly, the Yousef Brothers are plainly not suitable to be appointed as lead plaintiff in this action.

As such, Mr. Davison has, by far the largest loss of the competing lead plaintiff movants, and has made a *prima facie* showing of his adequacy and typicality. No movant has come forward with facts, let alone "proof," that Mr. Davison will not fairly and adequately protect the interests of the class, or that he is subject to any unique defense. Nor can they. The record reflects Mr. Davison is qualified to lead the prosecution of this case. In contrast, Mr. Castleberg, the sole remaining applicant who suffered far less losses, is a complete unknown having provided no background information about himself. Accordingly, the Court should appoint Mr. Davison Lead Plaintiff and approve his choice of counsel.

## II.    ARGUMENT

### A.    Nguyen/Longan/Yao is an Improper Group

The Nguyen/Longan/Yao Group may only claim the largest financial interest if its members are permitted to aggregate their losses. Each admittedly has a lower LIFO loss than Davison by at least $154,826.72. ECF No. 39-2. While the language of the PSLRA expressly permits a "group of persons" to be appointed as lead plaintiff, it is a long-standing rule in this and other circuits that "pastiche plaintiffs whose grouping appears to be solely the product of the litigation" are generally not suitable to serve as lead plaintiff. *Khunt v. Alibaba Grp. Holding, Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015). This is because "[o]ne of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation . . . [and, as such,] [t]o allow lawyers to designate unrelated plaintiffs as a 'group' . . . would allow and encourage lawyers to direct the litigation." *In re Donnkenny Inc. Secs. Litig*., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997)

5

(citations omitted); *see also, e.g., Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262-63 (S.D.N.Y. 2019).

Where a group of investors seeks appointment as lead plaintiff "[t]he overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers." *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM, Inc.*, 2015 WL 7018024, at * 2 (S.D.N.Y. Nov. 12, 2015). In determining whether a proposed group will function in a sufficiently cohesive manner to permit its appointment as lead plaintiff, courts in this circuit consider: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Here, the *Varghese* factors weigh heavily against the Nguyen/Longan/Yao Group aggregating their losses.

### 1.    The Nguyen/Longan/Yao Group Lacks a Pre-Litigation Relationship.

There is no a pre-litigation relationship between the Nguyen/Longan/Yao Group members. The three members hail from different locations scattered across U.S.: Illinois, Delaware, and California, respectively. ECF No. 39-4 at ¶¶ 3-5. They each have varying levels of investment experience, education levels and employment backgrounds. *Id*. In turn, they invested independently in Romeo securities, at varying times during the Class Period, with diverse trading patterns, and sizeable differences in losses. ECF Nos. 39-1, 39-2.

Most importantly, there is no evidence that they, on their own initiative, assembled themselves into a group prior to interaction with counsel. In fact, in their joint declaration, the group effectively admits that they did not learn of each other's existence until after retaining

6

common counsel. ECF No. 39-4 at ¶ 9. Moreover, the Nguyen/Longan/Yao Group fails to articulate any concrete reason or need for a group in this case. Nor do they state any tangible benefit that would inure to the Class by having three investors serve as lead plaintiff, instead of one. The Nguyen/Longan/Yao Group's failure to articulate any rationale justifying the appointment of a group as lead plaintiff makes it crystal clear that the aggregation of losses was for the "obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'" *See In re Cendant Corp*., 264 F.3d 201, at 267 (3rd Cir. 2001), citing *In re Razorfish, Inc. Sec. Litig*., 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001).

2. **The Nguyen/Longan/Yao Group's Involvement in the Litigation Thus Far Has Been *De Minimis*.**

The Nguyen/Longan/Yao Group's involvement in the litigation thus far is minimal. No member of the group initiated any of the existing actions, and the Joint Declaration does not describe any work the group has done in identifying or investigating the Class' claims in this action. Instead, the sum total of the group's involvement is a single conference call with counsel that occurred on Tuesday, June 15, 2021 at 3:45 pm EST, just hours before the expiration of lead plaintiff deadline. *See* ECF No. 39-4 at ¶ 9; *see also, Khunt*, 102 F. Supp. 3d at 533 (declining to appoint proposed group as lead plaintiff where they "effectively admit[ted] to having no pre-litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call.").

