**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRAVIS NICHOLS, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-03362-LGS |
| Plaintiff, | CLASS ACTION |
| v. | |
| ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK, | |
| Defendants. | |
| VICTOR J. TONER, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-04058-LGS |
| Plaintiff, | CLASS ACTION |
| v. | |
| ROMEO POWER INC. (f/k/a RMG ACQUISITION CORP.), LIONEL E. SELWOOD, JR., LAUREN WEBB, ROBERT S. MANCINI, PHILIP KASSIN, D. JAMES CARPENTER, STEVEN P. BUFFONE, W. GRANT GREGORY, W. THADDEUS MILLER, and CRAIG BRODERICK, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO CONSOLIDATE THE RELATED ACTIONS, APPOINT DALE DAVISON AS LEAD PLAINTIFF AND APPROVE THE SELECTION OF LEAD COUNSEL**

011001-11/1571243 V1

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT.............................................................................................................3

       A.     The Innocent Error in Mr. Davison's Certification Is Not Disqualifying................3

       B.     The Nguyen/Longan/Yao Group Is an Improper, Artificial Group........................7

       C.     The Yousef Brothers Have Much Smaller Losses and Are Inadequate...................9

III.   CONCLUSION.........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*In re Advanced Tissue Sciences Sec. Litig.*,
184 F.R.D. 346 (S.D. Cal. 1998) ........................................................................................4

*Afr. v. Jianpu Tech. Inc.*,
2021 WL 1999467 (S.D.N.Y. May 19, 2021) .....................................................................1, 9

*Batter v. Hecla Mining Co.*,
2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ....................................................................5

*Bhojwani v. Pistiolis*,
2007 WL 9228588 (S.D.N.Y. July 31, 2007) .....................................................................6, 7

*Chao Lu v. Jumei Int'l Holding Ltd.*,
2015 WL 4104570 (S.D.N.Y. June 22, 2015) ....................................................................3

*Chill v. Green Tree Fin. Corp.*,
181 F.R.D. 398 (D. Minn. 1998).........................................................................................2, 5

*Dubin v. Miller*,
132 F.R.D. 269 (D. Colo. 1990) .........................................................................................4

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D.Cal. 2004) .........................................................................................4

*Hansen v. Ferrellgas Partners*,
L.P., 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017).............................................................4

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020).....................................................................9

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ...................................................................5

*Karp v. Diebold Nixdorf, Inc.*,
2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019).....................................................................6, 10

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................2, 4, 7

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019).................................................................................1, 8

*Micholle v. Ophthotech Corp.*,
    2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ................................................................6

*Nager v. Websecure, Inc.*,
    1997 WL 773717 (D. Mass. Nov. 26, 1997) ................................................................6

*Niederklein v. PCS EdventuresA.com, Inc.*,
    2011 WL 759553 (D. Idaho Feb. 24, 2011) ................................................................4

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015) ................................................................8

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) ................................................................8

*Plaut v. Goldman Sachs Grp., Inc.*,
    2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ................................................................7

*In re Sequans Communs. S.A. Sec. Litig.*,
    289 F. Supp. 3d 416 (E.D.N.Y. 2018) ................................................................9

*In re Solar City Corp. Sec. Litig.*,
    2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ................................................................4

*Tai Jan Bao v. SolarCity Corp.*,
    2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) ................................................................4

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) ................................................................6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................7, 8

*White Pine Invs. v. CVR Ref., LP*,
    2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021) ................................................................9

**Federal Statutes**

15 U.S.C. §78-u4 *et seq.* .................................................................................................. *passim*

15 U.S.C. §78-u4(a)(3)(B)(iii)(I)(bb) ................................................................1

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) ................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc) ................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................................. *passim*

## I.    PRELIMINARY STATEMENT

Presently before the Court are four competing lead plaintiff motions.[1] The PSLRA sets a straightforward test for determining the most "appropriate" movant for appointment. First, the Court must determine which movant has the largest financial interest; and second, the Court appoints that movant as long as the movant is otherwise adequate and typical within the meaning of Rule 23. *See* 15 U.S.C. §78-u4(a)(3)(B)(iii)(I)(bb).

