EXHIBIT 6

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## FORM 8-K

**CURRENT REPORT**
**PURSUANT TO SECTION 13 OR 15(D) OF THE**
**SECURITIES EXCHANGE ACT OF 1934**

Date of Report (Date of earliest event reported): December 29, 2020

# Romeo Power, Inc.

(Exact name of registrant as specified in its charter)

| | | |
|---|---|---|
| **Delaware** | **001-38795** | **83-2289787** |
| (State or other jurisdiction | (Commission | (I.R.S. Employer |
| of incorporation) | File Number) | Identification No.) |

| | |
|---|---|
| **4380 Ayers Avenue** | |
| **Vernon, CA 90058** | **90058** |
| (Address of principal executive offices) | (Zip Code) |

**(844) 257-8557**
(Registrant's telephone number, including area code)

**Not Applicable**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common stock, par value $0.0001 per share | RMO | New York Stock Exchange |
| Redeemable warrants, exercisable for shares of common stock at an exercise price of $11.50 per share | RMO.WT | New York Stock Exchange |

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company   ☒

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.   ☒

**Exhibit 4.4**

## AMENDED AND RESTATED REGISTRATION RIGHTS AGREEMENT

THIS AMENDED AND RESTATED REGISTRATION RIGHTS AGREEMENT (this "Agreement"), dated as of December 29, 2020, is made and entered into by and among Romeo Power, Inc. (formerly known as RMG Acquisition Corp.), a Delaware corporation (the "Company"), RMG Sponsor, LLC, a Delaware limited liability company ("RMG Sponsor"), and the undersigned parties listed as an Existing Holder on the signature pages hereto (each such party, together with RMG Sponsor and any other person deemed an "Existing Holder" who hereafter becomes a party to this Agreement pursuant to Section 5.02 hereof, an "Existing Holder" and collectively, the "Existing Holders"), and the undersigned parties listed as a New Holder on the signature pages hereto (each such party, together with any other person deemed a "New Holder" who hereafter becomes a party to this Agreement pursuant to Section 5.02 hereof, a "New Holder" and collectively, the "New Holders"). Capitalized terms used but not otherwise defined in this Agreement shall have the meaning ascribed to such terms in the Merger Agreement (as defined below).

### RECITALS

WHEREAS, the Company, RMG Sponsor, certain funds and accounts managed by subsidiaries of BlackRock, Inc. (each, a "BlackRock Investor" and collectively, the "BlackRock Investors"), and certain funds and accounts managed by Alta Fundamental Advisers LLC (each, an "Alta Investor" and collectively, the "Alta Investors") entered into that certain Registration Rights Agreement, dated as of February 7, 2019 (the "Existing Registration Rights Agreement"), pursuant to which the Company granted to the Existing Holders certain registration rights with respect to certain securities of the Company;

WHEREAS, the Company has entered into that certain Agreement and Plan of Merger, dated as of October 5, 2020 (as may be amended from time to time, the "Merger Agreement"), with RMG Merger Sub, Inc., a Delaware corporation ("Merger Sub"), and Romeo Systems, Inc., a Delaware corporation ("Romeo Systems"), pursuant to which Merger Sub will merge with and into Romeo Systems with Romeo Systems surviving as a wholly-owned subsidiary of the Company;

WHEREAS, upon the closing of the transactions contemplated by the Merger Agreement and subject to the terms and conditions set forth therein, the Existing Holders and the New Holders will hold shares of common stock, par value $0.0001 per share, of the Company ("Common Stock"), in each case, in such amounts and subject to such terms and conditions as set forth in the Merger Agreement;

WHEREAS, the Company has entered into Subscription Agreements, each dated October 5, 2020 (collectively, the "PIPE Investors Subscription Agreements"), with certain investors (collectively, the "PIPE Investors") for the subscription of shares of Common Stock;

WHEREAS, pursuant to Section 5.05 of the Existing Registration Rights Agreement, the provisions, covenants and conditions set forth in the Existing Registration Rights Agreement may be amended or modified upon the written consent of the Company and the holders of a majority-in-interest of the "Registrable Securities" (as such term was defined in the Existing Registration Rights Agreement) at the time in question; and

WHEREAS, in connection with the transactions contemplated by the Merger Agreement, the Company and the Existing Holders desire to amend and restate the Existing Registration Rights Agreement in its entirety and enter into this Agreement, pursuant to which the Company shall grant the Existing Holders and the New Holders certain registration rights with respect to certain securities of the Company, as set forth in this Agreement.

