**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ROMEO POWER INC. SECURITIES LITIGATION | Case No. 1:21-cv-03362-LGS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jeff.hammel@lw.com
Email: jason.hegt@lw.com

Kristin N. Murphy *(pro hac vice)*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: kristin.murphy@lw.com

*Attorneys for Defendants Romeo Power Inc. (f/k/a RMG Acquisition Corp.), Lionel E. Selwood, Jr., Lauren Webb, Robert S. Mancini, Philip Kassin, D. James Carpenter, Steven P. Buffone, W. Grant Gregory, W. Thaddeus Miller, and Craig Broderick*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...........................................................................................................................1

I.    THE AC FAILS TO PLEAD FACTS ESTABLISHING A SECTION 10(B)
      CLAIM...........................................................................................................................1

      A.    The AC Fails to Plead Facts Establishing That Any Statement Was False .............1

            1.    Romeo's Forward-Looking Statements Are Fully Protected By The
                  PSLRA Safe Harbor..................................................................................1

            2.    None of the Remaining Challenged Statements Was False........................3

            3.    Plaintiffs' Reliance on Item 303 Fails ..........................................................6

      B.    The AC Fail to Establish Any Inference of Scienter ...............................................6

            1.    Plaintiffs' Allegations Regarding Ms. Webb and Mr. Selwood Do
                  Not Establish Scienter................................................................................7

            2.    Plaintiffs' Fraud-by-Hindsight Allegations Cannot Support Any
                  Inference of Scienter ..................................................................................8

            3.    Plaintiffs' Core Operations Allegations Fail................................................9

            4.    The Timing of Romeo's Revised Guidance Says Nothing About
                  Defendants' State of Mind at the Time Guidance Was Issued ...................9

            5.    The Non-Fraudulent Inference Is Far More Compelling...........................10

II.   THE AC FAILS TO PLEAD FACTS ESTABLISHING A SECTION 14 CLAIM
      AND THE LAW PROHIBITS SUCH A CLAIM HERE ...............................................11

III.  THE AC FAILS TO PLEAD CONTROL PERSON CLAIMS.......................................12

CONCLUSION.....................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995)..................................................................................................5

*In re Adient plc Sec. Litig.*,
2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020)........................................................................9

*Avon Pension Fund v. GlaxoSmithKline PLC*,
343 F. App'x 671 (2d Cir. 2009) ........................................................................................7

*Azar v. Yelp, Inc.*,
2018 WL 6182756 (N.D. Cal. Nov. 27, 2018) ...................................................................5

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2018 WL 2382600 (S.D.N.Y. May 24, 2018) .....................................................................2

*City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*,
2021 WL 3434875 (E.D.N.Y. Aug. 3, 2021).......................................................................4

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .....................................................................2

*Diana Allen Life Ins. Trust v. BP P.L.C.*,
333 F. App'x 636 (2d Cir. 2009) ......................................................................................11

*In re Express Scripts Holdings Co. Sec. Litig.*,
773 F. App'x 9 (2d Cir. 2019) ............................................................................................4

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021)........................12

*Hall v. The Children's Place Retail Stores, Inc.*,
580 F. Supp. 2d 212 (S.D.N.Y. 2008)..................................................................................8

*Holbrook v. Trivago N.V.*,
2019 WL 948809, at *21 (S.D.N.Y. Feb 26, 2019), *aff'd sub nom. Shetty v. Trivago N.V.*,
796 F. App'x 31 (2d Cir. 2019) .........................................................................................10

*In re Iconix Brand Grp., Inc.*,
2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ......................................................................9

*In re IPO Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) .......................................................................................11

ii

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
    906 A.2d 766 (Del. 2006) ...............................................................................................11

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)............................................................................................7

*Kinra v. Chicago Bridge & Iron Co.*,
    2018 WL 2371030 (S.D.N.Y. May 24, 2018) ............................................................7

*Kramer v. Time Warner Inc.*,
    937 F. 2d 767 (2d Cir. 1991)..........................................................................................6

*Lefkowitz v. Synacor*,
    2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019), *afff'd*, 832 F. App'x 54 (2d Cir. 2020) .............3

*In re MRU Holdings Sec. Litig.*,
    769 F. Supp. 2d 500 (S.D.N.Y. 2011)............................................................................7

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)............................................................................6

