UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- X
                                                        :
                                                        :
                                                        :              21 Civ. 3362 (LGS)
                                                        :
    In re Romeo Power Inc. Securities Litigation.       :
                                                        :              OPINION AND ORDER
                                                        :
                                                        :
                                                        :
------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Lead Plaintiff Mike Castleberg and additional Plaintiff Joshua Cante, individually and

purportedly on behalf of all others similarly situated, bring this securities fraud action against

Defendants Lionel E. Selwood Jr., Lauren Webb, Robert S. Mancini, D. James Carpenter, Philip

Kassin, Steven P. Buffone, W. Grant Gregory, W. Thaddeus Miller, Craig Broderick and Romeo

Power, Inc. ("Romeo").  The Amended Complaint ("Complaint") alleges violations of § 10(b) of

the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, § 20(a) of the

Exchange Act and § 14(a) of the Exchange Act.  Defendants move to dismiss the Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, the motion is

granted in part and denied in part.

## I.    BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for

purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959

F.3d 509, 512 (2d Cir. 2020).[1]

---

[1] Defendants' request that the Court take judicial notice of thirteen exhibits is granted in part.
The request is unopposed and therefore granted as to Exhibits 1 through 8 and 13.  The request is
denied as to Exhibits 9 through 12 because Defendants seek to use those documents for the truth
of the matters asserted, which is impermissible.  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.
2007); *accord Valcarcel v. Ahold U.S.A., Inc.*, No. 21 Civ. 7821, 2021 WL 6106209, at *4 n.10

On October 5, 2020, RMG Acquisition Corp. ("RMG"), a New York City-based special purpose acquisition company, announced a merger agreement with Romeo. RMG was formed by Defendants Carpenter, Mancini and Kassin for the purpose of entering a merger or other business combination with a business in the diversified resources and industrial materials sectors. Romeo, a Delaware corporation, was founded in 2016. Romeo is an energy technology company focused on designing and manufacturing lithium-ion battery modules and packs for commercial electric vehicles.

Defendant Selwood was the President and CEO of Romeo and a member of its Board of Directors. Defendant Webb was Romeo's CFO from January 2017 through July 6, 2021. Webb also served on Romeo's Board. Defendants Mancini, Carpenter, Kassin, Buffone, Gregory, Miller and Broderick were members of RMG's Board of Directors.

On October 15, 2020, Defendants caused RMG to file a registration statement for Romeo on Form S-4 with the SEC. The registration statement was amended on November 20, 2020, and December 4, 2020. On December 10, 2020, Defendants caused RMG to file a proxy statement, consent solicitation statement and prospectus with the SEC. The proxy statement solicited proxies to vote to approve the merger. Plaintiffs allege that the registration statement, proxy statement and prospectus contain misleading statements, including statements about Romeo's committed contract revenue and supply chain for battery cells.

---

(S.D.N.Y. Dec. 22, 2021). Defendants' argument that they are using those exhibits for a proper purpose is unconvincing because Defendants cite the exhibits to support their claim that other companies "experience similar disruptions" to their supply chain for battery cells and other produces. Plaintiffs' unopposed request for judicial notice of certain documents is granted because they were either publicly filed with the SEC or incorporated by reference in the Complaint.

The merger was approved on December 28, 2020, and consummated on December 29, 2020.  On January 26, 2021, Romeo filed another prospectus related to the issuance of common stock.  The prospectus repeats earlier alleged misstatements about Romeo's supply chain and contract revenue.

On April 15, 2021, Defendants filed Romeo's Form 10-K with the SEC.  On May 13, 2021, Defendants announced Romeo's Q1 2021 financial results on Form 8-K filed with the SEC.  On May 17, 2021, Defendants caused Romeo to file its Q1 2021 Form 10-Q with the SEC.  The 10-K, 10-Q and 8-K include alleged misstatements regarding Romeo's committed contract revenue and supply chain.

