**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ROMEO POWER INC. SECURITIES LITIGATION | Case No. 1:21-cv-03362-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR RECONSIDERATION AND/OR CLARIFICATION**

LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jeff.hammel@lw.com
Email: jason.hegt@lw.com

Kristin N. Murphy *(pro hac vice)*
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: kristin.murphy@lw.com

*Attorneys for Defendants Romeo Power Inc. (f/k/a RMG Acquisition Corp.), Lionel E. Selwood, Jr., and Lauren Webb*

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................1

I.      LEGAL STANDARD...................................................................................................2

II.     RECONSIDERATION AND/OR CLARIFICATION IS WARRANTED........................3

        A.      Ambiguity Regarding The At-Issue Statements Is A Case Management
                Issue ...............................................................................................................3

        B.      The PSLRA Requires Alleged Violations To Be Pleaded On A Statement-
                By-Statement Basis..........................................................................................4

III.    THE FORWARD LOOKING STATEMENTS AND THE FACTUAL
        BACKLOG STATEMENTS SHOULD BE DISMISSED AS A MATTER OF
        LAW ...........................................................................................................................6

        A.      The Forward-Looking Statements Are Not Actionable.........................................6

        B.      Factual Statements About Romeo's Backlog Not Alleged To Be False Are
                Not Actionable .................................................................................................8

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*,
No. 05-6998, 2006 WL 3161647 (S.D.N.Y. Oct. 30, 2006).................................................3, 5

*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*,
No. 17-1580, ECF 108, Opinion & Order re: Mot. To Dismiss (S.D.N.Y. May 24, 2018)
(Schofield, J.) ..................................................................................................................5

*Cohen v. Kitov Pharms. Holdings, Ltd., et al.*,
No. 17-0917, 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.) ............................5

*In re EDAP TMS S.A. Sec. Litig.*,
No. 14-6069, 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) (Schofield, J.).......................9, 10

*ExpertConnect, LLC v. Fowler, et al.*,
No. 1:18-cv-04828-JPC-OTW, 2018 WL 11264885 (S.D.N.Y. July 25, 2018)
(Schofield, J.) ................................................................................................................2, 3

*Lefkowitz v. Synacor, Inc.*,
No. 18-2979, 2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019) (Schofield, J.),
*aff'd, Shreiber v. Synacor, Inc.*, 832 F. App'x 54 (2d Cir. 2020) .............................................6

*Mahadeo v. N.Y.C. Campaign Fin. Bd.*,
514 F. App'x 53 (2d Cir. 2013) .......................................................................................2, 3

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)................................................................................................4

*In re Nielsen Holdings PLC Sec. Litig.*,
510 F. Supp. 3d 217 (S.D.N.Y. 2021)...................................................................................7

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)................................................................................................4

*In re Seadrill Ltd. Sec. Litig.*,
No. 14-9642, 2016 WL 3461311 (S.D.N.Y. June 20, 2016) (Schofield, J.).....................5, 7, 9

*Ventura-Nieves v. United States*,
No. 16-8802, 2017 WL 2061394 (S.D.N.Y. May 12, 2017), *aff'd, U.S. v. Ventura-Nieves*,
718 F. App'x 93 (2d Cir. 2018) ........................................................................................3, 5

*Villare v. Abiomed, Inc.*,
    No. 19-7319, 2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021) ....................................................7

## STATUTES

15 U.S.C.
    § 77z-1(b) ...................................................................................................................5
    § 77z-2(c) ...................................................................................................................6
    § 78u-4(b) ...................................................................................................................1
    § 78u-4(b)(1)-(2) ........................................................................................................5
    § 78u-4(b)(3) ..............................................................................................................5
    § 78u–5(i)(1)(A)-(C) ...................................................................................................7

## OTHER AUTHORITIES

S. REP. NO. 104-98 (1995) ...................................................................................................5

Defendants Romeo Power, Inc. ("Romeo"), Lionel E. Selwood Jr., and Lauren Webb (the "Remaining Defendants")[1] respectfully request reconsideration and/or clarification of the Court's Opinion and Order dated June 2, 2022 (ECF 107 ("Order")), which granted in part and denied in part the Defendants' motion to dismiss.

