**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ROMEO POWER INC.
SECURITIES LITIGATION

Case No. 1:21-cv-03362-LGS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR**
**RECONSIDERATION AND/OR CLARIFICATION**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     THE COURT SHOULD DENY DEFENDANTS' MOTION FOR RECONSIDERATION .... 3

        A.      Defendants Fail To Meet The High Standards Required For Reconsideration ...... 3

        B.      Defendants Are Not Entitled To Dismissal As A Matter Of Law On Romeo's Present Tense "Backlog" Statements.................................................................................... 5

        C.      Defendants Are Not Entitled To Dismissal Based On The PSLRA Safe Harbor... 7

                1.      Defendants' Claim Of $59 Million In Backlog Revenue Encompassed Material Omissions And Misrepresentations Of Present Fact ................................... 7

                2.      The Safe Harbor Does Not Apply Because The Statements Lacked Meaningful Cautionary Language And Defendants Had Actual Knowledge Of Facts That Rendered The Statements Misleading ......................................................... 8

III.    CONCLUSION.............................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*City of New York v. Western Heritage Ins. Co.*,
2015 WL 1809539 (E.D.N.Y. Apr. 20, 2015) ........................................................................ 3, 4

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .............................................................................. 7

*Curran v. Freshpet, Inc.*,
2018 WL 394878 (D.N.J. Jan. 12, 2018) ..................................................................................... 7

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) .......................................................................................... 7

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
2018 WL 2382600 (S.D.N.Y. May 24, 2018) .......................................................................... 4, 8

*In re EDAP TMS S.A. Sec. Litig.*,
2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) ............................................................................. 6

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F. Supp. 3d 596 (S.D.N.Y. 2017) .......................................................................................... 7

*In re Seadrill Ltd. Sec. Litig.*,
2016 WL 3461311 (S.D.N.Y. June 20, 2016) .......................................................................... 4, 6

*In re XL Fleet Corp. Sec. Litig.*,
2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ................................................................................ 4

*Jun Kong v. Wing Keung Enter.*,
2017 WL 6021596 (E.D.N.Y. Dec. 4, 2017) ............................................................................... 3

*McMahan & Co. v. Wherehouse Entm't, Inc.*,
900 F.2d 576 (2d Cir. 1990) ........................................................................................................ 5

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) ........................................................................................................ 8

*Moshell v. Sasol Ltd.*,
481 F. Supp. 3d 280 (S.D.N.Y. 2020) .......................................................................................... 8

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., LLC*,
595 F.3d 86 (2d Cir. 2010) .......................................................................................................... 2

*S.E.C. v. Gabelli*,
  653 F.3d 49 (2d Cir. 2011)..................................................................................... 5

*S.E.C. v. Hurgin*,
  484 F. Supp. 3d 98 (S.D.N.Y. 2020)...................................................................... 6

*Shrader v. CSX Transp. Inc.*,
  70 F.3d 255 (2d Cir. 1995)..................................................................................... 3

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010)................................................................................ 8, 9

*Solomon v. Sprint Corp.*,
  2022 WL 889897 (S.D.N.Y. Mar. 25, 2022) .......................................................... 6

*T.W. v. New York State Board of Law Examiners*,
  2019 WL 6034987 (E.D.N.Y. Nov. 14, 2019)......................................................... 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................................. 9

*Yannes v. SCWorx Corp.*,
  2021 WL 2555437 (S.D.N.Y. June 21, 2021) ........................................................ 6

## REGULATIONS

17 CFR § 240.10b–5(b) ......................................................................................... 2, 5

## I.    PRELIMINARY STATEMENT

This action concerns Romeo Power, Inc. ("Romeo"), an Electric Vehicle battery pack manufacturer that went public in a SPAC transaction in late 2020.[1] Battery cells are a crucial component of Romeo's products. Plaintiffs allege that Defendants misled investors by repeatedly touting Romeo's supposedly "secured" revenue (or backlog) and exponential near-term sales growth, while assuring that Romeo had the battery cell supply necessary to turn its orders into sales. In fact, Romeo did *not* have the cells necessary to ramp production and fulfill orders, a truth investors only partially learned when Romeo reported poor sales results in its very first earnings report as a public company. ¶86. As Romeo's new CFO eventually admitted on August 16, 2021, cell supply had only then-recently been secured and, as such, "the second half of 2021 is expected to be the *beginning* of a period of the ramp-up of sales and operating activity for us." ¶¶103, 107.

