```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                              :
                                                              :
                                                              :
In re ROMEO POWER INC. SECURITIES             :      21 Civ. 3362 (LGS)
LITIGATION.                                                   :
                                                              :      OPINION AND ORDER
                                                              :
                                                              :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Defendants Romeo Power Inc. ("Romeo"), Lionel Selwood and Lauren Webb move for reconsideration or clarification of the Court's Order dated June 2, 2022, granting in part and denying in part Defendants' motion to dismiss the Amended Complaint (the "Complaint"). For the reasons discussed below, Defendants' motion is denied.

I.  BACKGROUND

In the Order, Defendants' motion to dismiss claims under § 10(b) of the Exchange Act and related claims under § 20(a) was denied because the Complaint sufficiently alleged securities fraud by Defendants Romeo, Selwood and Webb. Familiarity with the Complaint and Order is assumed. The Order explicitly analyzed only one category of sufficiently pleaded statements in denying Defendants' motion. Defendants argue that uncertainty about whether other statements remain viable at summary judgment and trial will impact the scope of discovery and prospects for early resolution. Defendants seek a ruling that two categories of statements are not actionable: statements Defendants label "forward-looking" and argue are subject to the PSLRA safe harbor, and present-tense factual statements about Romeo's revenue backlog that Defendants argue were literally true at the time they were made.

## II.     STANDARD

"To state a claim for securities fraud under [§ 10(b)] a plaintiff must allege that each defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021). A complaint alleging securities fraud under § 10(b) also must satisfy "heightened pleading requirements imposed by Federal Rule 9(b) and the PSLRA," i.e., the Private Securities Litigation Reform Act. *Id.* at 166. "[A] plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 167.

"The PSLRA requires plaintiffs to 'specify each misleading statement; . . . set forth the facts on which a belief that a statement is misleading was formed; and . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* To be actionable, a statement must be "misleading, evaluated not only by literal truth, but by context and manner of presentation." *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021) (quoting *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (internal quotation marks omitted)); *see also* 17 C.F.R. § 240.10b–5. "[T]he law is well settled that so-called 'half-truths' -- literally true statements that create a materially misleading impression -- will support claims for securities fraud." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021). "For an inference of scienter to be 'strong,' as required by the PSLRA, 'a reasonable person must deem it cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Set Cap.*, 996 F.3d at 78 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d, 87, 99 (2d Cir. 2007)).

The PSLRA contains a safe harbor provision for "forward-looking statements." 15 U.S.C. § 78u–5(c). A statement is not actionable if it satisfies "any of the three prongs": "'(1) the forward-looking statement is identified and accompanied by meaningful cautionary language,' (2) the forward-looking statement 'is immaterial,' or (3) 'the plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading.'" *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245-46 (2d Cir. 2016) (quoting *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010)); *accord Building Trades Pension Fund of W. Pa. v. Insperity, Inc.*, No. 20 Civ. 5635, 2022 WL 784017, at *7 (S.D.N.Y. Mar. 15, 2022).

"A party may move for reconsideration and obtain relief only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021). The standard "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked," that is, matters "that might reasonably be expected to alter the conclusion reached by the court." *Id*.

