**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ROMEO POWER INC. SECURITIES LITIGATION | Case No. 1:21-cv-03362-LGS<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF**
<u>**CLASS REPRESENTATIVES AND CLASS COUNSEL**</u>

Dated:  April 19, 2023

**LATHAM & WATKINS LLP**

Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: Jeff.Hammel@lw.com
Email: Jason.Hegt@lw.com

Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: Kristin.Murphy@lw.com

*Attorneys for Defendants Romeo Power, Inc.*
*(f/k/a RMG Acquisition Corp.), Lionel E.*
*Selwood, Jr., and Lauren Webb*

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ......................................................................................1

II.   FACTUAL BACKGROUND ........................................................................................3

      A.    Romeo Systems And RMG Merge To Create Romeo Power .................................3

      B.    Romeo Power Encounters Sudden Supply Chain Challenges ...............................5

      C.    After The Court Appoints A Single Lead Plaintiff, Lead Counsel
            Concludes He Is Inadequate And Unilaterally Adds Four "Additional"
            Plaintiffs ...............................................................................................................6

III.  LEGAL STANDARD ....................................................................................................7

IV.   ARGUMENT .................................................................................................................8

      A.    The Court Cannot Certify A Class Led By Five Unrelated Individuals .................8

      B.    The Proposed Class Period Begins Too Early Because The Proposed Class
            Representatives Were Not "Purchasers" Of Romeo Systems Stock ......................9

      C.    The Proposed Class Period Is Too Long ..............................................................11

      D.    Plaintiffs Are Neither Typical Nor Adequate Representatives ............................14

            1.    There Are Too Many Conflicts Among The Class Representatives ..........14

                  a.    Competing Theories Of Reliance...................................................15

                  b.    Competing Theories Of Causation And Damages .........................16

            2.    Each Class Representative Is Individually Flawed ..................................18

                  a.    Mr. Castleberg Held Only Warrants And Has No Damages .........19

                        (1)   Castleberg Purchased Only Romeo Warrants ....................19

                        (2)   Mr. Castleberg Has Zero Damages And No
                              Standing ...........................................................................20

                  b.    Plaintiffs' Limited Interest In This Litigation Renders
                        Them Inadequate To Represent The Class ...................................22

            3.    Plaintiffs Have Abdicated Their Responsibilities To Counsel And
                  Cannot Adequately Protect The Interests Of The Class ...........................23

        4.      Plaintiffs' "Fail-Safe" Approach To Class Certification Is Unavailing ...................................................................................................24

V.      CONCLUSION ..................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Acticon AG v. China Ne. Petroleum Holdings, Ltd.*,
  692 F.3d 34 (2d Cir. 2012)......................................................................................17

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)..............................................................................................3, 25

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
  2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) .........................................................11

*Andrada v. Atherogenics, Inc.*,
  2005 WL 912359 (S.D.N.Y. Apr. 19, 2005).......................................................19, 20

*Applestein v. Mediviation, Inc.*,
  2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) .........................................................20

*Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  879 F.3d 474 (2d Cir. 2018).....................................................................................13

*In re Barclays Liquidity Cross & High Frequency Trading Litig.*,
  126 F. Supp. 3d 342 (S.D.N.Y. 2015).......................................................................25

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)..................................................................................................15

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975)..................................................................................................10

*In re CarLotz, Inc. Sec. Litig.*,
  2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) .........................................................10

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  433 F.3d 181 (2d Cir. 2005).....................................................................................11

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp*,
  543 F. App'x 72 (2d Cir. 2013) ................................................................................14

*de Lacour v. Colgate-Palmolive Co.*,
  338 F.R.D. 324 (S.D.N.Y. 2021) ..............................................................................14

*DiDonato v. GC Servs. Ltd. P'ship*,
  2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021)....................................................11, 21

*In re Donnkenny Inc. Sec. Litig.*,
  171 F.R.D. 156 (S.D.N.Y. 1997) ...................................................................8, 9, 24

*In re Elan Corp. Sec. Litig.*,
  2009 WL 1321167 (S.D.N.Y. May 11, 2009) ........................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).................................................................................14, 22

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
  991 F.3d 370 (2d Cir. 2021).....................................................................................21

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  407 F.Supp.3d 422 (S.D.N.Y. 2019)....................................................................17, 18

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
  927 F. Supp. 2d 88 (S.D.N.Y. 2013)....................................................................15, 16

*Garcia v. Execu|Search Grp., LLC*,
  2019 WL 689084 (S.D.N.Y. Feb. 19, 2019)............................................................24

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,
  Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990).............................................................................14, 16, 19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014).....................................................................................................13

*In re IMAX Sec. Litig.*,
  272 F.R.D. 138 (S.D.N.Y. 2010) .........................................................................14, 22

*In re Initial Pub. Offering Sec. Litig.*,
  399 F. Supp. 2d 261 (S.D.N.Y. 2005).......................................................................13

*Lewis v. Casey*,
  518 U.S. 343 (1996).....................................................................................................21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018).......................................................................15

*Margolis v. Caterpillar, Inc., G.A.*,
  815 F. Supp. 1150 (C.D. Ill. 1991) ..........................................................................20

*Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*,
  54 F.4th 82 (2d Cir. 2022) ....................................................................................2, 10

*In re Monster Worldwide, Inc. Sec. Litig.*,
  251 F.R.D. 132 (S.D.N.Y. 2008) ...............................................................................24

iv

*Nypl v. JP Morgan Chase & Co.*,
   2022 WL 819771 (S.D.N.Y. Mar. 18, 2022) .......................................................7, 8, 21, 24

*In re Omnicom ERISA Litig.*,
   2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021) ...................................................................21

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ........................................................................................13

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) .......................................................................................13

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ..................................................................1, 9, 24

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) ..........................................................................................8

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ........................................................................................14

*Rodriguez v. DraftKings Inc.*,
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ...............................................................23

*In re Rodriguez*,
   695 F.3d 360 (5th Cir. 2012) .......................................................................................24

*In re Safeguard Scis.*,
   216 F.R.D. 577 (E.D. Pa. 2003) ...................................................................................15

*Starr v. Georgeson S'holder, Inc.*,
   412 F.3d 103 (2d Cir. 2005) ........................................................................................25

*In re SunEdison, Inc. Sec. Litig.*,
   329 F.R.D. 124 (S.D.N.Y. 2019) ..................................................................................11

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) ..................................................................25

*Topping v. Deloitte Touche Tohmatsu CPA*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015) .............................................................................22

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   2022 WL 17884165 (S.D.N.Y. Dec. 23, 2022) ...............................................................23

*In re Valence Tech. Sec. Litig.*,
   1996 WL 119468 (N.D. Cal. Mar. 14, 1996) ................................................................16

*In re Vivendi Universal, S.A. Sec. Litig.*,
    123 F. Supp. 3d 424 (S.D.N.Y. 2015)..................................................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
    183 F. Supp. 3d 458 (S.D.N.Y. 2016)..................................................................................16

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017)....................................................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................................................7, 8

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................................................11

*Weikel v. Tower Semiconductor, Ltd.*,
    183 F.R.D. 377 (D.N.J. 1998)..............................................................................................20

## STATUTES

15 U.S.C. § 78u-4(a)(3) ..............................................................................................................1

## RULES

22 N.Y.C.R.R. pt. 1200, rule 1.5 (g)..........................................................................................7

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Defendants Romeo Power, Inc. ("Romeo"), Lionel Selwood, and Lauren Webb ("Defendants") respectfully submit this Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Motion" or "Mot.").