3. **The Nguyen/Longan/Yao Group Have No Coherent Plan for Managing the Litigation.**

While Nguyen/Longan/Yao Group, in vague terms, suggests that they will be able to work together well (ECF No. 39-4 at ¶¶ 11-17), they provide nothing concrete to back these lofty ambitions up. *See Aphria*, 2019 WL 1522598, at *3 (vague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the

7

groups' involvement in the litigation). For example, the Nguyen/Longan/Yao Group do not articulate any plan for division of authority or responsibility among the members for the critical aspects of the case, including which member or members will be responsible for supervising the various portions of the litigation, including fact and witness investigation, drafting of the pleadings, motion practice, discovery, trial planning and strategy, or settlement. The lack of a cohesive plan foreshadows "problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015).

Further, the decision-making structure is weak on details. ECF No. 39-4 at ¶ 13 ("We are confident in our ability to reach joint decisions regarding litigation matters and will use consensus decision making to maximize the recovery for the Class."). Courts have found nearly identical, generic recitals to reflect a non-robust decision-making structure. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (boilerplate plans for cooperation "[are] conclusory assurances [and] do not satisfy this Court that [they] will be able to effectively manage this litigation.").

**4.  The Nguyen/Longan/Yao Group Are Not Uniquely Qualified to Lead this Litigation.**

Nothing in the Nguyen/Longan/Yao Group's backgrounds suggest that they are specially fit to control the prosecution of this litigation. ECF No. 39-4 at ¶¶ 3-5. Indeed, although Ms. Nguyen's considers herself a sophisticated investor, she has only been investing for one year. *Id*. at ¶ 4. None of the members has indicated prior experience in serving as a lead plaintiff in a securities class action, or as a representative in a comparable class action setting. Moreover, none of the members indicates having experience managing and supervising counsel.

### 5.    Counsel Plainly Arranged this Group.

Finally, the group is completely silent on whether they chose counsel as a group, or vice versa. *See, e.g., Kniffin* 379 F. Supp. 3d at 263 (S.D.N.Y. 2019) (declining to aggregate losses where, inter alia, the "groups [were] silent on whether they chose counsel or vice versa"). For instance, the group does not claim to have negotiated a single retainer with counsel as a group, leaving open the likely possibility that they have three separate retainer agreements with discrepancies concerning how much fees counsel may seek should a resolution be reached. *See Petrobras*, 104 F. Supp. 3d at 623 (finding that discrepancies in group members' retainer agreements demonstrated that group would act with the cohesion necessary to prosecute the case effectively). Accordingly, the most plausible inference is that they were encouraged to move as a group by counsel, after each inquired and retained the counsel separately, in an effort to secure lead plaintiff.

Accordingly, the Court should decline to aggregate the Nguyen/Longan/Yao Group's losses and deny their motion for lead plaintiff.

### B.    The Yousef Brothers Have Inflated Their Financial Interest by Including Trading Losses Realized Before the Alleged Corrective Disclosure

The Yousef Brothers have vastly overstated their financial interest in the litigation by presenting a loss calculation that includes trading losses they realized before Romeo corrective disclosures made after trading hours on March 30, 2021. "Under *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342–43 (2005), [however,] such losses are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements." *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013). In other words, "under *Dura* and its progeny, any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those

9

losses cannot be proximately linked to the misconduct at issue in th[e] litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).

"While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint [lead plaintiff and] lead counsel." *In re LightInTheBox*, 2013 WL 6145114, at *3. Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures.[4]

Indeed, "the court would be abdicating its responsibility under the PSLRA if it were to ignore [the issue of loss causation at the lead plaintiff appointment] stage." *In re Comverse*, 2007 WL 680779, at *5. Accordingly, "'losses result[ing] from "in-and-out" transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public' are not to be included in loss calculations" for purposes of selecting lead plaintiff. *Bensley*, 277 F.R.D. at 238 (quoting *In re Comverse*, 2007 WL 680779, at *3)

---

[4] *See also Simco v. Aegean Marine Petroleum Network Inc.*, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "[l]osses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests"); *Khunt*, 102 F. Supp. 3d at 531 ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."); *Gutman v. Sillerman*, 2015 WL 13791788, at *4 (S.D.N.Y. Dec. 8, 2015) ("[W]hen evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures.") (collecting cases); *Comverse Tech.*, 2007 WL 680779, at *4 ("any losses that [the movant] may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation" and "any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff").