Under this test, Mr. Davison should be appointed. Mr. Davison has the largest individual financial interest in the relief sought by the Class, claiming LIFO losses of $339,653.08. ECF No. 55-1. The only movant with a larger loss than Mr. Davison is the aggregated, "artificial" Nguyen/Longan/Yao Group, whose members' individual losses are considerably smaller than those of Mr. Davison. But courts routinely reject lawyer-driven groups like the Nguyen/Longan/Yao Group on adequacy grounds, and the same end should result here.[2]

The Yousef Brothers also claim a larger aggregate loss than Mr. Davison, but this claim is wrongly inflated by including "in and out" losses that are not cognizable under U.S. Supreme Court precedent and not appropriate for consideration at the lead plaintiff stage. ECF Nos. 55-2, 55-4.[3] Without those "in and out" losses, the Yousef Brothers' financial interest is a third of Mr. Davison's losses. *Id*. In fact, Moath Majed Yousef's loss is *de minimis*, consisting of $3.15 based on his one retained share, calling into question his motivation to zealously prosecute the Class'

---

[1] Unless otherwise defined herein, all capitalized terms shall maintain the same meaning as those set forth in Mr. Davison's opening brief (ECF No. 34) and opposition brief. *See* ECF No. 54.

[2] *See, e.g., Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019).

[3] *Afr. v. Jianpu Tech. Inc.*, 2021 WL 1999467, at *1 (S.D.N.Y. May 19, 2021) (collecting cases) (holding that losses incurred on in and out trades should not be considered in determining financial interest on lead plaintiff motion).

claims. *See* ECF No. 55-4. Contrary to the Yousef Brothers' suggestion (ECF No. 60 at 4-8), this case does not present complex loss causation issues. The Related Actions, including the complaint prepared by the Yousef Brothers' own counsel Pomerantz LLP, alleges a single corrective disclosure on March 30, 2021 – not the novel "leakage" theory they now advance. *See* Toner, ECF No. 1 at ¶¶ 52-58.  Furthermore, the Yousef Brothers have atypical trading patterns, creating unique defenses that could endanger the Class.

Finally, Mr. Castleberg, an individual who has neglected to provide basic background information about himself, claims a substantially smaller loss and has failed to make even a *prima facie* showing of his adequacy. ECF Nos. 25, 58.

Accordingly, Mr. Davison is the presumptive lead plaintiff, and that presumption has not been rebutted. The ***only*** objection to Mr. Davison is a transposition error made on his original PSLRA certification and loss chart mistakenly identifying one transaction in Romeo shares as occurring on December 22, 2021. *See* ECF Nos. 57 at 5, n.2; ECF No. 58 at 6-7. Mr. Davison has submitted both a corrected loss chart (ECF No. 55-1), and an amended PSLRA certification explaining the error and rectifying it to show that this transaction was in fact made on **December 18, 2020**. ECF No. 59-1 at ¶ 5. Significantly, the number of shares and price for that transaction were not changed, and therefore Mr. Davison's previously submitted loss calculations are not impacted by this amendment. *Cf.* ECF Nos. 36-1 at Chart and 59-1 at Chart. Such "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement."[4] And, in any case, Mr. Davison promptly remedied this innocent error. *See Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 410-11 (D. Minn. 1998) (court allowed movant to rectify

---

[4] *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) (court excused lead plaintiff's minor mistake in the initial lead plaintiff filing).

"flaws in the certifications"). Accordingly, there is no reason that Mr. Davison should not be appointed lead plaintiff.

## II.    ARGUMENT

### A.    The Innocent Error in Mr. Davison's Certification Is Not Disqualifying

With $339,653.08 in LIFO losses, Mr. Davison has the largest individual financial interest. ECF No. 59-1.[5] Moreover, Mr. Davison, a successful construction business owner in Oregon and experienced investor, understands the role of a lead plaintiff and is committed to overseeing counsel and zealously prosecuting the Class' claims. ECF No. 36-3 at ¶¶ 2 -5. As such, Mr. Davison is the presumptive lead plaintiff, i.e., the one most capable of adequately representing the class, who "has the largest financial interest in the relief sought by the class" and who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc).

In response, the competing movants have failed to offer any "proof" of Mr. Davison's inadequacy or atypicality necessary to rebut the PSLRA's presumption. *Id.* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Instead, Mr. Castleberg and the Nguyen/Longan/Yao Group have pounced on an inconsequential clerical error in Mr. Davison's initial PSLRA certification and loss chart, mistakenly identifying one transaction as occurring on December 22, 2021 (s*ee* ECF Nos. 57 at 5, n.2; ECF No. 58 at 6-7), when it in fact occurred on **December 18, 2021**. ECF No. 59-1 at ¶ 5, Chart. This innocent error, which has since been corrected (ECF No. 59-1), falls far short of undermining Mr. Davison's adequacy under Rule 23.

---

[5] Contrary to the Yousef Brothers' contention (ECF No. 60 at 3), Mr. Davison did not advance a new financial interest theory in his opposition.  Because Mr. Davison bought and has continued to hold all shares through the March 30, 2021 corrective disclosure, his out-of-pocket losses and *Dura* losses are identical.