NOW, THEREFORE, in consideration of the representations, covenants and agreements contained herein, and certain other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

"Requesting Holders" shall have the meaning given in Section 2.01(d).

"Romeo Holder Lock-up Period" shall mean, with respect to the Romeo Holder Shares that are held by New Holders or their Permitted Transferees, the period ending one hundred eighty (180) days after the date hereof.

"Romeo Holder Shares" shall mean, with respect to the New Holders or their respective Permitted Transferees, (A) the shares of Common Stock received pursuant to the Merger Agreement; (B) any outstanding share of Common Stock or any other equity security of the Company (including the shares of Common Stock issued or issuable upon the exercise of any other equity security) received in connection with the transactions contemplated by the Merger Agreement (other than any shares of Common Stock or any other equity security issued or issuable in respect of the PIPE Investors Subscription Agreement); and (C) any other equity security of the Company issued or issuable with respect to any such share of Common Stock by way of a stock dividend or stock split or in connection with a combination of shares, recapitalization, merger, consolidation or reorganization.

"Securities Act" shall mean the Securities Act of 1933, as amended from time to time.

"Shelf" shall mean the Form S-1 Shelf, the Form S-3 Shelf or any Subsequent Shelf Registration, as the case may be.

"Shelf Registration" shall mean a registration of securities pursuant to a registration statement filed with the Commission in accordance with and pursuant to Rule 415 promulgated under the Securities Act (or any successor rule then in effect).

"Shelf Takedown" shall mean an Underwritten Shelf Takedown or any proposed transfer or sale using a Registration Statement, including a Piggyback Registration.

"RMG Sponsor" shall have the meaning given in the Preamble hereto.

"Subsequent Shelf Registration" shall have the meaning given in Section 2.01(b).

"Underwriter" shall mean a securities dealer who purchases any Registrable Securities as principal in an Underwritten Offering and not as part of such dealer's market-making activities.

"Underwritten Offering" shall mean a Registration in which securities of the Company are sold to an Underwriter in a firm commitment underwriting for distribution to the public.

"Underwritten Shelf Takedown" shall have the meaning given in Section 2.01(c).

ARTICLE II<br>REGISTRATIONS

Section 2.01          Shelf Registration.

(a)          Filing. As soon as practicable but no later than the earlier of (i) forty-five (45) calendar days following the closing of the transactions contemplated by the Merger Agreement and (ii) ninety (90) calendar days following the Company's most recent fiscal year end (in either case, the "Filing Date"), the Company shall file a Registration Statement for a Shelf Registration on Form S-3 (the "Form S-3 Shelf") or, if the Company is ineligible to use a Form S-3 Shelf, a Registration Statement for a Shelf Registration on Form S-1 (the "Form S-1 Shelf"), in each case, covering the resale of all the Registrable Securities (determined as of two business days prior to such filing) on a delayed or continuous basis and shall use its commercially reasonable efforts to have such Shelf declared effective as soon as practicable after the filing thereof and no later than the earlier of (x) the ninetieth (90th) calendar day following the Filing Date if the Commission notifies the Company that it will "review" the Shelf and (y) the tenth (10th) business day after the date the Company is notified in writing by the Commission that such Shelf will not be "reviewed" or will not be subject to further review. Such Shelf shall provide for the resale of the Registrable Securities included therein pursuant to any method or combination of methods legally available to, and requested by, any Holder named therein. The Company shall maintain a Shelf in accordance with the terms hereof, and shall prepare and file with the Commission such amendments, including post-effective amendments, and supplements as may be necessary to keep a Shelf continuously effective, available for use to permit all Holders named therein to sell their Registrable Securities included therein and in compliance with the provisions of the Securities Act until such time as there are no longer any Registrable Securities. In the event the Company files a Form S-1 Shelf, the Company shall use its commercially reasonable efforts to convert the Form S-1 Shelf (and any Subsequent Shelf Registration) to a Form S-3 Shelf as soon as practicable after the Company is eligible to use Form S-3.

5

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed as of the date first written above.

**COMPANY:**

**ROMEO POWER, INC.**

By:      /s/ Lionel E. Selwood, Jr.
Name:  Lionel E. Selwood, Jr.
Title:    President, Chief Executive Officer and Director

*[Signature Page to Amended and Restated Registration Rights Agreement]*

**NEW HOLDER**:

**Lauren Webb**

By:  /s/ Lauren Webb

*[Signature Page to Amended and Restated Registration Rights Agreement]*