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    862 F. Supp. 2d 322 (S.D.N.Y. 2012)..........................................................................11

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..........................................................................................12

*S.E.C. v. Conaway*,
    2006 WL 2828569 (E.D. Mich. Sept. 29, 2006)............................................................8

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*,
    75 F.3d 801 (2d Cir. 1996)..............................................................................................9

*In re Seadrill Ltd. Sec. Litig.*,
    2016 WL 3461311 (S.D.N.Y. June 20, 2016) ...............................................................2

*Shah v. Zimmer Biomet Holdings, Inc.*,
    348 F. Supp. 3d 821 (N.D. Ind. 2018) ...........................................................................8

*Shields v. Citytrust Bancrop, Inc.*,
    25 F.3d 1124 (2d Cir. 1994)..........................................................................................10

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010)....................................................................................10, 11

*Stevelman v. Alias Research Inc.*,
    174 F.3d 79 (2d Cir. 1999)............................................................................................10

iii

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................................................11

*In re Vale S.A. Sec. Litig.*,
  2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ...........................................................................8

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011)........................................................................................9

*In re XL Fleet Corp.*,
  No. 1:21-cv-02002-LGS ..........................................................................................................10

**STATUTES**

15 U.S.C. § 78u–5(c)(1).............................................................................................................2

**PRELIMINARY STATEMENT**

Plaintiffs' opposition brief thoroughly underscores the Amended Complaint's fatal flaws. It is predicated on the theory that as early as mid-2020, while the COVID pandemic and the economic turmoil it caused were just getting underway, a worldwide battery cell supply shortage had already occurred, that Defendants recognized that it had occurred, and that Romeo's projections about its business prospects were therefore fraudulent. But this theory is unsupported by *any* contemporaneous facts. The reality is that Romeo was impacted by global supply chain issues, as were many in its industry and others. Plaintiffs' opportunistic effort to portray these once-in-a-lifetime circumstances as securities fraud should be rejected.

Plaintiffs' lack of facts precludes them from establishing that any statement was false, much less intentionally false (scienter). The securities fraud claim therefore must be dismissed. The proxy claim fails as a matter of law for those reasons and because of a myriad of other flaws, including a lack of standing, lack of causation, and because it is, if anything, a derivative claim.

This case lacks any legal or factual basis. It should be dismissed in its entirety.

**ARGUMENT**

I.      **THE AC FAILS TO PLEAD FACTS ESTABLISHING A SECTION 10(B) CLAIM**

A.      **The AC Fails to Plead Facts Establishing That Any Statement Was False**

1.      **Romeo's Forward-Looking Statements Are Fully Protected By The PSLRA Safe Harbor**

Defendants' opening brief demonstrated that Romeo's revenue guidance and other forward-looking statements (Statements 3, 4, 7, 9, 10, 12, 13, 14) are protected by the PSLRA safe harbor. Mot. at 9-13. Plaintiffs' arguments, Opp. at 14-17, do not salvage any claim.

*First*, Plaintiffs argue that the safe harbor does not apply to omissions. *Id*. at 14. This misses the mark. The text of the PSLRA explicitly provides that the safe harbor applies to actions

1

"based on an untrue statement of a material fact *or omission* of a material fact necessary to make [a] statement not misleading."  15 U.S.C. § 78u–5(c)(1) (emphasis added).  In any event, Plaintiffs are challenging forward-looking *statements* about revenue guidance and expectations for the coming year.  *See* Statement Nos. 3, 4, 9, 12, 14.  Plaintiffs' contention that these statements omitted information does not remove them from the safe harbor, as this Court has held.  *In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at *9 (S.D.N.Y. June 20, 2016) (Schofield, J.) ("[P]rojected revenues…are forward looking statements that fall within the PSLRA's safe harbor").  Plaintiffs' argument would eviscerate the safe harbor.