## II.    STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their]

claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

To state a claim under § 10(b) and Rule 10b-5, "a plaintiff must allege that each defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021).

"A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (PSLRA)." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021). The heightened pleading standard of Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

The PSLRA expanded on Rule 9(b)'s pleading standard, requiring that securities fraud complaints "specify" each misleading statement, that they set forth the facts "on which [a] belief" that a statement is misleading was "formed" and that they "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

4

"To establish scienter, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap. LLC*, 996 F.3d at 78 (internal quotation marks omitted).  The sufficiency of a complaint's allegations of scienter are evaluated "'holistically' considering '*all* of the facts alleged, taken collectively,' rather than 'any individual allegation, scrutinized in isolation.'" *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 323, 326). "For an inference of scienter to be strong, as required by the PSLRA, a reasonable person must deem it cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." *Id.* (internal quotation marks omitted).  "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence." *In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (citations and internal quotation marks omitted); *accord Gray v. Alpha & Omega Semiconductor, Ltd.*, No. 20 Civ. 2414, 2021 WL 4429499, at *10 (S.D.N.Y. Sept. 27, 2021).

"Where a defendant is a corporation, this requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (internal quotation marks omitted).  "[M]ost courts look to the discrete roles played by the corporate actors who are connected to the alleged misrepresentation to determine which (if any) fall within the locus of a company's scienter." *Id.*  "Under this approach, the most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement." *Id.* (internal quotation marks omitted).  But, "[i]n exceedingly rare

instances, a statement may be so dramatic that collective corporate scienter may be inferred." *Id.* (internal quotation marks omitted).

"In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009); *accord In re Wells Fargo & Co. Secs. Litig.*, No. 20 Civ. 4494, 2021 WL 4482102, at *27 (S.D.N.Y. Sept. 30, 2021). "This can consist of allegations as to who possessed . . . knowledge of the fraud, when and how they obtained [that] knowledge, or even why they should have known of the fraud." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d at 695 (alteration in original) (internal quotation marks omitted).

To state a claim under § 20(a), a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (internal quotation marks omitted); *accord UA Local 13 Pension Fund v. Sealed Air Corp.*, No. 19 Civ. 10161, 2021 WL 2209921, at *8 (S.D.N.Y. June 1, 2021).

## III.   DISCUSSION

### A.   Violation of § 10(b) and Rule 10b-5

The Complaint's First Claim alleges securities fraud claim under § 10(b) and Rule 10b-5 against Romeo, Selwood and Webb (the "Romeo Defendants"). Defendants argue the Complaint fails to allege falsity and scienter. These arguments are unavailing, and the claim survives.

### 1.   Falsity

The Complaint alleges that around fourteen different statements disseminated or approved by the Romeo Defendants were false.  At least one of these statements -- regarding the number and extent of Romeo's battery cell suppliers -- is sufficiently alleged to be false and warrants denial of the motion to dismiss.  That statement, but not the others, is discussed below.

Under the PSLRA, a plaintiff adequately pleads falsity if he or she "specif[ies] each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading."  15 U.S.C. §78u-4(b)(1)(B).  Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact" or "to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).

The Complaint alleges that the following statements regarding Romeo's battery cell suppliers are misleading, as well as other statements on other topics.  Romeo's registration statement and proxy statement and prospectus, filed between October and December 2020, include the following statements:  Romeo touted its "close relationships with vendors of key components of [Romeo's] battery products, in particular battery cells."  Under the heading "Suppliers," the filings list Samsung, LG Chem, Murata and SK Innovation, as electrical products or chemical companies that "suppl[y] Romeo with power cells."  Romeo's January 2021 prospectus repeats the same statements.  The Complaint alleges that those statements are misleading because Romeo relied only on LG Chem and/or Samsung for its supply of battery cells.  On March 30, 2021, during a Romeo conference call with investors and analysts, in response to a question about Romeo's four battery cell suppliers, Selwood corrected these

misstatements:  "[J]ust a quick clarification, four part numbers, not four different cell suppliers.