The Amended Complaint alleges that 14 different statements violated Section 10(b) of the Securities Exchange Act of 1934. The Order held that "[at] least one" of the alleged misstatements was adequately pled when accepting all of Plaintiffs' allegations as true. Order at 7. The Court did not address the remaining statements or the Remaining Defendants' arguments that those alleged misstatements were not actionable violations of the Exchange Act as a matter of law. Under the Private Securities Litigation Reform Act of 1995, "each statement alleged to have been misleading" and "each act or omission alleged to violate" the federal securities laws must be pleaded separately (15 U.S.C. § 78u-4(b)), and the Remaining Defendants respectfully request that the Court consider their arguments on two groups of alleged misstatements not addressed by the Order. Doing so would allow the parties to know whether this case includes any of the unaddressed allegations so that they may litigate this case in the most efficient manner possible.

**BACKGROUND**

The Amended Complaint ("AC") asserts claims under (i) Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against the Remaining Defendants and (ii) Sections 14(a) and 20(a) of the Exchange Act against the Director Defendants. ECF 82. The Court denied Defendants' motion to dismiss as to the claims against the Remaining Defendants, but granted the motion as to the Director Defendants. Order at 12-13. The Section 10(b) claim was based on

---

[1] The Court dismissed Robert S. Mancini, D. James Carpenter, Philip Kassin, Steven P. Buffone, W. Grant Gregory, W. Thaddeus Miller, and Craig Broderick (the "Director Defendants" and together with the Remaining Defendants, "Defendants"). Order at 12-13.

1

alleged misstatements in 14 separate documents or live events (*e.g.*, earnings calls). ECF 91 ("Mot."); ECF 91-1.

On November 5, 2021, Defendants moved to dismiss the Complaint. The Defendants raised several arguments, including, among other things, that Plaintiffs failed as a matter of law to allege any misstatements because (i) many of the at-issue statements were forward-looking statements that are protected by the Private Securities Litigation Reform Act ("PSLRA") statutory safe harbor (Mot. at 9-13) and (ii) the remaining statements were present-tense statements about Romeo's operations that Plaintiffs did not allege to be false or misleading (*id.* at 13-16).

The Court's Order acknowledged that "around fourteen different statements" are at issue in the litigation and analyzed "one of th[o]se statements…but not the others." Order at 7. In particular, the Court analyzed one of the present-tense statements about Romeo's operations concerning the number of companies supplying power cells to Romeo (the "Cell Supplier Statement") and concluded that Plaintiffs' allegations, accepted as true, adequately stated a claim. *Id.* The Court did not, however, address the Remaining Defendants' arguments that the other statements are not actionable as forward-looking statements and/or not alleged to be false at all.

This motion does not ask the Court to reconsider its holding with respect to the Cell Supplier Statement held to be actionable (and similar iterations of that statement), but does seek reconsideration with respect to some of the other alleged violations of Section 10(b) of the Exchange Act, as set forth in more detail below.

## ARGUMENT

### I.     LEGAL STANDARD

Local Civil Rule 6.3 authorizes motions for reconsideration where, among other reasons, "the moving party can point to controlling decisions or data that the court overlooked."

*ExpertConnect, LLC v. Fowler, et al.,* No. 18-048282018 WL 11264885, at *1 (S.D.N.Y. July 25, 2018) (Schofield, J.) (citing *Mahadeo v. N.Y.C. Campaign Fin. Bd.*, 514 F. App'x 53, 55 (2d Cir. 2013) (internal quotation marks omitted). In particular, motions for reconsideration are the appropriate device where issues raised in the parties' briefing and which would dispose of certain aspects of the case are not addressed in a court's decision on a motion to dismiss. *See, e.g., Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville*, No. 05-6998, 2006 WL 3161647, at *1 (S.D.N.Y. Oct. 30, 2006) (granting reconsideration motion where the court's opinion did not address issues raised in the parties' briefs and dismissing additional claims); *Ventura-Nieves v. U.S.*, No. 16-8802, 2017 WL 2061394, at *1-2 (S.D.N.Y. May 12, 2017) *aff'd*, *U.S. v. Ventura-Nieves*, 718 F. App'x 93 (2d Cir. 2018) (granting a motion for reconsideration when a party has demonstrated "that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.") (citation omitted).

## II.    RECONSIDERATION AND/OR CLARIFICATION IS WARRANTED

### A.    Ambiguity Regarding The At-Issue Statements Is A Case Management Issue

A case involving the Cell Supplier Statement is very different from a case in which the parties litigate all of the issues implicated in every single one of the sprawling, multi-topic statements that Plaintiffs included in the AC. Romeo made the Cell Supplier Statement on three occasions: October 15, 2020, December 10, 2020, and January 26, 2021. Discovery in a case concerning the Cell Supplier Statement might reasonably include discovery about the preparation of the three documents in which that statement appeared and more generally the relationship Romeo had with these four suppliers at this time. But discovery in a case concerning statements like "we have secured 300 million in revenue and we have another 2.4 billion under negotiation" or how much revenue Romeo expected to earn during 2021 (AC ¶¶ 74-75)—none of which are actionable here—would be far more expansive. It would involve discovery into the preparation of

3

all 14 statements Plaintiffs cite in the AC and would cross from the supply side to the demand side by calling for discovery on numerous topics related to Romeo's relationships with its customers and its expected future revenue streams and timing. The net result is that the parties would take substantial discovery on alleged violations that the Remaining Defendants have believed were not actionable from the outset, only to return to the Court some months or years down the road with the Remaining Defendants making the same arguments for dismissal as a matter of law that they made in their motion to dismiss.