Defendants moved to dismiss and the Court granted the motion, in part, dismissing Plaintiffs' claims under §14(a) of the Exchange Act. ECF No. 107 (the "Order"). The Court denied Defendants' motion to dismiss Plaintiffs' §10(b) claims, finding that Plaintiffs alleged actionable misrepresentations about Romeo's cell suppliers. *Id.* at 7. The Court considered Defendants' arguments to dismiss other related supply statements, but declined to dismiss them. *Id*.

Defendants' motion for reconsideration is unwarranted. The Court correctly assessed the elements of §10(b) and applied the pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). The Court also correctly understood the statements Plaintiffs alleged to be false or misleading and considered Defendants' arguments for dismissal. Defendants do not identify any controlling Second Circuit authority or relevant fact that the Court overlooked in denying their motion to dismiss. Nor has there been an intervening change in law. Instead, Defendants merely repeat

---

[1] Defendants are Romeo, CEO Lionel Selwood; and CFO Lauren Webb. All "¶_" citations are to the Amended Class Action Complaint (ECF No. 82, the "Complaint"). Unless otherwise noted, all emphasis is added and internal citations are omitted.

1

arguments already made in their motion to dismiss, which the Court considered and did not accept. As a result, Defendants fail to meet the high factual and legal standards required for reconsideration.

Furthermore, in their motion, Defendants mischaracterize Plaintiffs' allegations and prior briefing, incorrectly arguing that Plaintiffs did not allege statements about Romeo's backlog to be false or misleading. Mot. at 2, 8. But Plaintiffs alleged exactly that: Defendants misleadingly hyped hundreds of millions of dollars in backlog orders as supposedly "secured" revenue to engender investor confidence, but concealed that Romeo lacked the battery cells necessary to convert those backlog orders into *actual* revenue in a meaningful way. Defendants' related argument that the backlog statements are unactionable as a matter of law because the statements were "literally true" also ignores controlling law that makes clear that even literally true statements are actionable under the securities laws if they are likely to mislead reasonable investors. 17 CFR § 240.10b–5(b); *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., LLC*, 595 F.3d 86, 92 (2d Cir. 2010). Indeed, the "veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers." *Id*.

Defendants also are not entitled to dismissal as a matter of law under the PSLRA safe harbor for forward-looking statements. The only arguably forward-looking statement at issue is Defendants' claim that Romeo would record $59 million in backlog revenue by the end of its third quarter as a public company. But the safe harbor does not insulate misleading *omissions* or forward-looking statements that encompass present facts, as Plaintiffs allege here. Further, Romeo's supposed cautionary language warning of *hypothetical* cell supply delays was not meaningful where Defendants knew such delays were already occurring. Finally, Plaintiffs allege Defendants' knowledge of facts at the time that rendered the near-term sales figure misleading, including that Defendants *saw* Romeo's factory floor was barely running, let alone running at the increased pace necessary to book $59 million in backlog revenue by September 30, 2021.

Finally, the Court should not countenance Defendants' suggestion that they might *also* file a Rule 12(c) motion if their current motion fails to generate the result they want. Mot. at 5-6. Such a third bite at the apple would be an abusive seriatim challenge to the pleadings, unreasonably multiplying the proceedings, straining judicial resources, and delaying litigation already found to have merit under the stringent pleading requirements of the PSLRA and Rule 9(b). Defendants' motion should be denied and the parties should proceed to discovery on the full scope of the alleged causes of action that were not dismissed. Defendants' position, which would require the Court to separately address each alleged statement, is without basis in law. If the Court nonetheless wishes to address this issue, it can simply reiterate that it considered each of Defendant's challenges to the Complaint, and to the extent those challenges were accepted by the Court, the allegations deemed insufficient by the Court to state a claim were dismissed and those that were sufficient survived.