### III. DISCUSSION

#### A. Present-Tense "Backlog Statements"

The Complaint sufficiently alleges that, under the circumstances, Defendants materially misrepresented Romeo's ability to secure battery cells to fulfill backlog orders in each of the allegedly misleading statements identified by Plaintiffs. "'The test for whether a statement is materially misleading under Section 10(b)' is not whether the statement is misleading in and of itself, but 'whether the defendants' representations, *taken together and in context*, would have misled the reasonable investor.'" *Vivendi*, 838 F.3d at 250. "That individual alleged misstatements may relate to different aspects of a larger problem does not necessarily subvert a

3

finding of fraud," even where that larger problem "is not a *perfectly* defined concept with rigid outer bounds." *Id.* at 249-50.  "The federal securities laws do not protect against only . . . statements that are false or misleading with respect to very specific material facts," because "[i]t would be perverse if companies could escape liability for securities fraud simply by disseminating a network of interrelated lies, each one slightly distinct from the other, but all collectively aimed at perpetuating a broader, material lie." *Id.*

Defendants' present-tense statements regarding Romeo's backlog were misleading in light of the circumstances under which they allegedly were made.  For example, Defendants made statements in October 2020 stating that Romeo's backlog was approximately $300 million.  By December 2020, that number had risen above $500 million.  As alleged in the Complaint, those statements were at best misleading "half-truths."  *See SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013).  It is misleading to disclose expectations of future revenue while concealing present reasons -- as opposed to future risks -- why that revenue may never be realized.  The "backlog statements" in the Registration Statement, Prospectus, 10-K, 10-Q and certain interviews were accompanied by (i) forward-looking statements projecting the rate at which the backlog would be converted to revenue, as discussed below; (ii) statements about Romeo's cell suppliers, as discussed in the Order and (iii) risk factors that discuss supply issues as merely a hypothetical future problem, rather than a present reality.

The Complaint adequately alleges that the cell supply shortage was ongoing as of late 2020 and, because of long lead times on cells and on Romeo's finished products, unlikely to resolve in the time periods projected.  The Complaint also contains facts stated with particularity that raise a strong inference that Defendants knew about the shortage and acted with scienter.  In particular, the Complaint alleges that Romeo did not ramp up production at all until August 2021,

4

based on low 2020 revenue and Defendants' statements in August 2021.  Given that Defendants were questioned repeatedly about supply chain issues and went out of their way in February 2021 to tell investors that cell supply was their "daily focus" and the "first thing," one can cogently infer that Defendants knew of the shortage and concealed it.  The inference urged by Defendants -- that the supply disruption caught them by surprise in early 2021 -- is not nearly as plausible in light of the lead time on cell supply and their own statements about when production ramped up.

### B.  Forward-Looking Statements

Even if each of the statements Defendants identify as such were, in fact, "forward-looking," none of the three PSLRA safe harbor prongs would shelter those statements.  First, Defendants do not dispute that their projections of how quickly they would convert hundreds of millions of dollars in contracted revenue into actual revenue were material.

Second, "[e]ven assuming the [cautionary] language was not boilerplate, . . . the complaint alleges that it suffers from the more fundamental problem that it was misleading in light of historical fact and thus cannot be meaningful." *Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 288 (S.D.N.Y. 2020) (quoting *Slayton*, 604 F.3d at 770) (cleaned up).  "[C]autionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized in the past and is virtually certain to materialize again." *Set Cap.*, 996 F.3d at 85.  In other words, "there is a 'critical distinction between disclosing the risk a future event might occur and disclosing actual knowledge that the event will occur' -- particularly where that distinction holds 'enormous significance' for investors." *Id.*

Third, as discussed above, the Complaint raises a cogent inference, "at least as compelling as any opposing inference," that Defendants "actually knew that they had no reasonable basis for" predicting a significant ramp-up in revenue as quickly as they did, or "were aware of undisclosed

facts tending to seriously undermine the accuracy of" those projections. *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 202-03 (S.D.N.Y. 2020) (quoting *Slayton*, 604 F.3d at 775). "'[T]he scienter requirement for forward-looking statements is stricter than for statements of current fact,' in that it requires 'actual knowledge.'" *Id.* That standard is met because the forward-looking statements here were more specific than the present-tense statements. In making the present-tense statements, Defendants may have been merely reckless in failing to disclose the impact of the cell shortage on Romeo's backlog, given the potentially long time horizon in which backlog revenue might be realized. But the forward-looking statements set out precise revenue conversion targets with precise timelines, and the Complaint raises a strong inference that Defendants actually knew they could not approach those projections.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion for reconsideration of the Order denying Defendants' motion to dismiss is **DENIED**. All of the statements alleged to be misleading in the Amended Complaint remain at issue in this action.

Dated: August 25, 2022
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**