## I.    PRELIMINARY STATEMENT

This is an unusual case where both sides appear to agree that the only Court-appointed plaintiff is not fit to lead the sprawling case that his lawyers hope to pursue. Rather than narrow the putative class to something manageable and capable of being led by the Court-appointed Lead Plaintiff, his lawyers worked to scrounge up four "additional" plaintiffs. But this parade of plaintiffs is both procedurally improper and, in any event, does not solve the fundamental problems that exist with the proposed class. Plaintiff's Motion should be denied for the following reasons.

*First*, the attempt to shoehorn five unrelated individuals into the class representative role is procedurally improper. In July 2021, after careful consideration of competing motions, the Court appointed Mike Castleberg as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(3) ("PSLRA"). Courts in this District routinely reject attempts to place cases under the control of similar (or even smaller) groups of unrelated persons because "[a]llowing unrelated plaintiffs to band together in order to manufacture a larger financial interest . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621–22 (S.D.N.Y. 2015).

*Second*, the proposed Class Period begins too early. All five of the proposed class representatives held stock in either RMG Acquisition Corp. ("RMG") or Romeo Power, Inc. But none held stock in Romeo Systems, Inc. (*i.e.* pre-merger Romeo), which was the subject of the alleged misstatements made between October 2020 and December 2020. Under the well-settled

"purchaser-seller" rule, a plaintiff is required "to have bought or sold the security *about which a misstatement was made* in order to have standing to sue under Section 10(b)" and Rule 10b-5. *Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 85 (2d Cir. 2022) (emphasis added). As a result, there is no class representative with standing to pursue claims based on statements before December 29, 2020, because these statements all concerned Romeo Systems.

*Third*, the proposed Class Period is also too long. Plaintiffs seek to recover for stock price declines following two so-called "corrective" disclosures: one on March 30, 2021, when Romeo Power announced that it was reducing its projected 2021 revenue from $140 million to a range of $18 to $40 million, and one on August 16, 2021. But Romeo Power did not disclose any new information related to the alleged misstatements on August 16, 2021. By Plaintiffs' own telling, the only new information revealed on this second date was that (i) Romeo Power's quarterly revenue fell short of Wall Street expectations and (ii) the market still lacked clarity on when the supply chain crunch would ease. This information did not "correct" any alleged misstatement, and the Class Period should end after the alleged disclosure on March 30, 2021.

*Fourth*, the proposed class is so overbroad and the proposed class representatives are so differently situated that they are each subject to unique defenses, which creates intra-class conflict. For instance, Lead Plaintiff Castleberg and "additional" plaintiff Tapia did not hold any Romeo Power securities as of August 16, 2021, so they benefit most from a damages theory in which the purported "artificial inflation" in Romeo Power's stock price dissipated entirely after the first alleged corrective disclosure. By contrast, "additional" plaintiff Nguyen split her purchases roughly evenly between the two periods, so she benefits most from a damages theory in which alleged inflation was roughly constant throughout the entire proposed Class Period and corrected evenly by the two disclosures. Plaintiffs offer an expert (Dr. Matthew Cain) who says he believes

2

he can develop a damages model capable of calculating damages on a class-wide basis, but this model remains a secret.  Dr. Cain admits that he has not decided which of several approaches he will use, how he will reconcile competing interests among the plaintiffs (much less the putative class), or done any of the other work needed for the Court and Defendants to test his assertions. Indeed, Dr. Cain's *modus operandi* appears to be to offer this same opinion almost verbatim in every case, changing little more than the names of the parties involved.  But these cut-and-paste assurances that a class-wide damages model *can be* developed—no matter what securities or allegations are at issue—are not enough to paper-over the significant conflicts present here.

*Fifth,* none of the "fail-safe" approaches Plaintiffs offer are availing.  Having survived a motion to dismiss on the allegation that there were affirmative misstatements, Plaintiffs cannot now recast this case as one involving omissions in order to invoke the reliance presumption of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), which is applicable only to cases involving "pure omissions."  Nor can Plaintiffs adopt a "fail-safe" class definition— comprised of investors who "purchased or otherwise acquired publicly traded securities of Romeo Power, Inc. . . . *and were damaged thereby*"—because this is merely an attempt to shift to the Court their burden to identify a group of persons who suffered a similar harm and explain how such harm could be calculated on a class-wide basis.  Plaintiffs' failure to do that is dispositive, and their resort to these arguments is telling.  Plaintiffs' Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Romeo Systems And RMG Merge To Create Romeo Power

Romeo Systems, Inc. ("Romeo Systems") was a privately held energy storage technology company that designed and manufactured lithium-ion battery modules and packs for use in heavy-duty commercial vehicles, including buses and trucks.  ECF 135 ("SAC") ¶¶ 39, 66.  On October

5, 2020, RMG announced that it had reached a definitive agreement to merge with Romeo Systems (the "Merger"). SAC ¶ 57; *see also* Ex. 1 at 88.[1] Following an exchange of shares, the surviving company would be RMG and it would be renamed Romeo Power. Ex. 1 at 34.

In December 2020, shortly before the Merger, RMG filed with the SEC a Proxy Statement that provided investors with additional details about the proposed combination between RMG and Romeo Systems. Ex. 1. Among other information, the Proxy Statement disclosed that Romeo Systems' revenue backlog had grown to "exceed $500 million" from "contracts signed through November of 2020." *Id*. at 187. The Proxy Statement further disclosed that Romeo Systems expected to recognize $10.8 million of revenue during 2020 and $139.8 million during 2021 as it began to convert this backlog to revenue by producing and delivering batteries to customers. *Id*. at 95. To be sure, the Proxy Statement explained that this ramp-up would not occur overnight, and RMG expressly cautioned that most of Romeo Systems' FY21 revenue would come late in the year—with $80 million of the $139.8 million (or 57%) not expected to be recognized until the last three months of 2021. *Id.* at 170 ("The portion of our backlog as of September 30, 2020, that is expected to be recognized in the twelve-month period following September 30, 2020 is approximately $59 million.").