Here, while Moath Majed Yousef claims a LIFO loss of $313,041, over 99% of his claimed losses ($3.15 to $17.46) are attributable to shares that he purchased and then sold before the alleged corrective disclosure occurring after trading hours on March 30, 2021.[5] This is because throughout the Class Period, Moath Majed Yousef engaged in a pattern of buying Romeo shares and then closing out of his position entirely (or maintaining only a single Romeo share), incurring all of his losses before any hint of the fraud was disclosed, as alleged in the two complaints (*See Nichols*, Complaint (ECF No. 1) at ¶¶ 9-12, 50-52; *Toner*, Complaint (ECF No. 1 at ¶¶ 5-8, 50-53), and as alleged in each of the competing movants' motions. ECF Nos. 26 at 2; 35 at 4; 38 at 3-4; 42 at 5-6.  The last of these in-and-out transactions generating losses occurred one week before the end of the class period when, on March 24, 2021, Moath Majed Yousef, holding only one share of Romeo, bought 2,000 shares, and then quickly sold 2,000 shares on March 25, 2021, well before the March 30, 2021 corrective disclosure. Gilmore Opp. Decl., Ex. C-D. "Losses" from these in-and-out transactions are not recoverable, and therefore do not count. *See, e.g., Jianpu Tech. Inc*., 2021 WL 1999467, at *2; *CannaVest*, 93 F. Supp. 3d at 273. When these transactions are removed from Moath Majed Yousef's loss calculation, his true loss is only **$3.15**, representing the difference between the price he paid for the 1 share he purchased and held through the March 30, 2021 corrective disclosure ($11.68) and the holding value of the share under the PSLRA's 90-day lookback provision ($8.53). Gilmore Opp. Decl., Ex. D.

Likewise, although Moatassem Yousef claims $121,898 in FIFO losses, this improperly includes over $16,540.80 of losses attributable to shares that he purchased and then sold before the alleged corrective disclosure. Gilmore Opp. Decl., Ex. B. In particular, he sold 3,800 shares

---

[5] See Gilmore Opp. Decl. Ex. D.

for losses between January 6, 2021 and March 16, well before the alleged corrective disclosure.

Thus, Moatassem Yousef's true LIFO losses are **$105,357.20**.[6]

As such, Mr. Davison has, by far, a largest loss than the Yousef Brothers, even when aggregated:

| Movant | LIFO Losses Excluding Ins-and-Outs |
|---|---|
| Mr. Davison | $339,653.08 |
| The Yousef Brothers | $105,360.35 |

Significantly, the Yousef Brothers' loss figure reflected above, accepts as true Moatassem Yousef's suggestion that his sale of 6,500 shares on March 30, 2020 occurred after hours and subsequent to Romeo's disclosure of the adverse news. In the event Moatassem Yousef placed the sale order before Romeo's March 30, 2021 disclosure, Moatassem Yousef would have sold all of his shares before the Class Period, and suffered no compensable losses. *See* Gilmore Opp. Decl. Ex. B.

Finally, in addition to the concerns noted above, the Yousef Brothers present several typicality and adequacy risks. As highlighted above, should the Yousef Brothers be appointed lead plaintiff, the precise timing of Moatassem Yousef's March 30, 2021 sale transaction will be a unique defense raised by Defendants that will likely become a major focus of the litigation. Moreover, as also discussed above, the Yousef Brothers engaged in extremely unusual and atypical trading strategies that render them an inadequate representative for the Class. As reflected in their loss analysis, the Yousef Brothers engaged in a consistent pattern of buying Romeo stock and then

---

[6] *See* Gilmore Opp. Decl. Ex. B, calculating LIFO losses for Moatassem Yousef excluding in and out purchases prior to the disclosure on March 30, 2021.

liquidating their positions shortly thereafter, demonstrating they were likely trading on market volatility rather than reliance on the Company's statements. *See* Gilmore Opp. Decl., Exs. B-D; *see also Bang v. Acura Pharm., Inc.*, 2011 WL 91099, at \*6 (N.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions."). In fact, in Moath Majed Yousef's case, he shorted the stock on March 16 and March 17, 2021, in which he borrowed 14,098 shares and promptly sold the Romeo stock in the hopes Romeo's stock price would depreciate and he could buy the stock back at a lower price and profit. *See* Gilmore Opp. Decl., Exs. C-D. These conflicting investment strategies provide ample ammunition for Defendants to challenge the Yousef Brothers' reliance on the Company's misstatements and his ability to represent the Class. *See Cook v. Allergan plc*, 2019 WL 1510894, at \*2 (S.D.N.Y. Mar. 21, 2019) (disqualifying movant who transacted in put options during the Class Period in the hopes that the price of company's stock would decline).

Moreover, the Yousef Brothers are geographically dispersed, with one residing in Iowa, and the other in Saudi Arabia. ECF No. 43-4 at ¶¶ 2-3. One of the brothers, Moath Majed Yousef, also states that he has only been investing for just "over a year," which also raises serious adequacy concerns. *Id*. at ¶ 3. The group also does not submit any information regarding how or why the involvement of two law firms in the case is necessary, let alone preferred, nor has it identified the division of authority or the responsibility between the two firms.