*First*, courts in this District and throughout the country have repeatedly held that "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *Chao Lu v. Jumei Int'l Holding Ltd.*, 2015 WL 4104570, at *2 (S.D.N.Y. June 22, 2015) (quoting *Alibaba*, 2015 WL 1954134, at *13 (S.D.N.Y. May 1, 2015)).[6] Here, Mr. Davison has submitted an amended certification explaining that he identified the wrong date for his first class period transaction (December 22, 2021) as a result of a transposition error, and has clarified that this transaction occurred on December 18, 2020. ECF No. 59-1 at ¶ 5. This mistake, however, has no consequence to Mr. Davison's financial interest assessment; the number of Romeo shares Mr. Davison purchased (11,000) and market price for that transaction ($21.248) were not changed. *Cf.* ECF Nos. 36-1 at Chart and 59-1 at Chart. Accordingly, Mr. Davison's previously submitted loss calculations are not impacted by this amendment. *Cf.* ECF Nos. 50-2 and 55-1. Courts have repeatedly held that similar inconsequential errors in an initial PSLRA certification and/or loss chart are not a legitimate basis for disqualification.[7]

---

[6] *See also*, *Alibaba*, 102 F. Supp. 3d at 539 ("The failure to correct obvious or inconsequential clerical errors, like the ones at issue, simply is not the type of adequacy issue that would 'divert the fact finders' attention from the merits and thus infect the claims of the class as a whole.'") (*quoting Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990)); *Niederklein v. PCS EdventuresA.com, Inc.*, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011) ("minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement.") (*citing Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D.Cal. 2004) ("relatively minor miscalculations do not serve as a basis for disqualifying" a movant)).

[7]*In re Solar City Corp. Sec. Litig.*, 2017 WL 363274, at *6 (N.D. Cal. Jan. 25, 2017) (holding that error in identifying class period stock price transaction due to a "transposing error" does not rebut the presumption); *Tai Jan Bao v. SolarCity Corp.*, 2014 WL 3945879, at *4 (N.D. Cal. Aug. 11, 2014) (finding presumptive lead plaintiff adequate and typical despite error in claimed losses); *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 351 n.12 (S.D. Cal. 1998) ("The Court . . . does not find the McKitty Group's computational and typographical errors to be so substantial as to overcome the statutory presumption in favor of the McKitty Group.").

*Second*, Mr. Davison acknowledged the error before any movant had raised the issue (ECF No. 54 at 1-2, n.2), and promptly rectified it through an amended certification (ECF No. 59-1): a process that courts routinely endorse. *See, e.g., Hansen v. Ferrellgas Partners*, L.P., 2017 WL 281742, at *5 (S.D.N.Y. Jan. 19, 2017) (appointing lead plaintiff and rejecting arguments that a movant that submitted a "certification containing an inadvertent mistake" and later corrected the certification was inadequate); *Green Tree Fin. Corp*., 181 F.R.D. at 411 (appointing movant group after allowing the group to supplement their certifications in order to correct technical deficiencies).

Mr. Carlsberg's authorities do not require a different result; each involves far more egregious errors and the movant's failure to correct such errors. ECF No. 58 at 6-7. For instance, in *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ("*Tesco*"), one movant, The National Pension Fund, claimed the largest financial loss, but another, Klug, argued that "based upon publicly available historical trading data . . . National Pension Fund's loss [was] overstated because it list[ed] various trades that either [fell] outside of the daily price range (below the daily low) or constitute[d] more shares traded on a given day than the total trading volume on the over-the-counter ("OTC") market for the stock on such days." *Id*. at *3. The *Tesco* Court reviewed publicly available trading data and confirmed that Klug was correct about the discrepancies in National Pension Fund's submission. *Id*. The *Tesco* Court then invited National Pension Fund to explain the apparent discrepancies, but National Pension Fund declined to respond substantively, contending that its already submitted bank statements, trade confirmations and supplemental brief "addressed and disproved any purported discrepancies." *Id*. The *Tesco* Court disagreed and concluded that its inability "to verify [The National Pension Fund's] claimed losses" undermined the adequacy of the Fund to serve as lead plaintiff.

Here, in contrast to The National Pension Fund in *Tesco*, Mr. Davison has substantively responded the competing movants' challenges, admitting the transposition error and promptly correcting it. ECF No. 59-1 at ¶ 5. Accordingly, *Tesco* is inapt. *See Batter v. Hecla Mining Co.*, 2020 WL 1444934, at \*4 (S.D.N.Y. Mar. 25, 2020) (declining to follow *Tesco* where movant substantively addressed challenges regarding the accuracy of trades listed on PSLRA certification).