*Second*, Plaintiffs argue that the safe harbor does not apply because the forward-looking statements "encompassed representations of present fact . . . that Romeo had a sufficient supply of cells and was then actually manufacturing its products on the scale necessary[.]"  Opp. at 14-15.  This is also incorrect.  The forward-looking statements involved projections of the amount of revenue that was "expected to be recognized" in 2021 (Statements 3, 4, 9, 12) and Plaintiffs cite nothing (certainly no facts) for their assertion that Romeo "represented" that it already "had a sufficient supply of cells"—which are *Plaintiffs'* words, not Defendants'.  *Id*. at 15.  Plaintiffs point to one interview in which Mr. Selwood, then Romeo's CEO, was asked if he saw "any issues with securing enough cells to fulfill [Romeo's] large orders," and he said that he did not "see any big challenges as [its] order book continues to grow."  *Id*. at 2; AC ¶ 76.  Neither the questioner nor Mr. Selwood suggested that Romeo had *already* secured sufficient cells in December 2020.[1]

---

[1] The cases Plaintiffs cite are thus inapposite.  They involved allegations establishing that there were false statements of *present* fact.  *See* Opp. at 14-15 (citing *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *8 (S.D.N.Y. May 24, 2018) (statement that nuclear power projects "were achieving important milestones" and passing government inspections false in light of undisclosed regulatory investigation and three-month stop work order)); *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *13 (S.D.N.Y. Mar. 25, 2013) (financial projections "incorporate[ing] the effect of clearing through" inventory that company knew was unsalable).

*Third*, Plaintiffs argue that Romeo failed to provide meaningful cautionary language. Opp. at 15-16. They do not argue that the cautions were unclear or boilerplate—nor could they. Mot. at 10-11. Instead, Plaintiffs assert that the cautionary language was ineffective because it did not disclose that the supply shortage had already materialized. Opp. at 15-16. This is just more of the same circular argument—it assumes, without facts, that the shortage had already occurred.

*Finally*, Plaintiffs argue that the safe harbor does not apply because Defendants had "actual knowledge" that the guidance was misleading. *Id*. This, too, fails. It is pure speculation that Romeo *actually knew* before February 2021 that it could not have met its *future* revenue goals for all of 2021 because it had not previously generated similar amounts of revenue as an early-stage company. *Lefkowitz v. Synacor*, 2019 WL 4053956, at *7 (S.D.N.Y. Aug. 28, 2019) (Schofield, J.), *afff'd*, 832 F. App'x 54 (2d Cir. 2020) (rejecting allegations made "in only a conclusory fashion that the Individual Defendants did not believe their own statements about [] future revenues"). Conjecture is, of course, far from actual knowledge, and Plaintiffs cite no law holding otherwise.

### 2.      None of the Remaining Challenged Statements Was False

Plaintiffs challenge the remaining statements (Statements 1, 2, 5, 6, 8, and 11) for the same reason: that Romeo knew in 2020 that an industrywide shortage of battery cells would delay its anticipated ramp-up from the first half of 2021 to the second half. But, here again, none of Plaintiffs' arguments is a substitute for facts. *See* Mot. at 13-16.

*First*, Plaintiffs point to snippets of Romeo's SEC filings and Investor Presentations to argue that Romeo misstated the number of its cell suppliers (Statements 3, 4, 9). Opp. at 8-9. But this ignores Mr. Selwood's public explanation during an October 5, 2020 investor call that plainly disclosed that "[w]e have tested over 200 cells from ten suppliers, but have only qualified four cells"—not cell suppliers—"to-date." Ex. 13 at 3. Romeo again disclosed this information in its October 2020 Investor Presentation (Ex. 6 at 28 ("Only 4 Cell[s] Ultimately Qualified")) and in

3

its November 2020 Investor Presentation (Pl. Ex. 2 at 4 (same)). While Romeo listed four companies that supplied certain types of "power cells," *it explicitly explained that only one supplier (Samsung) "currently supports the EV program."* *See* Ex. 7 at 163 (emphasis added). There is nothing inconsistent with saying that multiple companies supply cells and that one of them supplies the cells used for a specific purpose. (*Compare* "Samsung *currently* supports the EV program" *with* "LG Chem supplies Romeo with power cells…"; "Murata supplies Romeo with power cells…"; "SK supplies Romeo with power cells…") AC ¶ 114 (emphasis added). Plaintiffs allege no facts showing otherwise. Their word-parsing states no claim. *See City of Hollywood Police Officers' Ret. Sys. v. Henry Schein, Inc.*, 2021 WL 3434875, at *2 (E.D.N.Y. Aug. 3, 2021) (rejecting plaintiffs' attempt to "cobbl[e] together selected, non-contextual, partial quotations…").