So, our preferred cell suppliers that we put in the forecasts are LG and Samsung, okay."

Defendants maintain that the statements between October and December 2020 regarding

the number of suppliers are not false because of other statements made by Romeo and Selwood.

Selwood stated on October 5, 2020, "We have tested over 200 cells from ten suppliers, but have

only qualified four cells to-date."  Romeo's October 2020 Investor Presentation includes the

logos of only LG Chem and Samsung under a heading that states "Cell Supplier Selection."

Romeo's filings state that Samsung was "currently support[ing] the [Electric Vehicle] Program,"

and do not include this statement for any other company.  Defendants' argument is unpersuasive.

None of these statements provide any clarity to, or contradict, the concurrent statements in the

filings that Murata and SK Innovation supply Romeo with battery cells.

The statements regarding Romeo's suppliers do not fall within the PSLRA safe harbor for

forward-looking statements.  The PSLRA defines a "forward-looking statement" as "a statement

containing a projection of revenues, income (including income loss), earnings (including

earnings loss) per share, capital expenditures, dividends, capital structure, or other financial

items," "any statement of the assumptions underlying or relating to any statement" of financial

projections, and "any report issued by an outside reviewer retained by an issuer, to the extent

that the report assesses a forward-looking statement made by the issuer."  15 U.S.C. § 77z-

2(i)(1).  The present-tense sentence that each of the four suppliers "supplies Romeo with power

cells" is not a statement containing a projection nor is it a statement of assumptions underlying a

projection.

## 2. Scienter

The Complaint alleges facts that give rise to the requisite "strong inference of scienter." To plead scienter, a complaint may either "(1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud."  *Set Cap. LLC*, 996 F.3d at 78 (internal quotation marks omitted).  "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). Plausible allegations that a defendant "knew facts or had access to information suggesting that their public statements were not accurate" supports a culpable inference of conscious misbehavior or recklessness.  *Set. Cap. LLC*, 996 F.3d at 79 (internal quotation marks omitted).

Here, the Complaint alleges facts that, if true, constitute strong circumstantial evidence of conscious misbehavior or recklessness as to Webb and Selwood.  Selwood stated on February 25, 2021, that securing battery cells is "a daily focus" for the company.  In May 2021, Selwood stated that he was "personally leading" all of the negotiations for supply agreements.  On the March 30, 2021, call Selwood explicitly corrected the misimpression that Romeo had four different cell suppliers.  Webb stated in December 2020 that Romeo was competitive on its costs for battery modules and packs and that it had commitments on raw materials to be gross margin positive or neutral at the end of 2021.  Based on the importance of battery cells and Selwood and Webb's comments on supplies, the Complaint sufficiently alleges that Webb and Selwood knew facts or had access to information suggesting that the repeated statement that Romeo has four battery cell suppliers was not accurate.  The scienter of Selwood and Webb is imputed to Romeo,

9

*see Jackson v. Abernathy*, 960 F.3d 94, 98-99 (2d Cir. 2020) (discussing circumstances when an individual defendant's scienter can be imputed to a company), and Defendants do not argue otherwise.

Defendants' inference arguments are unavailing.  First, Defendants argue that because Selwood and Webb increased their positions in Romeo stock during the class period, any inference of scienter is undermined.  However, as Plaintiffs note, Selwood and Webb appear to have received shares as part of a compensation or incentive package.  To support Defendants' argument, the Court would need to assume or infer improperly in Defendants' favor that they had a full opportunity to sell their shares, e.g., they were not subject to trading restrictions, and they chose not to trade.  Second, Defendants argue that a non-fraudulent inference that the Romeo Defendants did not predict supply disruptions is more compelling than any other inference.  However, the Romeo Defendants' purported failure to predict supply disruptions does not provide any basis for Romeo to claim that it had four suppliers when it had only one or two.