The inefficiency of this approach is underscored by the fact that, in a securities class action like this one, the dates on which allegedly false statements were made is a factor in the models experts often use to estimate potential damages at the class certification and merits phases. It makes little sense to litigate these issues knowing that the Remaining Defendants will make (either on a motion for judgment on the pleadings or a motion for summary judgment) the very same arguments that they made in their motion to dismiss for why certain statements were not actionable from the outset. The exclusion of certain statements at that later point could require certain of this expert work and related discovery to be redone. At a minimum, the uncertainty created by the parties' divergent views on these issues and the scope of the case will make an early resolution of the matter exceedingly challenging, if not impossible.

**B.    The PSLRA Requires Alleged Violations To Be Pleaded On A Statement-By-Statement Basis**

Claims under Section 10(b) are fraud claims that are subject to "stringent" pleading requirements of Rule 9(b). *See Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). In the Second Circuit, plaintiffs must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

When Congress enacted the PSLRA in 1995, it imposed even more specific demands, requiring that a plaintiff must "state with particularity" (i) "each act or omission alleged to violate" Section 10(b); (ii) the "reasons why"; and (iii) "with respect to each act or omission alleged to violate [Section 10(b)]," the "facts giving rise to a strong inference" that each defendant acted with the intent to engage in fraud (or scienter). 15 U.S.C. § 78u-4(b)(1)-(2). Noncompliance with these rules mandates dismissal. 15 U.S.C. § 78u-4(b)(3); *In re Seadrill Ltd. Sec. Litig.*, No. 14-9642, 2016 WL 3461311, at *6 (S.D.N.Y. June 20, 2016) (Schofield, J.).

Put another way, the PSLRA was designed to avoid unnecessary spending in securities litigation by ensuring that "each statement alleged to have been misleading" was aired and tested in a motion to dismiss before discovery could begin. *See* S. REP. NO. 104-98, at 4 (1995) (Conf. Rep.); *see also* 15 U.S.C. § 77z-1(b) (PSLRA provision staying discovery pending resolution of motion to dismiss). Although the manner in which Plaintiffs assembled the many lengthy statements they seek to challenge made this PSLRA statement-by-statement inquiry difficult here, this Court, like many others in the Second Circuit, routinely analyzes each alleged misstatement (or category of alleged) misstatements when ruling on a motion to dismiss. *See, e.g., Cohen v. Kitov Pharm. Holdings, Ltd.,* 2018 WL 1406619, at *2 (S.D.N.Y. Mar. 20, 2018) (Schofield, J.); Exhibit 1 (*In re Chicago Bridge & Iron Company N.V. Sec. Litig.*, No. 17-1580, ECF 108, Opinion & Order re: Mot. To Dismiss (S.D.N.Y. May 24, 2018) (Schofield, J.)).

In this District, a motion for reconsideration is a vehicle for the parties to seek a ruling on issues raised in their briefing, but absent from the court's ultimate opinion. *Barbaro*, 2006 WL 3161647, at *1; *Ventura-Nieves*, 2017 WL 2061394, at *1-2. However, if the Court prefers to address in a different context—for example, a motion for judgment on the pleadings filed pursuant

5

to Rule 12(c)— the question of whether these alleged violation are actionable as a matter of law then the Remaining Defendants will follow the Court's guidance.

**III.    THE FORWARD LOOKING STATEMENTS AND THE FACTUAL BACKLOG STATEMENTS SHOULD BE DISMISSED AS A MATTER OF LAW**

**A.    The Forward-Looking Statements Are Not Actionable**

Under the PSLRA safe harbor, a statement is not actionable if "(1) the forward-looking statement is identified and accompanied by meaningful cautionary language, (2) the forward-looking statement is immaterial, or (3) the plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading." *Lefkowitz v. Synacor, Inc.*, No. 18-2979, 2019 WL 4053956, at *9 (S.D.N.Y. Aug. 28, 2019) (Schofield, J.) *aff'd, Shreiber v. Synacor, Inc.*, 832 F. App'x 54 (2d Cir. 2020) ("Because the safe harbor is written in the disjunctive, a forward-looking statement is protected under the safe harbor if any of the three prongs applies.") (citation omitted); *see also* 15 U.S.C. § 77z-2(c) (safe harbor).  The PSLRA safe harbor applies to the following statements, which were not addressed in the Opinion:

- "The portion of our backlog as of September 30, 2020, that is expected to be recognized in the twelve-month period following September 30, 2020 is approximately $59 million."  AC ¶ 111; *see also id.* ¶ 136; *id.* ¶ 178.[2]

- "[W]e expect to recognize greater than 10% of this backlog revenue over the twelve-month period following September 30, 2020."  AC ¶ 112; *see also id.* ¶ 137; *id.* ¶ 179.

- "The portion of our backlog as of December 31, 2020, that is expected to be recognized in the twelve-month period following December 31, 2020 is approximately $23.4 million."  AC ¶ 149; ; *id.* ¶ 95; *see also id.* ¶ 158.

- "Of the $555.1 million of unsatisfied performance obligations as of March 31, 2021, $23.4 million is expected to be satisfied during the fiscal year ending December 31, 2021, $442.4 million is expected to be satisfied during our fiscal years ending December 31, 2022 and 2023, and the remaining $89.3 million is expected to be satisfied thereafter."  AC ¶ 157.

---

[2] Underlined emphasis added throughout.

- "All contracted revenue amounts also <u>assume continued performance by Romeo</u> of its contractual obligations and satisfaction of customary testing and quality required under each customer contract." AC ¶ 178.

- "Our current business plan <u>assumes that we will fulfill</u> all of the demand for the 1.6 billion in revenue out of our existing factory. And we have the space and the capacity here to do that . . . . So at this point we run one full line and we have the ability to put up to 10 more pack line, excuse me, module pack combinations here in order to accommodate that amount of demand." AC ¶ 126.

- "[N]ow <u>we're focused on securing our capacity</u> for the long term. So I don't see any big challenges as our order book continues to grow." AC ¶ 128.

- "[W]e are driving to secure cell supply over the short, medium and long-term." AC ¶ 154.

- "What we've been doing is just ensuring our long-term outlook, locking down the supply . . . . So I'm highly confident in our ability to bring these deals over the line." AC ¶ 155.

Statements about "projected revenues" from an "order backlog" "are forward looking statements that fall within the PSLRA's safe harbor." *Seadrill*, 2016 WL 3461311, at *9; *see also In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 230 (S.D.N.Y. 2021) ("Revenue forecasts are, by definition, forward-looking statements.") (citing 15 U.S.C. § 78u–5(i)(1)(A)–(C)). The same is true of the statements that Romeo Power was "focus[ing] on securing our capacity for the long term" (AC ¶ 128) and "driving to secure cell supply over the short, medium, and long-term" (AC ¶ 154). *See also Villare v. Abiomed, Inc.*, No. 19-7319, 2021 WL 4311749, at *17 (S.D.N.Y. Sept. 21, 2021) (statement that defendants "have or will have sufficient supply of formulated drugs to meet our commercial forecast" was forward-looking statement). And all of these statements were accompanied by meaningful cautionary language. Mot. at 4-5, 10-11. The Remaining Defendants respectfully request that the Court reconsider the arguments they made on these points (*see id.* at 9-13) and dismiss claims related to the alleged violations of Section 10(b) listed above because they are not actionable as a matter of law.

7

**B.    Factual Statements About Romeo's Backlog Not Alleged To Be False Are Not Actionable**

The Remaining Defendants also challenged several present-tense statements about Romeo's business (Mot. at 13-16). The Order addressed one of these statements, relating to the number of companies supplying Romeo with battery cells.  Order at 7.  The Remaining Defendants respectfully request that the Court reconsider arguments they made on the following present-tense statements, which Plaintiffs do not allege to be false.  Defendants request that the court reconsider (or at a minimum, clarify) its Order with respect to the following statements:

- "[O]ver $300 million of currently contracted revenue."  AC ¶ 108.

- "To-date, we have secured more than 300 million dollars in committed revenues." AC ¶ 109.

- "As of September 30, 2020, we had a backlog of approximately $310 million, of which approximately $240 million represented the minimum revenue that would be received under such contracts to satisfy take or pay minimum order commitments."  AC ¶ 111; *see also id.* ¶ 136; *id.* ¶ 178.

- "[O]ur backlog does not represent a guarantee that our customers will complete purchases of our products and services in the quantities that we anticipate, and some of our contracts allow our customers to purchase in smaller quantities with certain minimum order penalties. All contracted revenue amounts also assume continued performance by Romeo of its contractual obligations and satisfaction of customary testing and quality required under each customer contract." AC ¶ 111; *see also id.* ¶ 136.

- "Minimum take or pay order commitments related to contracts signed through November of 2020 exceed $500 million of backlog."  AC ¶ 112; *see also id.* ¶ 137; *id.* ¶ 179.

- "Today we have secured 300 million in revenue[.]"  AC ¶ 121.

- "And that's how we've been able to secure $544 million in contracted revenue and have another $2.2 billion under advanced negotiation."  AC ¶ 123.

- "So that brought the backlog up from the 310 million from announcement to 544 million the way it currently stands now.  But now we're at 544 million in committed revenue, with another 2.2 billion on the advanced negotiation."  AC ¶ 124.

8

- "We are not a pre-revenue company. We have 544 million in contracted backlog revenue . . . . we've been delivering to our customers, and we deliver to our customers on a weekly basis, right now." AC ¶ 132.

- "I want to emphasize that we see this cell shortage as temporary, and are confident it will not affect our intermediate and longer-term opportunities . . . . I want to emphasize again, that the cell shortage we are facing in 2021 is not expected to have a material impact on our committed backlog." AC ¶ 146.

- "We don't expect any impacts to our backlog…we are not expecting that there is any hits to the overall backlog, just a matter of timing." AC ¶ 147.

- "As of December 31, 2020, we had a backlog of approximately $555 million." AC ¶ 149.

- "All contracted revenue amounts also assume continued performance of our contractual obligations and satisfaction of customary testing and quality required under each customer contract." AC ¶ 149.

- "As of March 31, 2021, we had executed certain contracts with customers to delivery specific battery packs, modules, and battery management system and software services.  These contracts contain minimum quantity purchase requirements that are non-cancellable (other than for a breach by Romeo)[.]" AC ¶ 157.

- "As of March 31, 2021, we had $555.1 million of unsatisfied performance obligations related to minimum quantity purchase commitments included in these contracts. For $311.9 million out of the $555.1 million of unsatisfied performance obligations related to minimum quantity purchase commitments, if the customers do not follow through on their minimum purchase commitments, we would receive a maximum of $292.5 million under certain make-whole provisions included in these contracts." AC ¶ 157.

- "Minimum quantity commitments related to contracts signed through March of 2021 exceed $555.1 million of backlog." AC ¶ 158.

As the Remaining Defendants argued (Mot. at 13-16), statements that are accurate when made cannot sustain a fraud claim as a matter of law. *See Seadrill*, 2016 WL 3461311, at *11 ("The [alleged misstatements] are not actionable as they are accurate, and the Complaint does not allege otherwise."). Even a claim "that Defendants knew the contracts and backlog were in doubt" does not make "statements . . . describing . . . contracts, as well as the amount of backlog" false misleading. *Id.* at *9; *see also In re EDAP TMS S.A. Sec. Litig.,* No. 14-6069, 2015 WL 5326166,

at *8-9 (S.D.N.Y. Sept. 14, 2015) (Schofield, J.) ("[A]ccurate statements about past performance are self evidently not actionable under the securities laws. . . . Disclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future.") (citation omitted).[3]

## CONCLUSION

For the foregoing reasons, the Remaining Defendants respectfully request that this Court grant their motion for reconsideration and/or clarification with respect to the statements listed above.

---

[3] Many of the 14 statements that Plaintiffs include in the AC consist of multi-paragraph block quotes that do not appear to be alleged false. *See, e.g.*, AC ¶ 126 ("One of the reasons we chose [the Los Angeles, California] location was because we  could expand incrementally to make sure that we were being smart with the  capital expenditures we were making."). Defendants' motion to dismiss identified the portions of the statements that appeared to be in dispute and presented argument on why those statements are not actionable as a matter of law. *See* ECF 91 & ECF  91-1.  On this motion, for the Court's convenience, the Remaining Defendants have included within the body of this document the text of the statements that are the subject of this motion.

Dated:  June 16, 2022

Respectfully Submitted,

**LATHAM & WATKINS LLP**

*/s/ Jeff G. Hammel*
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: jeff.hammel@lw.com
Email: jason.hegt@lw.com

Kristin N. Murphy (admitted *pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755.8290
Email: kristin.murphy@lw.com

*Attorneys for Defendants Romeo Power Inc. (f/k/a RMG Acquisition Corp.), Lionel E. Selwood, Jr., and Lauren Webb*

11