## II.     THE COURT SHOULD DENY DEFENDANTS' MOTION FOR RECONSIDERATION

### A.     Defendants Fail To Meet The High Standards Required For Reconsideration

The standard on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to ***controlling decisions or data that the court overlooked***—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *T.W. v. New York State Board of Law Examiners*, 2019 WL 6034987, at *1 (E.D.N.Y. Nov. 14, 2019) (reconsideration is "an ***extraordinary*** remedy to be employed ***sparingly***").

"***A motion for reconsideration is not a tool for relitigating old issues***, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Jun Kong v. Wing Keung Enter.*, 2017 WL 6021596, at *1 (E.D.N.Y. Dec. 4, 2017). A party may not "repeat arguments already briefed, considered and decided." *City of New York v. Western Heritage Ins. Co.*, 2015 WL 1809539, at *2 (E.D.N.Y. Apr. 20, 2015). "Therefore, a motion must be narrowly

3

construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court." *Id.* The narrow grounds that justify granting such a motion "are [1] an intervening change in controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice." *Id.* None of these is present here.

Defendants cite no change in law or new evidence that requires reconsideration. Rather, they claim as clear error the Court's decision not to separately address each false statement alleged in the Complaint (Mot. at 4-5), but cite no authority that either the Exchange Act or the PSLRA required the Court to do so. Instead, Defendants cite a four-year old decision of this Court where the Court did address various categories of statements. Mot. at 5 (citing *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600 (S.D.N.Y. May 24, 2018)). But the contours of one prior decision do not mandate the same approach in every case. Defendants also fail to mention a more recent case where the Court employed a similar approach to the one reasonably taken here.[2] In short, the Order is not erroneous simply because the Court did not mimic a prior order and rule on each statement separately.

To the contrary, Defendants acknowledge that the Court was aware of, and applied, the PSLRA and Rule 9(b) standards. *See* Mot. at 4-5 (reciting §10(b) elements, PSLRA requirements, and citing *In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at *6 (S.D.N.Y. June 20, 2016) (Schofield, J.) for the proposition that "[n]oncompliance with these rules mandates dismissal."). In other words, the Court, fully aware of the requirements to state a claim under §10(b) and the PLSRA—and aware that a failure to meet those requirements mandates dismissal—considered the arguments in Defendants' Rule 12(b)(6) motion and ***did not dismiss the challenged statements***.

---

[2] *See* ECF No. 104 (Defendants' Request for Judicial Notice of order in *XL Fleet*). In *XL Fleet*, the Court, like here, declined to dismiss because plaintiffs sufficiently alleged a § 10(b) claim and presented its falsity analysis on one category of statements, noting "[t]hat category, but not the others, is discussed below." *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) (Schofield, J.). Further, the separate analysis in *Chicago Bridge* makes sense as the plaintiffs there alleged three distinct categories of statements. Here, by contrast, Romeo's undisclosed cell supply shortage permeates all of the false statements alleged.

**B.    Defendants Are Not Entitled To Dismissal As A Matter Of Law On Romeo's Present Tense "Backlog" Statements**

Defendants repeatedly mischaracterize the Complaint and prior briefing on Romeo's "backlog" statements, claiming ***incorrectly*** that "Plaintiffs did not allege [them] to be false or misleading" and that they were "not alleged to be false at all" (Mot. at 2; *id.* at 8). This misstates the record on the "backlog" statements, which Plaintiffs ***clearly*** alleged to be misleading.[3]

During the Class Period, Defendants repeatedly touted Romeo's supposedly "secured" backlog revenue, claiming upwards of $300 million in October 2020, which grew to $555 million by December 2020. ¶¶3-5. Defendants concede the statements were not forward-looking. Mot. at 8. They seek dismissal based on what they argue is the statements' "literal truth." Mot. at 9. But literal truth does not necessarily support dismissal as a matter of law under the securities laws. Rather, Defendants violate §10(b) where, as here, they "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 CFR § 240.10b–5(b). Thus, "so-called 'half-truths'—literally true statements that create a materially misleading impression—will support claims for securities fraud." *S.E.C. v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011) *reversed on other grounds*, 568 U.S. 442 (2013); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 900 F.2d 576, 579 (2d Cir. 1990) (true statements "can become, through their context and manner of presentation, devices which mislead investors.").

Defendants' "literal truth" argument, which ignores Plaintiffs' actual allegations, fails. Plaintiffs do not allege that the backlog *orders* were themselves fraudulent. Instead, Defendants' repeated touting of the backlog as "secured" revenue (¶¶3-5, 56-59), combined with Selwood's assurances that Romeo had sufficient cell supply to fulfill those orders (¶85), and Romeo's assurance that the backlog "enhance[ed] visibility" into its growth (¶108), was misleading where Defendants

---

[3] *See* ¶¶108-10 (misleading backlog in 10/5/2020 Form 8-K); ¶¶111-13 (Registration Statement); ¶¶121-22 (12/13/2020 interview); ¶¶ 123-25 (12/14/2020 interview); ¶¶132-33 (12/28/2020 interview); ¶¶136-38 (January 2021 Prospectus); ¶¶149-50 (2020 Form 10-K); ¶¶157-59 (1Q21 Form 10-Q); *see also* ECF No. 96 ("Opp MTD") at 13-14.

concealed the material cell shortage that was ***then***-delaying production and the conversion of backlog orders into sales. *Solomon v. Sprint Corp.*, 2022 WL 889897, at \*6 (S.D.N.Y. Mar. 25, 2022) (though technically true, statements about Sprint's postpaid sales were misleading because the company knew, and did not disclose, that previous growth would not continue); *S.E.C. v. Hurgin*, 484 F. Supp. 3d 98, 105, 110-12 (S.D.N.Y. 2020) ("backlog and pipeline figures" misleading because terminations at company's largest customer "could endanger the potential orders and revenue" from the customer); *Yannes v. SCWorx Corp.*, 2021 WL 2555437, at \*4 (S.D.N.Y. June 21, 2021) (touting $840 million committed purchase order of COVID test kits actionable given undisclosed problems with supplier).[4] Romeo's end-of-Class Period admissions belied their prior assurances about Romeo's backlog and the cell supply needed to convert orders to sales: Romeo did not even *begin* to ramp production until the second half of 2021 because prior to then *it did not have the cells*. ¶¶103-7.

Relatedly, Selwood's claim on December 28, 2020 that "***we are not a pre-revenue company***" may have been literally true because, as Defendants argued in their motion to dismiss, Romeo booked $8.97 million in revenue in 2020. MTD at 15, Mot. at 9. But the *context* of his statement—made on the day of the RMG shareholder vote to approve the SPAC deal for Romeo's IPO, and in reference to Romeo's "$544 million in contracted backlog revenue" and that Romeo was already delivering on orders[5]—shows that he was not talking about Romeo's meager 2020 revenue, but specifically (and

---

[4] Defendants' reliance on *In re Seadrill Ltd. Sec. Litig.*, 2016 WL 3461311, at \*9 (S.D.N.Y. June 20, 2016) is misplaced. Mot. at 9. The "accurate" statements at issue there involved the Seadrill Board's decision to maintain current dividend levels, which it did. Only *after* the occurrence of a subsequent fact—the imposition of sanctions against Russia for its annexation of Crimea—did the company suspend its dividend. Here, by contrast, Plaintiffs allege the existence of present facts, the cell shortage, that rendered the backlog statements misleading *when made*.

*In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at \*8-\*9 (S.D.N.Y. Sept. 14, 2015) (Mot. at 9) is similarly distinguishable. There, statements about past events in the company's pre-market approval application to the FDA were not actionable where the plaintiffs, unlike here, did "not allege the facts underlying these statements to be false." *Id.* at \*10.

[5] Selwood stated: "***We are not a pre-revenue company. We have 544 million in contracted backlog revenue***, with another 2.2 billion under advance negotiation. So … ***we've been delivering to our customers, and we deliver to our customers on a weekly basis, right now.***" ¶132.

misleadingly) assuring investors that Romeo was solidly delivering on its backlog revenue, when the facts show it was not. ¶132.

Put another way, Defendants' touting Romeo's backlog as "secured" revenue, while concealing that Romeo lacked the cells necessary to convert those backlog orders to actual revenue in any meaningful way, "'affirmatively creat[ed] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed],' and therefore it is actionable." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 453 (S.D.N.Y. 2005). The backlog statements formed a materially misleading impression about Romeo's business, and they cannot be dismissed as unactionable as a matter of law. Just as with materiality, the question of whether a statement is misleading "***must go to a jury*** unless the Court, drawing all reasonable inferences in favor of the plaintiff, determines that *reasonable minds could not differ on the question of whether the statements alleged in the complaint were misleading in light of the circumstances under which they were made*." *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 609 (S.D.N.Y. 2017).

### C.   Defendants Are Not Entitled To Dismissal Based On The PSLRA Safe Harbor

#### 1.   Defendants' Claim Of $59 Million In Backlog Revenue Encompassed Material Omissions And Misrepresentations Of Present Fact

Romeo's claim that it expected to record $59 million of backlog revenue by September 30, 2021, is rendered misleading by the omission of Romeo's then-existing supply shortage that put the target at material risk.[6] The safe harbor does not apply to such omissions. *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *12 (S.D.N.Y. Mar. 25, 2013); *Curran v. Freshpet, Inc.*, 2018 WL 394878, *4-*5 (D.N.J. Jan. 12, 2018) (no safe harbor for statements regarding future pet food

---

[6] *See* ¶¶111-12 (Registration Statement), ¶¶136-37 (Jan. 2021 Prospectus). Defendants later decreased the near-term backlog revenue guidance to $23.4 million for the 12-months ending December 31, 2021 (¶¶148-49, 157-58), but even the reduced figure was overstated and misleading. Defendants also complain that Romeo's fiscal year 2022 and 2023 projections are not actionable, but Plaintiffs clearly do not challenge them. *Compare* Mot. at 6 (emphasizing 2022 and 2023 projections within ¶157) *with* ¶157 (alleging 2021 near-term backlog revenue is misleading) *and* Plffs' Opp MTD at 15-18.

sales where the defendants omitted existing problems with manufacturing and retailers).

Moreover, "when an allegedly false statement has both a forward looking aspect *and an aspect that encompasses a representation of present fact, the safe harbor provision of the PSLRA does not apply*." *Chicago Bridge*, 2018 WL 2382600, at \*8. Here, Romeo's claims that it expected to complete $59 million in backlog orders by the end of September 2021—repeated as late as January 26, 2021 (¶¶136-37)—"encompasse[d] a representation of present fact," to wit, that Romeo had a sufficient supply of cells and was then actually manufacturing at the pace necessary to reach $59 million on the stated timeline, which *it clearly was not*. *E.g.* ¶¶103-07 (production did not *start* to ramp until August 2021 due to lack of cells); *see also* Plffs' Opp MTD at 15-16.

### 2. The Safe Harbor Does Not Apply Because The Statements Lacked Meaningful Cautionary Language And Defendants Had Actual Knowledge Of Facts That Rendered The Statements Misleading

"To avail themselves of safe harbor protection under the meaningful cautionary language prong, defendants must demonstrate that their cautionary language was not boilerplate and conveyed substantive information." *Slayton v. Am. Express Co.*, 604 F.3d 758, 772 (2d Cir. 2010). At the end of the Class Period, Romeo *admitted* that it lacked cell supply prior to August 2021 and, as a result, had not yet *begun* to ramp up operating activities and sales. ¶¶103-07. None of Romeo's Class Period "risk warnings" warned about that existing supply problem. MTD at 4-5, 10-11. Instead, the warnings were presented as *hypothetical*.[7] Warning of a hypothetical problem while concealing the *actual shortage that was then harming* Romeo's business precludes the safe harbor. *Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 289 (S.D.N.Y. 2020), *reconsideration denied*, 2021 WL 3174414 (S.D.N.Y. July 24, 2021); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (warning of risk of environmental violations misleading when concealing ongoing pollution violations); Opp MTD at 17.

---

[7] ¶¶117-18, 140-41 (*e.g.*, "the inability of our suppliers to deliver necessary components of our battery products . . . *could* have a material adverse effect on our business" and "disruption of supply or shortage of any of our battery components, particularly cells, *could* harm our business").

In addition, the safe harbor does not apply if "a reasonable person would…deem an inference that the defendants (1) did not genuinely believe the [ ] statement, (2) actually knew that they had no reasonable basis for making the statement, or (3) *were aware of undisclosed facts tending to seriously undermine the accuracy of the statement*, 'cogent and at least as compelling as any opposing inference.'" *Slayton*, 604 F.3d at 775 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd. ("Tellabs II")*, 551 U.S. 308, 323 (2007)). Plaintiffs allege Defendants' knowledge of undisclosed facts—Romeo's lack of cell supply—that seriously undermined the near-term revenue figures. Romeo claimed it would book $59 million in backlog revenue during the 12-months ending September 30, 2021 (*i.e.*, by the end of its ninth month as a public company). By comparison, Romeo booked a mere $4.85 million of product revenue in 2019. ECF No. 96-1. To grow that quickly and capture that backlog revenue on the stated timeline, Romeo would have needed to ramp production dramatically and consistently throughout that 12-month period. But as Romeo's new CFO admitted in August 2021, the production ramp did not even begin until sometime in the second half of 2021, because prior to that time Romeo did not have the cells. ¶ 103.[8] Plaintiffs' inference—that Defendants were aware of a lack of cells that materially hampered Romeo's production and thus "seriously undermine[d]" its ability to book near-term sales at the stated pace—is certainly cogent and *at least* as compelling as any opposing inference. *See* MTD at 18, 20-23.

Unable to escape the strength of Plaintiffs' inference, Defendants ignore what Plaintiffs actually allege to be misleading. For example, Defendants claim statements in ¶126 and ¶128 are not actionable because they are forward looking, but ignore the context of each statement that makes it actionable. Selwood's assurance that "*now we're focused* on securing our capacity *for the long*

---

[8] That Romeo's factory floor was barely running was reflected in its results: Romeo's 1Q 2021 product revenue (which, given Romeo's 16-week production lead time, ¶168, consisted of products manufactured in the fall of 2020) was a fraction of the prior quarter—which itself was down 51.5% Year-Over-Year. ¶101; ECF No. 96-1. And Defendants admitted the 4Q 2020 results were also hampered by the lack of cells. ¶86. In other words, in the fall of 2020, Defendants *saw* Romeo's production decline dramatically due to the lack of cells while the near-term sales figures they touted required it to be increasing dramatically.

9

*term*"—which is a statement about current activities, not a future prediction—was made in response to a question about Romeo's ability to secure enough cells to fulfill its large orders given the current "tight supply of raw materials for batteries." ¶¶76-77, 128. Assuring that Romeo was focused on long-term supply misleadingly suggested that Romeo had sufficient short term supply, which was false. Selwood further falsely assured he didn't "see any big challenges as our order book continues to grow"—concealing the very "big challenge" of Romeo's lack of cells. During the same conference, Webb conceded "[o]ur current business plan assumes that we will fulfill all of the demand for the 1.6 billion in revenue out of our existing factory." ¶126. She continued, "[a]nd we have the space and the capacity here to do that." *Id.* While Romeo may have had the factory space, Webb omitted that Romeo's factory floor was barely running because the Company ***didn't have the cells*** necessary to fulfill demand—*i.e.*, contrary to her assurance, Romeo did not have "the capacity" to meet demand. *See* Plffs' Opp. MTD at 10-11.

## III.    CONCLUSION

The Court previously considered Plaintiffs' Complaint, Defendants' arguments in support of dismissal, and decided not to dismiss the statements Defendants re-challenge now. The Court got it right the first time: dismissal of the challenged statements is not warranted and would constitute legal error. Defendants' motion for reconsideration fails to meet the high standards required, and gives the Court no reason to change its prior holding. The motion should be denied in its entirety.

Dated: June 24, 2022

GLANCY PRONGAY & MURRAY LLP

By: */s/ Kara M. Wolke*
Kara M. Wolke (*pro hac vice*)
Melissa C. Wright (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150
Email: kwolke@glancylaw.com
Email: mwright@glancylaw.com

*Attorneys for Plaintiffs and the Putative Class*

**PROOF OF SERVICE**

I, the undersigned say: I am not a party to the above case and am over eighteen years old. On June 24, 2022, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 24, 2022.

_s/ Kara M. Wolke_
Kara M. Wolke