The sheer scale and pace of Romeo Systems' projected growth made clear that this ambitious ramp-up entailed considerable risks, which were spelled out in both the Registration Statement and Proxy Statement issued in connection with the Merger. For example, the Registration Statement and Proxy Statement explained that Romeo Systems' future revenue and prospects were "difficult to predict" in light of its limited operating history, and the success of its

---

[1] Citations to "Ex." refer to exhibits attached to the Declaration of Jason C. Hegt, submitted herewith.

business and operating results depended in large part on suppliers' ability to fulfill customer orders and deliver necessary components of battery products at acceptable prices, volumes, and performance levels, among other factors.  Ex. 1 at 42, 50–51; Ex. 2 at 39, 47–48.

Romeo Systems and RMG completed the Merger on December 29, 2020.  Ex. 3 at 1.  At that time, the combined company (RMG) was renamed Romeo Power, Inc. ("Romeo" or the "Company") and began trading on the NYSE under the ticker symbol "RMO."[2]  *Id.*

### B.    Romeo Power Encounters Sudden Supply Chain Challenges

In early 2021, amidst a global disruption in the market for battery cells,[3] Romeo first discovered that it would not have the battery cell supply it previously anticipated having for 2021 and on which Romeo Systems based its financial projections for 2021.  By March, Romeo had concluded that it was necessary to revise the 2021 earnings forecast from approximately $140 million to a range of $18–40 million, as a result of industry-wide battery cell supply disruptions.  Romeo informed the market of this decision when it released its 2020 year-end financial results.  *See* Ex. 4.  The next day, Romeo's share price dropped $2.04/share (20%) to close out at $8.33/share.  SAC ¶ 15.

In describing the revenue revision, Romeo explained that the change in projected earnings was merely a timing issue, and it expected its revenue "backlog" (*i.e.*, pending orders) to remain unchanged.  Ex. 5.  Romeo then maintained that forecast throughout the Class Period.  On May

---

[2] On October 14, 2022, Romeo became a subsidiary of the Nikola Corporation ("Nikola") and is now operating primarily as a sub-assembly plant for components of products being sold by Nikola and/or its subsidiaries.

[3] *See, e.g.*, Kevin Liptak, *Biden orders review on cracks in critical supply chains*, CNN (Feb. 24, 2021, 5:24 PM), https://www.cnn.com/2021/02/24/politics/biden-executive-order-review-supply-chains/index.html; Jan Schwartz, *Volkswagen hikes battery cell demand in aggressive EV expansion*, Reuters (Mar. 10, 2021, 10:51 AM), https://www.reuters.com/article/us-volkswagenbatteries/volkswagen-hikes-battery-cell-demand-in-aggressive-ev-expansion-idUSKBN2B21ZG.

13, 2021, Romeo informed investors that it was continuing to negotiate long-term supply agreements, was "not making changes to the numbers" provided on March 30, 2021, and remained "optimistic that [Romeo] will be in the range of $18 million to $40 million, as communicated." Ex. 6.  On its August 16, 2021 earnings call, Romeo once again stated that it was "reaffirming the revenue guidance provided last quarter," which was "$18 million to $40 million for the full year 2021."  Ex. 7.  During the same call, Romeo also announced that it had "signed a long-term with a top-tier global supplier of battery cells." *Id.*

C.    **After The Court Appoints A Single Lead Plaintiff, Lead Counsel Concludes He Is Inadequate And Unilaterally Adds Four "Additional" Plaintiffs**

Just days after Romeo revised its guidance in March 2021, Plaintiffs filed this lawsuit against Romeo, its former President and CEO, Lionel Selwood, its former Chief Strategy and Commercial Officer and CFO, Lauren Webb, and members of RMG's board of directors (the "RMG Defendants").  On July 15, 2021, after a contested Lead Plaintiff appointment process, the Court appointed Mike Castleberg as Lead Plaintiff.  ECF 69.  Two months later, Lead Plaintiff Castleberg and a so-called "additional plaintiff," Joshua Cante filed an amended complaint ("AC" or "Castleberg/Cante Complaint").  ECF 82.  Mr. Cante did not file a motion to be appointed Lead Plaintiff, but he claims to have held RMG common stock at the time of the Merger.  ECF 82-1.

The Castleberg/Cante complaint challenged numerous statements about Romeo Systems' business, revenue backlog, and supply chain in advance of the proposed Merger and shareholder vote, and several statements after the Merger closed.  According to Plaintiffs, the purported "truth" about Romeo Systems was revealed to the market (i) on March 30, 2021, when Romeo Power revised its 2021 financial guidance and, (ii) on August 16, 2021, when Romeo Power announced 2Q21 results that fell short of analyst expectations (the Company itself had not given quarterly guidance).  AC ¶¶ 192–93.  Defendants moved to dismiss the Castleberg/Cante complaint, ECF

90, and the Court dismissed Plaintiffs' Section 14(a) claim, the related Section 20(a) claims, and the RMG Defendants from the case. ECF 107.

Months after the deadline to amend the pleadings, and discovery was well underway, Plaintiffs filed the SAC. ECF 135. The SAC did not add any new claims, but added three new "additional" plaintiffs: Nathaniel Tapia, Artur Chimchirian, and Van Nguyen. ECF 135-1, 135-2, 135-3.

On March 1, 2023, Plaintiffs filed their Motion. ECF 147, 148. Plaintiffs ask the Court to (i) certify this case as a class action; (ii) appoint Lead Plaintiff Castleberg and "additional plaintiffs" Joshua Cante, Nathaniel Tapia, Artur Chimchirian, and Van Nguyen as class representatives; and (iii) appoint Glancy Prongay & Murray LLP as Class Counsel. Mot. at 1.[4]

## III.    LEGAL STANDARD

Class certification is only appropriate where the prerequisites of Rule 23(a) and (b) are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Pursuant to Rule 23(a), a party seeking class certification must demonstrate by a preponderance of the evidence that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Nypl v. JP Morgan Chase & Co.*, 2022 WL 819771, at *6 (S.D.N.Y. Mar. 18, 2022) (Schofield, J.). Plaintiffs must also demonstrate the "implied requirement of

---

[4] The Motion also includes the signature blocks of two attorneys, Howard G. Smith and Frank R. Cruz, as "additional counsel for Plaintiffs," even though neither of these attorneys has appeared in this case, sought admission *pro hac vice*, or moved for appointment as lead counsel or class counsel. Because all five plaintiffs refused to produce their engagement letters with counsel, Defendants take no position on whether this apparent referral fee arrangement complies with Rule 1.5(g) of the New York Rules of Professional Conduct, 22 N.Y.C.R.R. Part 1200.

ascertainability . . . which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting *In re Petrobras Sec. Litig.*, 862 F.3d 250, 260 (2d Cir. 2017)).

Where, as here, Plaintiffs seek to certify a class under Rule 23(b)(3), Plaintiffs also must show "'that the questions of law or fact common to class members predominate over any questions affecting only individual members,' and 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* Compliance with Rule 23 is not merely a formality, and courts must subject any class certification motion to a "rigorous analysis," which frequently "entail[s] some overlap with the merits of plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 350–51 (citing cases). As explained below, Plaintiffs have not "affirmatively demonstrated" compliance with Rule 23, and their Motion should be denied. *See id*.

## IV.   ARGUMENT

### A.   The Court Cannot Certify A Class Led By Five Unrelated Individuals

Somewhere along the way, Lead Counsel apparently realized that Mr. Castleberg was not a suitable class representative and now asks the Court to appoint enough class representatives to field a basketball team—now up to five and counting. However, these five individuals have not made the threshold showing that their "claims are so interrelated that the interests of the [absent] class members will be fairly and adequately protected" throughout the litigation. *Wal-Mart*, 564 U.S. at 350 n.5.

Courts routinely recognize that certifying a class led by a group of unrelated plaintiffs "allow[s] and encourage[s] lawyers to direct the litigation," which ultimately defeats "[o]ne of the principal legislative purposes of the PSLRA[:]  to prevent lawyer-driven litigation." *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y. 1997). Allowing unrelated plaintiff groups to lead class actions "ensures that the lawyers, who are invariably the matchmakers behind

8

such marriages of convenience, are the true drivers of the litigation" and creates "problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent." *Petrobras*, 104 F. Supp. 3d, at 621–22. It is precisely for this reason why courts in this District routinely reject motions from unrelated plaintiff groups. *See, e.g.*, *id.*; *Donnkenny*, 171 F.R.D. at 157–58 (rejecting unrelated investors' proposal to serve as class representatives). The same result is warranted here, where the proposed class representatives had never met one another before joining a video conference organized by their counsel a few weeks ago. Ex. 8 at 94:20–95:13; *see also* Ex. 9 at 64:25–65:3 (Tapia does not even know who the other class representatives are, nor has he spoken to any of them).

**B.     The Proposed Class Period Begins Too Early Because The Proposed Class Representatives Were Not "Purchasers" Of Romeo Systems Stock**

Prior to the Merger, RMG and Romeo Systems were separate and distinct entities. Romeo Systems was a privately held energy storage technology company founded in 2015, with its headquarters in Vernon, California. Ex. 1 at 8, F-44. RMG, on the other hand, was a New York-based special purpose acquisition company that was formed in 2018 for the sole purpose of entering into a business combination with another company. *Id.* at 18. RMG was listed on the NYSE in February 2019, and its securities were publicly traded under the symbols RMG, RMG.UT, and RMG.WT. *Id.*[5]

The proposed class representatives held stock in RMG (pre-Merger) and Romeo Power (post-Merger). *See* ECF 28-2 (Castleberg); 82-1 (Cante); 134-1 (Tapia); 155-1 (Nguyen); 143-3 (Chimchirian). None purchased Romeo Systems stock, and thus none has standing to challenge pre-Merger statements about Romeo Systems, its revenue backlog, or supply chain. This is a result

---

[5] RMG was the symbol for common stock, RMG.WT was the symbol for redeemable warrants exercisable for shares of common stock at $11.50 per share, and RMG.UT was the symbol for a "unit" which consisted of one share of common stock and one redeemable warrant. *Id.* at 8.

of the well-settled "purchaser-seller" rule first articulated in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975), which "requires plaintiffs to have bought or sold the security *about which a misstatement was made* in order to have standing to sue under Section 10(b)" and Rule 10b-5. *Frutarom*, 54 F.4th at 85 (emphasis added). As the Second Circuit recently explained, this rule is "construed narrowly," and allowing shareholders of one company to sue the "maker" of alleged misstatements concerning a different company whose securities they never purchased is "entirely at odds with the purchaser-seller requirement" established in *Blue Chip Stamps*. *Id*. at 86.

Here, Plaintiffs challenge numerous statements regarding Romeo Systems' business prior to the Merger and define the "Class Period" as October 5, 2020 through August 16, 2021, both dates inclusive, but Plaintiffs have not offered any evidence that *any* of the prospective class representatives held Romeo Systems stock at the time of the alleged misstatements (or ever). As the Second Circuit emphasized, "Section 10(b) standing does not depend on the significance or directness of the relationship between two companies"—it is a simple analysis that turns on whether plaintiffs in fact purchased stock of the company about which the alleged misstatement was made. *Frutarom*, 54 F.4th at 88. In a case nearly identical to this one brought by the same lawyers, Judge Ronnie Abrams rejected the argument that investors in a SPAC should be exempt from this "narrow" interpretation of the purchaser-seller rule and held that it was irrelevant that the company making the statements (here, RMG) ultimately acquired the company about which the statements were made (here, Romeo Systems). *See In re CarLotz, Inc. Sec. Litig.*, 2023 WL 2744064, at *4 (S.D.N.Y. Mar. 31, 2023) (finding no standing where plaintiffs failed to establish they bought "securities about which the misstatements were made" and acknowledging that "a SPAC's shares [e.g. RMG's] would 'plainly not [be] a security . . . about which a misstatement

10

was made'"); *see also In re Alibaba Grp. Holding Ltd. Sec. Litig.*, 2023 WL 2601472, at *5 (S.D.N.Y. Mar. 22, 2023) (dismissing Section 10(b) claim under *Frutarom* where plaintiffs held stock of controlling shareholder company, but did not buy stock of company about which challenged statements were made).  This bright-line rule bars the class representatives from pursuing Section 10(b) claims based on pre-Merger statements about Romeo Systems, a privately held company in which Plaintiffs never invested.

Plaintiffs' Motion should be denied on this basis.  A named plaintiff must have individual standing to bring a claim on behalf of a class.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005); *see also DiDonato v. GC Servs. Ltd. P'ship*, 2021 WL 4219504, *4 (S.D.N.Y. Sept. 16, 2021) ("The named plaintiff must be a member of the class he represents.").  This is because "the named class plaintiffs" themselves "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Cent. States*, 433 F.3d at 199. (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).  Because no proposed class representative has standing to pursue claims related to Romeo Systems (*i.e.*, all statements made between October 2020 and December 2020), Plaintiffs' proposed Class Period is overbroad.

C.    **The Proposed Class Period Is Too Long**

The proposed Class Period is also too long because Plaintiffs allege that the supposed truth regarding the at-issue statements was revealed in March 2021 and August 2021.  However, Plaintiffs have not identified any new "corrective" information in August, and so the proposed Class Period must be truncated to March 30, 2021.  *See, e.g., In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019) (recognizing that courts are "not bound" by proposed class

11

definition and shortening class period to earlier date on which "all material information related to the" challenged statements was "disclosed and corrected").

Here, Plaintiffs allege that Romeo Power's March 30, 2021 announcement that it was cutting its full-year 2021 revenue forecast from $140 million to a range of $18 million to $40 million shows that Romeo Systems' earlier statements about its business were false when made. SAC ¶ 192. Yet Plaintiffs try to stretch the Class Period to August by claiming that Romeo's August 16, 2021 announcement "further reveal[ed] the materialization of the extent and impact Romeo's [*sic*] supply shortages." *Id.* ¶ 193. The problem with this theory is that nothing of the sort was revealed on August 16.

Indeed, by Plaintiffs' own admission, the only new information disclosed on August 16 was that (i) Romeo's quarterly revenue fell $2 million short of Wall Street expectations—*not* Romeo's own guidance or other Romeo statements, since Romeo did not provide quarterly revenue guidance—and (ii) the market still lacked clarity on when the supply chain crunch would ease. SAC ¶ 193. At most, the August 16, 2021 announcement informed the market that Romeo's supply situation remains the same. But this did not "correct" anything. To the contrary, Romeo's March 30 announcement provided no timetable for when the cell shortage would ease and provided an updated revenue forecast *for the remainder of the year*. In each subsequent earnings call (May 13, 2021 and August 16, 2021), Romeo reconfirmed this earlier news and reaffirmed this range. Ex. 6 ("We are not making any changes to the [revenue] numbers we provided previously. We are optimistic that we will be in the range of $18 million to $40 million, as communicated."); Ex. 7 ("We are reaffirming the revenue guidance provided last quarter which, to remind you, is $18 million to $40 million for the full year 2021.") Mr. Castleberg himself could not identify any new, corrective information that Romeo disclosed to investors on August 16. Ex. 8 at 116:21–117:3.

12

An event can only serve the role of a corrective disclosure if it "reveal[s] some [previously] undisclosed fact with regard to the specific misrepresentations alleged." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010). It is not enough to show "that the market reacted to the purported 'impact' of the alleged fraud[.]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010). Yet that is literally what Plaintiffs allege. SAC ¶ 193 (August announcement "reveal[ed] . . . the extent and impact Romeo's [*sic*] supply shortages"). In attempting to recover for the stock price decline following the August 16, 2021 earnings call, Plaintiffs conflate negative news with "corrective news." *See In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) ("The fact that an event—in this case, a failure to meet earnings forecasts or a statement foreshadowing such a failure—disabused the market of that belief does not mean that the event disclosed the alleged scheme to the market. In other words, a failure to meet earnings forecasts has a *negative* effect on stock prices, but not a *corrective* effect.") (emphasis in original).

Without a connection between the alleged misstatements and the stock price decline, there is no class. *See, e.g., Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474, 483–84 (2d Cir. 2018), *rev'd on other grounds, Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 141 S.Ct.1951 (2021). This is because "[a]ny showing that severs the link between the alleged misrepresentation and . . . the price received (or paid) by the plaintiff . . . will be sufficient to rebut the presumption of reliance" on which Plaintiffs' claims rest. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014) (citations omitted); *Waggoner v. Barclays PLC*, 875 F.3d 79, 99 (2d Cir. 2017) (clarifying that a defendant can rebut the presumption of reliance with evidence of no "back-end" price impact, *i.e.*, at the time of the corrective disclosure). In other words, Plaintiffs' theory depends on the Court accepting the premise that all shareholders were harmed when the market reacted to the revelation that prior statements were false. Mot. at 19–21.

13

However, where undisputed facts before the Court make clear that is not the case,[6] then Plaintiff has not articulated a legal theory around which a class can be certified.

### D. Plaintiffs Are Neither Typical Nor Adequate Representatives

Typicality requires that the class representatives' "claims are typical of the claims of the class, and [are] 'not subject to any unique defenses which threaten to become the focus of the litigation.'" *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40 (2d Cir. 2009)). The "typicality" prong of Rule 23 is met where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Flag*, 574 F.3d at 35 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Courts consider whether the "putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 338 (S.D.N.Y. 2021) ("When defendants argue that unique defenses apply to the putative class representative courts analyze the issue under either the typicality or adequacy prongs of Rule 23(a)."). Here, each proposed class representative is subject to unique defenses, and the conflicts among them make clear that they cannot adequately protect the interests of absent class members.

#### 1. There Are Too Many Conflicts Among The Class Representatives

Conflicts among the proposed class representatives "undermine[] [their] incentive to fully

---

[6] Plaintiffs' expert testified that he made no assessment of whether any statements were false and, if so, whether they were corrected on any particular date. Ex. 11 at 90:25–91:17. Defendants' reference to the statements themselves—and Lead Plaintiff's admissions about them, *see supra* IV.C—is more than sufficient for the Court to identify a lack of price impact that precludes class certification. *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp*, 543 F. App'x 72, 77 (2d Cir. 2013) (affirming dismissal for failure to plead loss causation where "all relevant information was already available") (citations omitted).

pursue the class's claims" and call into question the class representatives' ability to adequately represent absent class members' interests. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 539 (S.D.N.Y. 2018).

### a.    Competing Theories Of Reliance

Trading records for the proposed class representatives raise questions about their reliance on the alleged misstatements and weigh against certifying the class at this stage.

*First,* Mr. Cante and Ms. Nguyen continued to purchase Romeo securities after the first (and Defendants contend *only*) alleged corrective disclosure, when Romeo announced a significant supply constraint and reduction of its revenue guidance for 2021.  ECF 82-1 (Cante), 155-1 (Nguyen).  Plaintiffs ask the Court to presume, consistent with *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), that they and all members of the putative class relied on the at-issue misstatements because Romeo securities were traded in an efficient market, which incorporates all material information into a Company's stock price, and plaintiffs purchased Romeo securities at the market price.  Mot. at 15–22 (citing *Basic* decision throughout).  This is what is known as the *Basic* presumption.  However, where plaintiffs continue to purchase stock undeterred by disclosure of the alleged fraud, it "severs the link" between price and the misstatements because it suggests that other factors were motivating their investment decisions and means they cannot invoke the *Basic* presumption.  This forces these plaintiffs to plead facts showing their actual reliance on the alleged misstatements—a highly individualized inquiry. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 436 (S.D.N.Y. 2015) (weighing post-disclosure investments in favor of rebutting *Basic* presumption); *GAMCO Invs., Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 99 (S.D.N.Y. 2013) (evidence that stockholder "would have transacted in [company stock] regardless of what was known or not known about [the company] or its stock" rebuts presumption of reliance); *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (finding "compelling reason

15

to rebut the reliance presumption" based on plaintiff's post-corrective disclosure purchases); *Gary Plastic*, 903 F.2d at 179 (holding district court did not abuse discretion in finding plaintiff inappropriate class representative "since its claim is subject to several unique defenses including its continued purchases of [securities] despite having notice of, and having investigated, the alleged fraud"); *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, at *4 (N.D. Cal. Mar. 14, 1996) (denying class certification where lead plaintiff's post-disclosure trades called into question reliance on alleged misstatements).

*Second,* Ms. Nguyen and Mr. Castleberg also cannot invoke the *Basic* presumption because their trading records suggest that they are serial SPAC investors and did not rely on Defendants' alleged misstatements when deciding to purchase Romeo stock.   *See* ECF 28-2 (Castleberg Certification); ECF 135-3 (Nguyen Certification); Ex. 8 at 62:10–63:22; Ex. 10 at 43:12–18; 102:17–103:8.   Their deposition testimony underscores that neither was particularly focused on RMG or Romeo Power as an investment, but rather SPACs generally—and their investment decision was thus based on factors unrelated to the alleged fraud.   Ex. 8 at 62:10–63:22; Ex. 10 at 43:12–18; 102:17–103:8.   Ms. Nguyen and Mr. Castleberg's "indifference" to the fraud is enough to rebut the presumption of reliance and renders them inadequate class representatives.   *See, e.g.*, *GAMCO*, 927 F. Supp. 2d at 97, 101 (evidence that misrepresentation was irrelevant to plaintiff's decision to invest was sufficient to rebut presumption); *In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 466 (S.D.N.Y. 2016) (granting defendants' motion for summary judgment on reliance where investor was indifferent to alleged fraud).

### b.      Competing Theories Of Causation And Damages

The proposed class representatives also have divergent interests in establishing how the alleged artificial inflation dissipated from Romeo's stock price following each of the alleged corrective disclosure dates.   Plaintiffs cannot simply ignore the clear conflict between the three

16

proposed class representatives who held shares through the August corrective disclosure (Cante, Chimchirian, and Nguyen) and the two who did not (Castleberg and Tapia). This conflict is yet another reason Plaintiffs' Motion should be denied. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.,* 407 F. Supp. 3d 422, 438 (S.D.N.Y. 2019) (Schofield, J.) (finding proposed representatives inadequate and declining to certify class in light of intra-class conflicts).

Plaintiffs' expert, Dr. Matthew Cain, opines that damages can be calculated on a class-wide basis. ECF 149-1 at ¶¶ 82-88. But as Dr. Cain admitted, he offers essentially the identical opinion in every case *regardless of the allegations or the types of securities at issue.* Ex. 11 at 51:9–59:3. That is only possible because he is offering little more than an aphorism. Indeed, the only "methodology" he offers is his view that the putative class should recover "out-of-pocket damages," *id.*, at 43:8–12, which is true in nearly every securities case. *Cf. Acticon AG v. China Ne. Petroleum Holdings, Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) (general rule for damages in 10b-5 cases is "out-of-pocket' damages, that is, the difference between what [the investor] paid for a security and the uninflated price"). When pressed about the model he would use to implement the methodology—*i.e.*, actually calculate the damages—Dr. Cain admitted that he has not given the model any consideration, Ex. 11 at 45:22–47:20, acknowledged that the model could measure artificial inflation in the price of Romeo securities in three different ways, *id.* at 62:23–63:23, and also confirmed that he has given no thought to how to address certain nuances unique to this class, like the impact of Romeo's warrants, *id.* at 18:20–19:2; 25:12–27:22; 38:14-40:4; 77:23–79:21.

Nonetheless, even a cursory look at the trading records of Lead Plaintiff and the four "additional" plaintiffs reveal starkly divergent interests. For example:

- Mr. Tapia's only transactions in RMG and Romeo securities occurred between December 2020 and July 2021 (when he sold all of his remaining Romeo securities), ECF 82-1, so he has "no claimed losses as a result of the August 2021 alleged corrective disclosure." Ex. 9 at 81:23–82:2.

17

- Mr. Castleberg never owned Romeo stock, but his Romeo warrants expired on April 5, 2021, and so "the *only way* that he end[s] up with positive damages is if there's a change in artificial inflation before the redemption date"—*i.e.,* in connection with the first corrective disclosure. Ex. 11 at 82:21–24 (emphasis added).

- On the other hand, Ms. Nguyen would not be able to recover any damages on the shares she purchased after March 30, 2021 (*i.e.*, 46% of her holdings) from a damages model where all of the artificial inflation dissipated following the March 30 alleged corrective disclosure. *Id.* at 84:10–16.

Put another way, Messrs. Castleberg and Tapia have a significant interest in arguing for a damages calculation in which the bulk of the artificial inflation in RMO's stock price was dissipated by the March 30, 2021 disclosure. *Id.* at 69:10–19. But Ms. Nguyen would prefer the opposite or, at a minimum, a more even split.

During his deposition, Dr. Cain could not even identify who the plaintiffs were—his report mistakenly refers to "Lead Plaintiffs" (plural)—and he eventually admitted that he is really just working for counsel. *Id.* at 60:19–62:22. Without any disclosure of how Dr. Cain's (presently unknown) damages model will work, or even who he perceives to be the plaintiffs, it is impossible to know how he can develop a model that will reconcile the diametrically opposed interests of the proposed class representatives and fairly account for alleged losses of the entire class of investors. Because Plaintiffs have not established that the proposed class representatives can "fairly and adequately protect the interests of the class" in light of these diverging interests, class certification should be denied. *Foreign Exch.*, 407 F. Supp. 3d at 439 (declining to certify class where "class representatives lack[ed] sufficient incentives to prove that their counterparties were injured by Defendants' conduct [because] doing so would reduce the representatives' own damages").

### 2.    Each Class Representative Is Individually Flawed

Beyond the conflicts among them, each of the proposed class representatives faces unique, individualized defenses that render them inadequate to represent the class as individuals. As reflected on the table below, these issues are so numerous that they require a scorecard, which

18

creates a substantial risk "that absent class members will suffer [while] their representative is preoccupied with defenses unique to it." *Gary Plastic*, 903 F.2d at 179 (internal citations omitted).

| | Castleberg | Cante | Tapia | Chimchirian | Nguyen |
|---|---|---|---|---|---|
| Not appointed by Court | | X | X | X | X |
| Did not own Romeo Systems stock | X | X | X | X | X |
| Held only Romeo Power warrants | X | | | | |
| Did not hold at-issue securities through end of Class Period | X | | X | | |
| Trading activity undermines reliance on challenged statements | X | X | X | X | X |
| Alleges *de minimis* (if any) damages | X | X | | | |
| Errors in original PSLRA certification | | | | X | X |

### a.     Mr. Castleberg Held Only Warrants And Has No Damages

Lead Plaintiff Castleberg is plainly inadequate because his only transactions were purchases of Romeo *warrants*, not common stock, and he has zero damages.  ECF 28-2.

### (1)     Castleberg Purchased Only Romeo Warrants

Unlike common stock, warrants and stock options are derivative instruments that "introduce factual issues irrelevant to stockholder class members, like [conversion] price, duration, maturity, volatility, and interest rates, and [] could subject the class to unique defenses, causing unnecessary conflict." *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (declining to appoint plaintiff who traded exclusively in call options, reasoning he was "atypical and inadequate"); *see also Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *14–*15 (S.D.N.Y. Apr. 19, 2005) (finding options trader atypical and inadequate for lead plaintiff purposes, and noting the absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action").

The fact that Mr. Castleberg transacted exclusively in warrants is not merely a "trivial 'factual difference[],'" Mot. at 10—and Lead Counsel implicitly acknowledged as much when they assembled a group of four (deeply flawed) "additional" plaintiffs to attempt to remedy Mr.

Castleberg's deficiencies.  Plaintiffs contend that "as a purchaser of publicly traded Warrants, Mr. Castleberg can represent investors who purchased *other publicly traded securities* of Romeo during the class Period."  Mot. at 10 (emphasis added).  Not so.  It is unclear what "other publicly traded securities" Plaintiffs are referring to—but courts routinely decline to certify classes of investors comprised of holders of both options and common stock.  *See Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) (rejecting proposed class representative where factual issues regarding value of options and damages would divert focus from the underlying securities litigation); *Applestein v. Mediviation, Inc.*, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) (recognizing that lead plaintiff's options-only trading record would threaten focus of litigation); *Andrada*, 2005 WL 912359, at *5 (finding options trader atypical and inadequate for lead plaintiff purposes, and noting absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action"); *Margolis v. Caterpillar, Inc., G.A.*, 815 F. Supp. 1150, 1156 (C.D. Ill. 1991) (since option holder's claim was "not typical of stock purchaser's claim," option holder could "only represent a class of option holders, *not stock holders*") (emphasis added).[7]

(2)   Mr. Castleberg Has Zero Damages And No Standing

Mr. Castleberg is also an atypical and inadequate class representative because he suffered no damages and thus does not have Article III standing to pursue his claims.  Given that stockholders must have suffered damages to be included in the Class, this alone disqualifies Mr.

---

[7] This is another area where Plaintiffs' expert, Dr. Cain, has done absolutely no work.  He was not familiar with the terms of the warrants, including when they were redeemed and how they were exercised.  Ex. 11 at 29:14–30:3.  And despite holding the view that the alleged misrepresentations "would" impact the warrants and common stock in the same way (resorting to the conjectural "would" because he did absolutely no work to support this view), *see* ECF 149-1 (Cain Report) at ¶ 81, Dr. Cain completely ignored discrepancies between the price of Romeo stock and Romeo warrants during the class period.  *See* Ex. 11 at 18:20–19:2; 25:12–27:22.

Castleberg from representing the Class.  Mot. at 1; *see also DiDonato*, 2021 WL 4219504, \*4.

To establish Article III standing, Plaintiffs must demonstrate (i) "'an injury in fact' that is 'concrete and particularized' as well as 'actual or imminent;'" (ii) "a causal connection" between the injury and Defendants' alleged conduct; and (iii) that "the injury will be redressed by a favorable judicial decision." *Nypl*, 2022 WL 819771, at \*5 (quoting *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381 (2d Cir. 2021)).  The "requirements of Article III are 'no less true with respect to class actions than with respect to other suits.'"  *In re Omnicom ERISA Litig.*, 2021 WL 3292487, at \*10 (S.D.N.Y. Aug. 2, 2021) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  For that reason, Plaintiffs cannot "bypass the 'irreducible constitutional minimum' of an injury-in-fact to their own individual accounts" simply because "plaintiffs have filed suit as a class action." *Id.*   Each of the proposed class representatives must have standing to assert claims on behalf of the proposed class.  *Lewis*, 518 U.S. at 358 n.6.

Here, the discovery record establishes that Mr. Castleberg did not suffer the requisite "injury in fact" to establish Article III standing.  In the days before Romeo's March 30, 2021 announcement revising its 2021 annual guidance, Romeo's common stock price had already fallen below the price ($11.50) at which Mr. Castleberg could convert his warrants into common stock. This meant that it would be more expensive for Mr. Castleberg to exercise his warrants than simply purchasing Romeo stock on the open market.  Specifically, it would have cost Mr. Castleberg $11.50 to convert each of his warrants into a share of Romeo common stock, but as of the close of trading on March 29, 2021, Romeo's stock price was just $10.88, and it fell to $10.37 on March 30 (immediately prior to the earnings announcement).  Ex. 12; Ex. 13.  Therefore, Mr. Castleberg's Romeo warrants lost no value as a result of the March alleged corrective disclosure and he does not have standing to represent the putative class.  And even if Mr. Castleberg had standing, he

21

cannot establish damages—an essential element of Plaintiffs' Section 10 claim—which alone forecloses him from adequately representing the class. *See, e.g.*, *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 622 n.16 (S.D.N.Y. 2015) (recognizing investor's inability to demonstrate damages "would render it an inappropriate lead plaintiff"); *In re IMAX Sec. Litig.*, 272 F.R.D. at 147–55 (denying "class representative" status to investor that sold shares before corrective disclosure and thus was "subject to unique defenses" and could not "satisfy Rule 23(a)'s typicality requirement") (citing *In re Flag*, 574 F.3d at 40).

Particularly given that Plaintiffs' expert has done no analysis of the warrants that Lead Counsel hopes to include in the class, *see supra* at n.7, Mr. Castleberg's claims regarding warrants—at best a side-show—do not belong in the putative class now that Lead Counsel has identified four other plaintiffs to pursue a case regarding Romeo's common stock.

> **b.    Plaintiffs' Limited Interest In This Litigation Renders Them Inadequate To Represent The Class**

Mr. Cante purchased just 10 shares in RMG (the SPAC) and 4 shares of post-Merger Romeo (*i.e.*, Romeo Power)—a total investment of $204.97. *See* ECF 82 (Cante Certification); Ex. 14 at 34:8–35:5. Given that Mr. Cante only has standing to pursue claims against post-Merger Romeo, *supra* Section IV.B, his total investment at stake in this case is just $41.28. ECF 82 (4 shares * $10.32 per share). His *de minimis* financial interest in this case calls into question his interest in the outcome of this litigation and whether he can adequately represent the interests of absent class members pursuant to Rule 23(a). *Cf. Topping*, 95 F. Supp. 3d at 615 ("parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel").

Similarly, Ms. Nguyen's numerous errors in her certification further indicate that she has

limited interest in this litigation or its outcome.  Ms. Nguyen testified that she was only alerted to the errors in her certification during her deposition.  Ex. 10 at 61:14–63:6.  These blatant errors "speak to a level of carelessness that rightly calls into doubt [Ms. Nguyen's] adequacy" to represent the class.  *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *9 (S.D.N.Y. Nov. 12, 2021) (finding plaintiff inadequate class representative in light of "significant errors and inconsistencies in [plaintiff's] submissions to the Court").  Indeed, as courts in this District have routinely held, such "sloppiness" "weigh[s] heavily against" appointing Ms. Nguyen as a representative of the class.  *Id.* (collecting cases).[8]

### 3.  Plaintiffs Have Abdicated Their Responsibilities To Counsel And Cannot Adequately Protect The Interests Of The Class

Plaintiffs have not made the requisite "evidentiary showing" that the proposed group of "unrelated" class representatives "will be able to function cohesively and to effectively manage the litigation apart from their lawyers[.]'" *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2022 WL 17884165, at *5 n. 2 (S.D.N.Y. Dec. 23, 2022).  The putative class representatives do not have a significant interest in this case, and their document productions and discovery responses have not made any affirmative showing of interest or meaningful involvement in this case to-date.  For example, Messrs. Cante and Castleberg have at most *de minimis* interests in the outcome of this case, *supra* Sections IV.D.2.a(2), IV.D.2.b; Ms. Nguyen's erroneous trading certification underscores her lack of care in pursuing these claims, *supra* Section IV.D.2.b; Mr. Tapia does not know who the other proposed class representatives are (including Mr. Castleberg) and has never spoken to them, Ex. 9 at 64:25–65:3; and the only class representatives that have spoken to each other did so for the first time just weeks ago, *supra* Section IV.A.  In light of these facts, this

---

[8] Mr. Chimchirian's original certification also left off certain of his trades in Romeo securities, but it was corrected prior to his deposition.  *Compare* ECF 135-2 *with* ECF 143-3.

litigation appears to have been a counsel-driven endeavor from the outset. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135–36 (S.D.N.Y. 2008) (finding putative class representative inadequate where it had "no interest in, genuine knowledge of, and/or meaningful involvement in this case and is simply the willing pawn of counsel"). Permitting this unrelated group of individuals to represent the class directly contravenes the stated purpose of the PSLRA and weighs strongly against certification. *See, e.g.*, *id.*; *Petrobras*, 104 F. Supp. 3d. at 621–22; *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. at 157–58.

### 4. Plaintiffs' "Fail-Safe" Approach To Class Certification Is Unavailing

Undoubtedly aware of the deficiencies in their Motion, Plaintiffs offer two familiar, last-ditch efforts to force class certification—but these too should be rejected.

*First,* Plaintiffs seek to certify a class of plaintiffs "that purchased or otherwise acquired publicly traded securities of Romeo Power, Inc." during the Class Period "*and were damaged thereby*." Mot. at 1 (emphasis added). "Fail-safe classes," like the one Plaintiffs propose here, "tend to be defined in terms of a 'legal injury' or by reference to a particular statute, regulation, or contract that has been allegedly violated or breached." *Garcia v. Execu|Search Grp., LLC*, 2019 WL 689084, at *2 (S.D.N.Y. Feb. 19, 2019) (citations omitted). As this Court recently explained, a fail-safe class is improper because it "requires a court to decide the merits of individual class members' claims to determine class membership." *Nypl*, 2022 WL 819771, at *9 (denying class certification); *see also In re Rodriguez*, 695 F.3d 360, 369–70 (5th Cir. 2012) ("A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability."). As the issues with the proposed class representatives make clear, *see* Section IV.D, that is precisely what Plaintiffs have asked the Court to do here. Accordingly, their Motion should be denied. *See, Nypl*, 2022 WL 819771, at *9.

24

*Second*, having survived a motion to dismiss on the allegation that Defendants made affirmative statements misrepresenting the state of affairs surrounding Romeo's projected revenue and supply chain, Plaintiffs now attempt to recast their allegations as omissions in order to invoke the *Affiliated Ute* presumption of reliance. Mot. at 22–23. But the *Affiliated Ute* presumption does not apply here. The presumption is narrow, intended only for cases "involving primarily a failure to disclose," *i.e.*, "pure" omissions. *Affiliated Ute Citizens of Utah*, 406 U.S. at 153–54. The presumption does not apply where, as here, the alleged "omission" is the truth of the affirmative statement. *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 n.5 (2d Cir. 2005) (holding presumption does not apply where omissions merely "exacerbate the misleading nature of the 'alleged conduct'"); *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 2006 WL 2161887, at *5 (S.D.N.Y. Aug. 1, 2006) ("Where positive statements are central to the alleged fraud . . . the *Affiliated Ute* presumption does not apply.").

The crux of Plaintiffs' claims is (and has always been) that Defendants knowingly provided overly optimistic guidance in light of supply chain shortcomings. ECF 96 (Opp. to Mot. to Dismiss) at 18–23. This claim cannot be transformed into an omission simply because Defendants did not disclose that the guidance was allegedly inaccurate. *See In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 126 F. Supp. 3d 342, 366 (S.D.N.Y. 2015) ("If a misrepresentation claim could be reframed as an omission claim merely by alleging that a defendant 'did nothing to dispel' its own misrepresentation, then the limitation of the *Affiliated Ute* presumption to omissions alone would be meaningless indeed.").

## V.    CONCLUSION

Defendants respectfully request that the Court deny the Motion.

25

Dated:  April 19, 2023

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ *Jason C. Hegt*
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: Jeff.Hammel@lw.com
Email: Jason.Hegt@lw.com

Kristin N. Murphy (*pro hac vice*)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Tel: (714) 540-1235
Fax: (714) 755-8290
Email: Kristin.Murphy@lw.com

*Attorneys for Defendants Romeo Power, Inc.*
*(f/k/a RMG Acquisition Corp.), Lionel E.*
*Selwood, Jr., and Lauren Webb*

26