For the foregoing reasons, the Court should deny the Yousef Brothers' motion.

**C.     Mr. Davison Is the Most Adequate Plaintiff**

As demonstrated in his moving papers, Mr. Davison is a typical class representative. *See* ECF Nos. 34-36. Mr. Davison filed a declaration showing he fully understands his duties and

13

setting forth his background as a former owner and operator of a construction contracting business and 50 years of experience in managing his own investments. *See* ECF No. 36-3. Unlike the Nguyen/Longan/Yao Group and the Yousef Brothers, Mr. Davison has demonstrated that he is more than adequate. He has clearly informed the Court of his age, professional background, and investment experience (ECF No. 36-3 at ¶ 2); his ability and willingness to lead this action (*id*. at ¶¶ 3-4); his actual communications with counsel with whom he spoke (*id*. at ¶ 4); his understanding of his duties as a lead plaintiff (*id*. at ¶¶ 4-5); his understanding and intent to seek appointment and that he was moving to be as lead plaintiff in this action (*id*. at ¶ 4); his willingness to be deposed and attend hearings if necessary, ((*id*. at ¶ 4); and his decision to retain Hagens Berman as counsel (*id*. at ¶ 5).

Like all other Class members, Mr. Davison: (1) purchased RMO shares during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements; and (3) was harmed when the truth was revealed. As such, Mr. Davison is a typical Class representative. Mr. Davison similarly satisfies Rule 23's adequacy requirement because he is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). Mr. Davison has a substantial financial stake in the litigation as well as the incentive and ability to vigorously represent the Class' claims. Accordingly, Mr. Davison satisfies the typicality and adequacy requirements of Rule 23.

Because Mr. Davison has the largest financial interest and satisfies the requirements of Rule 23, he is the presumptive lead plaintiff. To overcome the strong presumption of appointing Mr. Davison as Lead Plaintiff, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, no such proof exists in this case and there can be no credible arguments to the contrary.

14

By contrast, Mr. Castleberg, the lone remaining competing applicant, has provided the Court with nothing to go on with respect to his alleged capacity to manage this litigation. For example, Mr. Castleberg fails to inform the Court of his age, occupation, level of education, or investment experience level. Given this lack of information, Mr. Castleberg has not demonstrated that he is equipped to serve as lead plaintiff. Given this lack of information, the Court is skeptical that the Aroras are equipped to serve as lead plaintiff. *See, e.g., Karp v. Diebold Nixdorf, Inc*., 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration*, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (rejecting lead plaintiff applicant who failed to provide basic background information); *Camp v. Qualcomm Inc*., 2019 WL 277360, at \*3-4 (S.D. Cal. Jan. 22, 2019) (same).

**D.    The Court Should Approve Mr. Davison's Selection of Counsel**

For the reasons articulated in Mr. Davison's opening brief (ECF No. 35), Mr. Davison's choice of counsel should be approved. Hagens Berman is a leading securities class action law firm, has previously been appointed as lead counsel in numerous other cases, and has an established track record obtaining successful recoveries for investors in securities class actions. *See* ECF No. 36-5 at Ex. E; *see also, In re Charles Schwab Corp. Securities Litigation*, Case No. 3:08-1510-WHA (N.D. Cal.) ($235 million class recovery); *In Re McKesson Corporation Derivative Litigation*, Case No. 4:17-CV-1850-CW (N.D. Cal.) ($175 million class recovery). Accordingly, the Court may be assured that by granting this Motion, the Class will receive the highest caliber of legal representation.

### III.    CONCLUSION

For all of the foregoing reasons, Mr. Davison respectfully requests that this Court: (1) consolidate the Related Actions; (2) appoint him to serve as lead plaintiff in this action; (3) approve

15

his selection of Hagens Berman as lead counsel for the Class; and (4) grant such other and further

relief as the Court may deem just and proper.

Respectfully submitted,

DATED:  June 28, 2021                    HAGENS BERMAN SOBOL SHAPIRO LLP

By      */s/ Nathaniel A. Tarnor*
         NATHANIEL A. TARNOR

322 8th Avenue, Suite 802
New York, NY10001
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
nathant@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
Wesley A. Wong
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292

16

Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff Dale
Davison*

17

## CERTIFICATE OF SERVICE

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Nathaniel A. Tarnor*

NATHANIEL A. TARNOR

18