Similarly, in *Micholle v. Ophthotech Corp.*, 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ("*Ophthotech*"), *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) ("*Trevena*"), *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ("*Diebold*"), and *Nager v. Websecure, Inc.*, 1997 WL 773717 (D. Mass. Nov. 26, 1997) ("*Webscure*"), each of the movants in question committed numerous inexcusable errors with respect to multiple transactions in their submissions, which dramatically impacted the movants' true financial interest. For instance, in *Ophthotech*, the court noted that "several dates listed are weekends, and the prices [the movant] claims to have paid do not fall within the high and low range listed on [the Company's] website." 2018 WL 1307285, at \*9. Likewise, in *Trevena*, the movant misstated dates on multiple transactions, overstated his losses, and improperly calculated losses by combining certain trades and averaging the per-share prices. 383 F. Supp. 3d at 414. Further, in *Diebold* the court rejected a movant group whose errors exaggerated its loss totals by 34%. 2019 WL 5587148 at \*6. Finally, in *Websecure*, the court rejected a movant who claimed to have purchased shares at a price nearly double the share cost, and the movant never corrected his submission. 1997 WL 773717 at \*1. In contrast, Mr. Castleberg can only point to a single error with regard to the date of one transaction in Mr. Davison's initial submission, which Mr. Davison has corrected and had no impact whatsoever on his claimed financial interest. ECF No. 59-1.

6

The Nguyen/Longan/Yao Group's cases are also distinguishable. ECF No. 57 at 5, n.2. In *Bhojwani v. Pistiolis*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007). the court rejected a movant for failing to adequately correct his erroneous certification. Although the movant submitted additional transactional records to correct his previously submitted certification, there were additional discrepancies in the newly provided data, and the court found that "the data still [did] not quite add up." *Id*. Similarly, in *Plaut v. Goldman Sachs Grp., Inc*., 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019), the court rejected a movant who had omitted multiple class period transactions in his submission. Id. at *5. But the *Goldman Sachs* Court also found it improper that the movant's counsel had filed an amended complaint twenty days after the lead plaintiff deadline, including additional corrective disclosures in an apparent attempt to include certain in-and-out transactions in their loss calculations. *Id*. No such record exists here. Accordingly, the minor error in Mr. Davison's submission, and the subsequent correction, has no bearing on Mr. Davison's adequacy.

**B.      The Nguyen/Longan/Yao Group Is an Improper, Artificial Group**

As Nguyen/Longan/Yao Group's cited authorities hold, district courts within the Second Circuit routinely reject lawyer-driven groups like the Nguyen/Longan/Yao Group.[8] The Nguyen/Longan/Yao Group should be similarly rejected.

First, the Nguyen/Longan/Yao Group gives no indication of a pre-litigation relationship. ECF No. 39-4 at ¶¶ 3-5, 9.

---

[8] *See* ECF No. 57 at 5, citing *Bhojwani*, 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007) (rejecting "'lawyer driven'" plaintiff [group] engineered for the sole purpose of maintaining this lawsuit and attaining lead plaintiff status therein."); ECF No. 57 at 8, citing *Varghese v. China Shenghuo Pharm. Holdings, Inc*., 589 F. Supp. 2d 388, 393 (S.D.N.Y. 2008) (group of four unrelated investors unsuitable to be lead plaintiff).

Second, the Nguyen/Longan/Yao Group's involvement in the litigation is negligible. The Joint Declaration describes a single conference call, presumably organized by counsel, just hours before the lead plaintiff deadline. *See* ECF No. 39-4 at ¶ 9; *see also, Alibaba*, 102 F. Supp. 3d at 533 (declining to appoint proposed group as lead plaintiff where they "effectively admit[ted] to having no pre- litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call.").

Third, the Nguyen/Longan/Yao Group offers only vague statements regarding their plans for cooperation. *See* ECF No. 39-4 at ¶¶ 11-17; *see also*, *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (boilerplate plans for cooperation "[are] conclusory assurances [and] do not satisfy this Court that [they] will be able to effectively manage this litigation."). Specifically, they do not lay out what their respective roles are in the litigation, which "creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *In re Petrobras Sec. Litig*., 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) (declining to appoint artificial group that neglected to advance coherent plan for dividing responsibilities among members).

Fourth, the Nguyen/Longan/Yao Group does not consist of "sophisticated" members, as that factor is intended under *Varghese*, 589 F. Supp. 2d at 392. None of the members have previously served as a lead plaintiff or class representative, have experience in supervising counsel in litigation, or have specialized knowledge or background relevant to this litigation. ECF No. 39-4 at ¶¶ 3-5.

Fifth, all signs point to counsel choosing the members of the Group, not *vice versa*. *See, e.g., Kniffin* 379 F. Supp. 3d at 263 (S.D.N.Y. 2019) (declining to aggregate losses where, inter alia, the "groups [were] silent on whether they chose counsel or vice versa").

Finally, none of the cases cited by the Group supports the proposition that an artificial group can supplant an individual with larger losses than any group member. For instance, the Group cites *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 426 (E.D.N.Y. 2018), where the court appointed a group with a member that still had a larger loss than the competing movant. *See* ECF No. 57 at 8. The Group also cites two cases in which the courts appointed groups whose applications for appointment were uncontested. ECF No. 57 at 8, citing *Mustafin v. Greensky, Inc.*, 2019 U.S. Dist. LEXIS 55296, at *4 (S.D.N.Y. Mar. 29, 2019) ("Only one continues to seek appointment as lead plaintiff."); *White Pine Invs. v. CVR Ref., LP*, 2021 U.S. Dist. LEXIS 1199, at *2 n.2 (S.D.N.Y. Jan. 5, 2021) ("Both [competing movants] have since filed notices of non-opposition."). Accordingly, the Nguyen/Longan/Yao Group are inadequate and should not be permitted to aggregate their losses.

## C.    The Yousef Brothers Have Much Smaller Losses and Are Inadequate

As explained in Mr. Davison's Opposition, the Yousef Brothers suffered a cognizable loss of approximately $105,360.35. ECF No. 54 at 12. The vast majority of their losses, nearly 75%, were "in and out" prior to the only pled loss causation event, Romeo's disclosures after the market closed on March 30, 2021. *See* ECF Nos. 55-2-55-4. Those "in and out" losses are not to be considered for the purpose of determining their financial interest. *See, e.g.*, *Jianpu Tech. Inc.*, 2021 WL 1999467, at *2 (collecting cases).

In addition, the Yousef Brothers present typicality and adequacy risks. The precise timing of Moatassem Yousef's March 30, 2021 sale transactions, which purportedly occurred after

Romeo's disclosure, will likely become a major focus of the litigation. ECF No. 55-2; *see also*, *In re Hebron Tech. Co., Ltd. Sec. Litig.,* 2020 WL 5548856, at \*7 (S.D.N.Y. Sept. 16, 2020) (disqualifying movant in part because there was a "dispute" as to "whether [he] made his purchase before or after the [corrective disclosure]" and the issue would "'divert attention from the substance of the basic claim' and needlessly imperil the claims of the class"). In addition, the Yousef Brothers engaged in extremely unusual and atypical trading strategies, consistently buying Romeo stock and then liquidating their positions shortly thereafter, demonstrating they were likely trading on market volatility rather than reliance on the Company's statements. ECF Nos. 55-2-55-4. Moreover, Moath Majed Yousef actually shorted Romeo on March 16 and March 17, 2021, betting Romeo stock would tank. ECF Nos. 55-3. Finally, the Yousef Brothers are geographically dispersed (ECF No. 43-4 at ¶¶ 2-3), and have not demonstrated their ability to supervise counsel. The group also neither explains why two law firms represent them, nor describes the division of responsibility between the two firms. For the foregoing reasons, the Court should deny the Yousef Brothers' motion.[9]

### III.   CONCLUSION

For all of the foregoing reasons, Mr. Davison respectfully requests that this Court grant his motion in its entirety.

Respectfully submitted,

DATED: July 6, 2021                HAGENS BERMAN SOBOL SHAPIRO LLP

By   */s/ Nathaniel A. Tarnor*
NATHANIEL A. TARNOR

---

[9] Mr. Castleberg, the lone remaining competing applicant, claims only $204,476.36 in losses, a fraction of Mr. Davison's. Moreover, Mr. Castleberg has not provided the Court with any evidence of his ability to manage this litigation. *See Diebold*, 2019 WL 5587148, at \*6 (rejecting lead plaintiff applicant who failed to provide basic background information).

322 8th Avenue, Suite 802
New York, NY10001
Telephone: (212) 752-5455
Facsimile:  (917) 210-3980
nathant@hbsslaw.com

Reed R. Kathrein
Lucas E. Gilmore
Danielle Smith
Wesley A. Wong
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com
danielles@hbsslaw.com
wesleyw@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

*Counsel for [Proposed] Lead Plaintiff Dale
Davison*

11

## CERTIFICATE OF SERVICE

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses registered, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

*/s/ Nathaniel A. Tarnor*
NATHANIEL A. TARNOR

12