*Second*, Plaintiffs' effort to nit-pick snippets of some of Mr. Selwood's other statements similarly fails. They point to his statement that "I don't see any big challenges [with securing enough cells] as our order book continues to grow," Opp. at 9, but allege no facts showing that it was false (*i.e.*, that he *did* see some unspecified "big challenges") and, in any event, this statement is forward-looking and protected by the safe harbor for the reasons above. They cite to Mr. Selwood's reference to "Operation Hedge Fund," but the interview Plaintiffs themselves submitted shows that this statement concerned "circuit boards components"—not battery cells. AC ¶ 144; Pl. Ex. 3 at 1:40 – 3:30. Plaintiffs also ignore that Mr. Selwood cautioned that "ensuring that we have continuous access to" battery cells was a "potential chink[] in the supply chain," AC ¶ 144, warning investors of exactly what Plaintiffs now complain about. No claim is stated by editing statements out of context and ignoring cautionary disclosures. *See In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 12 (2d Cir. 2019) (holding that each statement must be read in

light of the full "context and manner" in which it was presented).[2]

*Third*, Plaintiffs purport to challenge Statements 1-6 and 8-9, which describe the amount and key terms of Romeo's revenue "backlog" or "currently contracted revenue," but do not actually contend that these statements were inaccurate at the time they were made. Mot. at 13-14. Instead, Plaintiffs argue that the statements were misleading because Romeo *later* did not meet its revenue guidance. Opp. at 13-14. This is a *non sequitur*. That revenue guidance was eventually missed does not mean that the amount of contracted revenue was false—it just means that Romeo did not receive that revenue. In any case, this is a quintessential fraud-by-hindsight argument which states no claim. *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud[.]").[3]

*Fourth*, Plaintiffs challenge the March 30, 2021 earnings call statement (Statement 11) that Romeo did not "expect any impacts to" Romeo's order "backlog" or that the shortage would "affect [Romeo's] intermediate and longer-term opportunities." Opp. at 17-18; AC ¶ 189. But, here again, the AC lacks any facts showing that Romeo *did* expect an impact to its total "backlog" at that time (or at any time). That Romeo later said it would generate less revenue from backlog in 2021 does not mean the total backlog amount ever changed, and is yet more hindsight argument. Nor do Plaintiffs offer facts showing that Romeo lost any "intermediate" or "longer-term opportunities." AC ¶¶ 146–47. As Plaintiffs concede, Opp. at 7, Romeo announced a long-term

---

[2] The cases Plaintiffs cite at Opp. at 10-11 n. 12 are inapposite. For example, in *Azar v. Yelp, Inc.*, 2018 WL 6182756 (N.D. Cal. Nov. 27, 2018), the company failed to disclose known contract terminations from advertisers and the effects those terminations would have on revenue projections. *Id.* at *10, *11. No similar facts were known here.

[3] Defendants also showed that Mr. Selwood's statement that Romeo is "not a pre-revenue company" is indisputably true because Romeo earned $8.97 million in revenue in 2020. Mot. at 15 (citing AC ¶¶ 8, 86). Plaintiffs' response—that, in their opinion, Mr. Selwood was talking about Romeo's revenue backlog, not revenue the Company had earned already, Opp. at 13 n.16— makes no sense and, in any case, does not show how the statement was inaccurate.

cell supply contract the very next quarter, AC ¶ 102, and Romeo's Q3 2021 revenues were over *six times* greater than the previous quarter and more than *eight times* greater than Q3 2020.[4]

### 3.    Plaintiffs' Reliance on Item 303 Fails

Plaintiffs' Item 303 argument, Opp. at 11-12, fails for the same reasons as the rest of their allegations.  Item 303 requires the disclosure of "*known*" trends or uncertainties, but of course Plaintiffs fail to point to any facts showing that any Defendant knew in 2020 about a supply shortage that would impact Romeo's ability to meet its projected 2021 revenue.  Mot. at 16-17. At most, the only so-called "trend" Plaintiffs identify is that Romeo's 2019 and 2020 revenues showed that it had not started ramping up before the merger and 2019 product revenues were modestly higher than 2020.  But Plaintiffs do not dispute that these facts were disclosed before the merger, in an SEC filing on December 4, 2020.  *See* Pl. Ex. 4 at 187.  Plaintiffs resort to editing one of Mr. Selwood's statements to make it appear retrospective.  *Compare* Opp. at 11 n.13 ("[A]ccording to Selwood, Romeo '*deliver[ed]* as many batteries from as many cells as we get in the door'") *with* AC ¶ 85 ("Romeo *will deliver* as many batteries from as many cells as we get in the door") (emphasis supplied).  "[S]electively edited" statements support no claim.  *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 396 (S.D.N.Y. 2006).

### B.    The AC Fail to Establish Any Inference of Scienter

Plaintiff's opposition also underscores that the AC does not establish a "strong inference" of scienter.  It starts by failing to address, and thus conceding, Defendants' arguments that:

- Romeo's robust disclosures negate any inference of scienter, s*ee* Mot. at 19 (citing cases);

---

[4] *See* Ex. 16 "Romeo Power Announces Third Quarter 2021 Financial Results," filed with the SEC as Exhibit 99.1 to a Form 8-K dated November 15, 2021, at 1 (attached to the Declaration of Jason C. Hegt, submitted herewith).  The Court can take judicial notice of this SEC filing.  *See Kramer v. Time Warner Inc.*, 937 F. 2d 767, 774 (2d Cir. 1991).

- the confidential witness allegations are insufficient, *see* Mot. at 19-20 (citing cases); and

- Plaintiffs' failure to even attempt to allege scienter as to *each* defendant is fatal. *See Id*. at 19; *Kinra v. Chicago Bridge & Iron Co.*, 2018 WL 2371030, at *6 (S.D.N.Y. May 24, 2018) (Schofield, J.) (scienter "is not amenable to group pleading") (citation and quotation marks omitted).

Plaintiffs' scienter allegations should be rejected for these reasons alone. Where Plaintiffs do attempt to salvage their scienter theories, those efforts fare no better.

### 1. Plaintiffs' Allegations Regarding Ms. Webb and Mr. Selwood Do Not Establish Scienter

Ms. Webb's and Mr. Selwood's increases in their Romeo holdings during the class period are "wholly inconsistent with fraudulent intent." Mot. at 17-18. That most of their holdings were options, some unvested, and their shares were subject to a 180-day "lockup" following the merger, Opp. at 22-23, is irrelevant and Plaintiffs cite no law holding otherwise. That these executives' economic interests were tied to Romeo's long-term success fully undermines any inference that they were involved in a short-term fraud. *See Kalnit v. Eichler*, 264 F.3d 131, 140-41 (2d Cir. 2001) (a theory of fraud that "defies economic reason … does not yield a reasonable inference of fraudulent intent"); *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 673 (2d Cir. 2009) (defendants' increase in holdings "signals only confidence in the future of their company"); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) (same).

Plaintiffs also do not cite a single fact that suggests that the departure of Mr. Selwood or Ms. Webb's transition to a different executive role related in any way to the alleged fraud. Opp. at 22-21. This precludes any inference of scienter. Mot. at 21 (citing cases). Plaintiffs' reliance on *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 233 (S.D.N.Y. 2008), only underscores the lack of merit of this theory, as that case holds that management changes may be indicative of scienter *only* where (i) the resignations are tied to the alleged fraud or alerted

7

defendants to the fraud, or (ii) scienter was otherwise evident through independent corroborating evidence. *Id.* at 233. None of that is pled here.

### 2. Plaintiffs' Fraud-by-Hindsight Allegations Cannot Support Any Inference of Scienter

Plaintiffs argue that a so-called "admission" in August 2021 that "the second half of 2021 is expected to be the beginning of a period of the ramp-up of sales and operating activity for us" supports "a strong inference that defendants knew at all times prior to August 2021 that Romeo had not previously ramped production … *because it did not have the cells*." Opp. at 18-19 (emphasis in original). But this statement says nothing about cells (the italicized words are, again, Plaintiffs' words). It also ignores that Romeo had long-previously disclosed that it had not started ramping (as noted above), and, further, it is just more hindsight-pleading (it assumes that an August 2021 statement about the future concedes knowledge in the past). None of this can establish scienter. *See In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *33 (S.D.N.Y. Mar. 23, 2017) ("The scienter inquiry asks whether Defendants had knowledge of facts or access to information contradicting their statements at the time they were made, and not merely whether the statements were later proven to be false.").

Nor can Plaintiffs simply point to the alleged misstatements and claim that they have established scienter. Opp. at 19-20. Neither the Second Circuit nor any court in this District has adopted that circular reasoning. *Id.* (citing only out-of-circuit authority).[5] In this Circuit, where,

---

[5] Plaintiffs' reliance on *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 845-46 (N.D. Ind. 2018), and *S.E.C. v. Conaway*, 2006 WL 2828569, at *7 (E.D. Mich. Sept. 29, 2006), is particularly misplaced. In both cases, defendants failed to disclose ongoing company-run projects that defendants *knew* would impact production and revenue. *See Zimmer*, 348 F. Supp. 3d at 846 (failing to disclose facility overhaul where company needed facility to run at full-capacity in order to meet revenue goals); *Conaway*, 2006 WL 2828569, at *7 (attributing delayed revenue recognition to new company software rather than voluntarily delayed payment plan company offered to customers). None of that is pled here.

8

as here, plaintiffs contend that defendants had access to contrary facts, they must specifically identify the documents or other sources demonstrating that access. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) (general allegations of internal reports insufficient to withstand a motion to dismiss); *In re Iconix Brand Grp., Inc.*, 2017 WL 4898228, at *18 (S.D.N.Y. Oct. 25, 2017) (no scienter where plaintiffs failed to plead "internal reports, documents, or communications that shed light on Defendants' knowledge…"). Plaintiffs do not do so.

### 3.   Plaintiffs' Core Operations Allegations Fail

Plaintiffs' reliance on the "core operations" theory, Opp. at 20-21, is likewise unavailing. *See* Mot. at 20-21. The viability of that theory in the Second Circuit is "tenuous," at best. *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011). In any case, it can never "independently establish scienter." *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *29 (S.D.N.Y. Apr. 2, 2020) (citation and quotation marks omitted). With no facts showing that any Defendant knew about the supply issues that would later arise, the core operations doctrine is merely another way for Plaintiffs to try to speculate their way to a claim. The law precludes this.

### 4.   The Timing of Romeo's Revised Guidance Says Nothing About Defendants' State of Mind at the Time Guidance Was Issued

Plaintiffs next hypothesize that Romeo's four-month production lead-time meant that Defendants must have known that Romeo would not meet its 2021 revenue guidance "by early 2021 *at the absolute latest*." Opp. at 21 (emphasis in original). The only facts that Plaintiffs cite in support of this theory are that "Romeo recorded just $466,000 in product revenue in 2Q 2021" and somehow knew in Fall 2020 that the Company's Q1 2021 orders were "lagging." *Id*. But this is another hindsight argument. No facts suggest that any Defendant knew "by early 2021" that Romeo could not meet its revenue guidance for *all* of 2021, and the revenue was always expected

9

to be concentrated in Q4 2021.  *See* Mot. at 5-6;  *see also Slayton v. Am. Exp. Co.*, 604 F.3d 758, 776 (2d Cir. 2010) (fact that "losses eventually reported … greatly exceeded" forecast does not show scienter).  Instead, Romeo promptly updated its full-year guidance in March 2021 as soon as it became clear that the Company would not meet its earnings target.  *See* Mot. at 6-7.  Such prompt disclosure undermines, rather than supports, scienter.   Courts repeatedly have held that "defendants' disclosures about the risk … are inconsistent with" a reckless state of mind.  *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *21 (S.D.N.Y. Feb 26, 2019), *aff'd sub nom. Shetty v. Trivago N.V.*, 796 F. App'x 31 (2d Cir. 2019).  And that Romeo was optimistic about cell supply and production until this point also does not support scienter.  *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999) (dismissing plaintiffs' challenges to "overly optimistic disclosures," which "amount[ed] to allegations of fraud by hindsight") (citation and quotation marks omitted); *Shields*, *v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) ("[M]isguided optimism is not a cause of action, and does not support an inference of fraud.").

### 5.    The Non-Fraudulent Inference Is Far More Compelling

Plaintiffs urge the Court to assume, in the absence of facts, that Defendants had a crystal ball that allowed them to foresee global supply chain disruptions before anyone else in the market, but nevertheless chose to issue unachievable earnings guidance (all while having no motive to do so).  This theory is fanciful on its face.

It is rendered even more untenable by the fact that Romeo was one of numerous companies in the industry that maintained their revenue guidance into or beyond the first quarter of 2021 (Mot. at 6)—including one electric vehicle company, XL Fleet Corporation, that is the subject of another stock-drop lawsuit filed by the same counsel as Plaintiffs in this case.  *See In re XL Fleet Corp.*, No. 1:21-cv-02002-LGS, filed Mar. 8, 2021 (S.D.N.Y.).   The notion that unrelated companies orchestrated the same fraud at the same time that unraveled for the same reason is far

10

less compelling than the inference that companies throughout the industry were caught off-guard by sudden supply constraints in the battery cell market.  Certainly, that is the most compelling inference as to Defendants in this case.  *See Slayton*, 604 F.3d at 777 (finding no scienter where "inference of fraudulent intent [was] not 'at least as compelling as any opposing inference one could draw from the facts alleged.'") (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

## II.  THE AC FAILS TO PLEAD FACTS ESTABLISHING A SECTION 14 CLAIM AND THE LAW PROHIBITS SUCH A CLAIM HERE

The Opposition also confirms that the Section 14(a) claim should be dismissed.  *First*, Plaintiffs offer no legal basis for the notion that they can add Mr. Cante as an "additional plaintiff" after he failed to participate in the PSLRA-mandated lead plaintiff appointment process.  Opp. at 25.  The cases they cite are irrelevant: *In re IPO Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002), involves a motion to join additional plaintiffs *before* the lead plaintiff process; *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331-32 (S.D.N.Y. 2012), allowed a new lead plaintiff to forgo the PSLRA process only if it followed specific procedures (which Mr. Cante has not followed here).  There is no basis for allowing him to parachute into this case.  *Id.*

*Second*, Plaintiffs do not explain why the proxy claim is not a derivative "overpayment" claim.  Mot at 24.  They argue that it is a direct claim, because Mr. Cante "was entitled to vote on the transaction and was injured by misstatements and omissions in the Proxy." Opp. at 24.  But that purported injury reinforces that the Proxy Statement allegedly overstated Romeo's true value and reinforces that the claims are about "overpayment," and is thus derivative.  Plaintiffs do not articulate Mr. Cante's specific injury—much less that the injury was distinct from any injury to RMG.  *See Diana Allen Life Ins. Trust v. BP P.L.C.*, 333 F. App'x 636, 638 (2d Cir. 2009) (direct claim must show distinct injury "without showing an injury to the corporation"); *In re J.P. Morgan*

11

*Chase & Co. S'holder Litig.*, 906 A.2d 766, 773-74 (Del. 2006) (dismissing where plaintiffs "conflat[e]" direct claim with relief "flowing from the corporation's … derivative claim").

*Third*, every disclosure that Plaintiffs challenge in their Section 14(a) claim is also part of their Section 10(b) claim. *Compare* Statement 4 (Proxy Statement) *with* Statements 3, 9, 12 (other challenged statements). For the reasons above, none of these statements was false or misleading, so none can support a claim under either provision.

*Finally*, the speculative nature of Plaintiffs' loss causation allegations is fatal to their Section 14(a) claim. At its core, Plaintiffs' loss causation theory asks the court improperly to draw a number of "hypothes[e]s about what the parties would have done if the circumstances surrounding their transaction had been different." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 403 (S.D.N.Y 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (dismissing 14(a) claims for failure to establish loss causation); *see also* Mot. at 25. Plaintiffs offer no response to Defendants' argument that these allegations simply do not provide Defendants "with fair notice of the causal connection between the loss and the misrepresentation." *Wesco*, 454 F. Supp. 3d at 403.

## III. THE AC FAILS TO PLEAD CONTROL PERSON CLAIMS

Because Plaintiffs fail to plead a primary violation of the Exchange Act, their derivative "control person" claims under Section 20(a) must also be dismissed. *Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004).

**<u>CONCLUSION</u>**

The AC fails to state any claim as a matter of law. It should be dismissed, with prejudice.

12

Dated:  December 17, 2021

Respectfully Submitted,

**LATHAM & WATKINS LLP**

*Jeff G. Hammel*
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jeff.hammel@lw.com
Email: jason.hegt@lw.com

Kristin N. Murphy
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755.8290
Email: kristin.murphy@lw.com

*Attorneys for Defendants Romeo Power Inc. (f/k/a RMG Acquisition Corp.), Lionel E. Selwood, Jr., Lauren Webb, Robert S. Mancini, Philip Kassin, D. James Carpenter, Steven P. Buffone, W. Grant Gregory, W. Thaddeus Miller, and Craig Broderick*

13