### B.    Violation of § 20(a) in Relation to § 10(b)

The Complaint's Second Claim pleads a § 20(a) claim against Selwood and Webb in relation to the § 10(b) claim.  The sole argument Defendants advance in opposition to Plaintiffs' § 20(a) claim is that there is no viable claim for a primary violation.  Because the Complaint pleads a primary violation under § 10(b), there is no reason to dismiss the § 20(a) claim.

### C.    Violation of § 14(a)

The Complaint's Third Claim, a § 14(a) claim against all Defendants, fails because it is a derivative claim, and the Complaint does not allege that Plaintiffs have made a demand or that such a demand would have been futile.

Pleading of derivative actions must satisfy the requirements of Rule 23.1 of the Federal Rules of Civil Procedure. *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015); *accord Goureau v. Lemonis*, No. 20 Civ. 4691, 2021 WL 4847073, at *2 (S.D.N.Y. Oct. 15, 2021). "Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law." *JPMorgan Chase*, 797 F.3d at 234; *accord Goureau*, 2021 WL 4847073, at *2. Here, as the parties agree, Delaware law applies to the question of whether the § 14(a) claim is direct or derivative because the relevant corporations are incorporated in Delaware. Under Delaware law, "the determination of whether a stockholder's claim is direct or derivative must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021) (internal quotation marks omitted).

The § 14(a) claim is derivative. Plaintiffs do not dispute Defendants' characterization of the claim as based on the theory that RMG stockholders were damaged because the proxy statement overstated the value of Romeo. The Complaint itself notes that shareholders "did not receive their fair share of the value of the assets and business of the combined entity." As the Supreme Court has long recognized, "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group." *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964), *abrogated on other grounds by Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); *accord In re Bank of America Corp.*

*Secs., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 329 (S.D.N.Y. 2010). Here, the essence of Plaintiffs' § 14(a) claim is that the proxy statements overstated the value of Romeo and as a result, RMG shareholders received less in value from the merger than they expected when they approved it. Under Delaware law, "[w]here all of a corporation's stockholders are harmed and would recover pro rata in proportion with their ownership of the corporation's stock solely because they are stockholders, then the claim is derivative in nature." *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008); *accord Brookfield Asset Mgmt.*, 261 A.3d at 1267-68 & n.67.

Plaintiffs provide no explanation of the circumstances that make the § 14(a) claim in this case direct as opposed to derivative. Instead, Plaintiffs cite a variety of cases finding direct claims but do nothing to explain how this case or Plaintiffs' theory matches the circumstances of those cases. The § 14(a) claim is dismissed.

### D.    Violation of § 20(a) in Relation to § 14(a)

The Complaint's Fourth Claim against all Defendants except Romeo is a § 20(a) claim in relation to § 14(a). The claim is dismissed because the Complaint fails to allege a predicate violation of the Exchange Act, as the statute requires. *Kleinman v. Elan Corp.*, 706 F.3d 145, 156 n.14 (2d Cir. 2013) (holding dismissal of a plaintiff's § 20(a) claim is appropriate when there is no underlying predicate violation of the Exchange Act); *accord In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 238-39 (S.D.N.Y. 2021). Because the Complaint fails sufficiently to allege a violation under § 14(a), the Complaint's Fourth Claim is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The Third Claim and the Fourth Claim, which are respectively the § 14(a)

claim and the § 20(a) claim based on that claim, are dismissed.  For clarity, the § 10(b) claim

against Romeo, Selwood and Webb (the First Claim), and the § 20(a) claim in Relation to the

§ 10(b) claim against Selwood and Webb (the Second Claim) survive.  Defendants' request for

oral argument is DENIED as moot.

       The Clerk of Court is respectfully directed to close the motion at Dkt. Nos. 90 and 103

and to terminate Robert S. Mancini, D. James Carpenter, Philip Kassin, Steven P. Buffone, W.

Grant Gregory, W. Thaddeus Miller and Craig Broderick as Defendants.

Dated: June 2, 2022
      New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE