# EXHIBIT 9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------x

IN RE ROMEO POWER, INC.   :  Case No.

SECURITIES LITIGATION    :  1:21-cv-03362-LGS

------------------------x

Videotaped Deposition of

NATHANIEL TAPIA

Conducted Virtually

Wednesday, March 29, 2023

10:18 a.m. PST

Job No.: 482892

Pages: 1 - 83

Stenographically Reported by:

Burgundy B. Ryan, RPR, CSR No. 11373

I N D E X

                                       PAGE

EXAMINATION BY MS. O'HARA.................... 5

                --o0o--

E X H I B I T S

EXHIBIT        DESCRIPTION        PAGE

20    Nathaniel Tapia's Responses      13
      and Objections to Defendant's
      First Set of Requests for
      Production of Documents

21    Nathaniel Tapia's Responses      20
      and Objections to Defendant's
      First Set of Interrogatories

22        Sworn Certification of       36
      Plaintiff Romeo Power, Inc.
      Securities Litigation

23       Investment Report            56
      Dated 12/1/2020 to 12/31/2020

24       Investment Report            80
      Dated 7/1/2021 to 7/31/2021

                --o0o--

A P P E A R A N C E S

ON BEHALF OF THE PLAINTIFFS:

    LATHAM & WATKINS, LLP
    By:  ALLIE O'HARA, Esquire
         KRISTIN N. MURPHY, Esquire
    650 Town Center Drive
    20th Floor
    Costa Mesa, California 92626
    714.540.1235
    Allie.O'Hara@lw.com
    Kristin.Murphy@lw.com

ON BEHALF OF THE DEFENDANT:

    GLANCY, PRONGAY & MURRAY, LLP
    By:  KARA M. WOLKE, Esquire
         MELISSA C. WRIGHT, Esquire
    1925 Century Park East
    Suite 2100
    Los Angeles, California 90067
    310.201.9150
    kwolke@glancylaw.com
    mwright@glancylaw.com

ALSO PRESENT:

    ALAN ROSS, Videographer
    Planet Depos

BE IT REMEMBERED that, pursuant to Notice of Taking Deposition, and on Wednesday, March 29, 2023, commencing at 10:18 a.m. PST thereof, via remote video teleconference, before me, Burgundy B. Ryan, a Certified Shorthand Reporter in and for the State of California, personally appeared

NATHANIEL TAPIA,

a witness called on behalf of DEFENDANTS, pursuant to all applicable sections of the Federal Rules of Civil Procedure, and who, having been first duly sworn by me to testify to the truth, was examined and testified as follows:

THE VIDEOGRAPHER:  Here begins Media 1 in the videotaped deposition of Nathan Tapia in the matter of Romeo Power, Incorporated, in re:, before the United States District Court, for the Southern District of New York, case number 1:21-cv-3362-LGS.

Today's date is March 29th, 2023, and the time on the video monitor is 10:18 Pacific.

The videographer today is Alan Ross, representing Planet Depos.

And this video deposition is taking place remotely.

Would Counsel please voice-identify themselves and state whom they represent?

**5**

MS. WOLKE: Kara Wolke, representing Mr. Tapia and the proposed class.

MS. WRIGHT: Melissa Wright from Glancy, Prongay & Murray, representing Mr. Tapia and the proposed class.

MS. O'HARA: Allie O'Hara of Latham Watkins representing Defendants. I'm here with Kristin Murphy, also from Latham Watkins.

THE VIDEOGRAPHER: The court reporter today is Brooke Ryan, representing Planet Depos.

Would the reporter please swear in the witness?

(Whereupon, the witness was sworn.)

COURT REPORTER: Thank you very much. Counsel, you may proceed.

NATHANIEL TAPIA, having been first duly sworn to state the whole truth, testified as follows:

EXAMINATION

By MS. O'HARA:

Q. Good morning, Mr. Tapia. My name is Allie O'Hara, and I represent the Defendants in this lawsuit.

Can you please state your full name for the record?

**6**

A. Nathaniel Tapia.

Q. Where do you currently reside?

A. Santa Ana, California.

Q. And where are you taking the deposition from today?

A. In Orange, California.

Q. Are you at a business office or --

A. Correct.

Q. Have you ever had your deposition taken before?

A. No.

Q. Okay. So I'll discuss some important ground rules. So please let me know if you can't hear my question or if the Internet has frozen. And given that there may be lags or delays in the remote deposition, it's very important that you take pauses between questions and answers.

Do you understand?

A. Correct.

Q. And is anyone else in the room with you?

A. No.

Q. So do you understand that unless we are on a break, any communication with your counsel must occur on camera and must be audible to the court reporter?

**7**

A. Yes.

Q. The court reporter will be taking down everything you say, so it's very important that you speak clearly and acknowledge either yes or no answers verbally and it's very important that we do not talk over each other.

Do you understand so far?

A. Yes.

Q. Okay. And if you understand -- if you answer a question, I'll presume that you understand it. And if you do not understand my questions, please let me know and I can repeat or rephrase for you. Your attorney may object to my questions but you must still answer them, unless you're instructed not to.

Do you understand?

A. Yes.

Q. Okay. And do you have any questions so far?

A. No.

Q. Did you receive a binder of documents this morning?

A. No.

Q. Okay. I'll -- I can put documents up on the screen for us as we go through.

**8**

A. Okay.

Q. So do you have any documents in the room -- related to this case in the room with you?

A. No.

Q. Do you have any notes taken prior to the deposition that you intend to use during the deposition?

A. No.

Q. And are you taking the deposition on a computer?

A. Laptop, correct.

Q. Laptop? Are you using any other communication programs or devices other than this Zoom link?

A. No.

Q. I'll try to break around one hour but please let me know if you need to break before then. All I ask is that you answer any question pending before we take a break.

A. Okay. Yes.

Q. Is there anything that would impact your ability to answer questions truthfully today?

A. No.

Q. Have you ever testified in a trial?

A. No.

61

By MS. O'HARA:

Q. Can you explain how you became aware of your claims?

MS. WOLKE: Objection. Asked and answered, and he gave a response.

THE WITNESS: When I saw that there were no battery cells and the suppliers were nonexistent.

By MS. O'HARA:

Q. And you don't recall when you learned of that?

A. I do not recall.

Q. Do you recall how you learned of that?

A. Through press conference, news letters.

Q. Do you remember what news letters you looked at?

A. I do not recall.

Q. Was it a company press conference?

A. I do not recall.

Q. Do you recall whether -- the month of 2021 that you learned of this?

MS. WOLKE: Objection. Asked and answered.

THE WITNESS: I do not recall.

By MS. O'HARA:

Q. And before you became aware of these

62

claims, did you have any other concerns about Romeo's -- Romeo stock?

MS. WOLKE: Objection. Vague and ambiguous.

THE WITNESS: Can you restate that?

By MS. O'HARA:

Q. Were you aware of any risks associated with your investment in Romeo before you learned of the claims alleged in this case?

MS. WOLKE: Objection. Vague.

THE WITNESS: I had the risk statement. Besides the risk statement?

By MS. O'HARA:

Q. Not besides if that's -- if that's what you considered.

A. Well, I did read the risk statement, so yes.

Q. In Romeo's SEC filings?

A. Yes.

Q. Have you ever lost money on other investments?

A. Yes.

Q. Did you sue those companies?

A. No.

Q. Before you engaged counsel, did you -- do

63

you know whether they had already investigated the securities act claims against Romeo?

A. Can you repeat that?

MS. WOLKE: Objection. Foundation.

By MS. O'HARA:

Q. Before -- before you engaged Glancy --

A. Okay.

Q. -- do you know whether they had already investigated the claims at issue in this case?

A. I believe they did because they had already -- I had already seen their -- the way I found them was because of the Romeo class action lawsuit.

Q. And you are seeking now to represent a class of investors and claims against Romeo; right?

A. Yes.

Q. What is your understanding of what it means to represent a class of investors?

A. I and a selected few that is trying to recuperate my and their money and have the best interest at hand for the group.

Q. What is your understanding of the duties as a class representative?

A. To accelerate the case and to make

64

decisions -- to make financial decisions for the group.

Q. Do you know what a fiduciary duty is?

A. I believe it's the same as what you just asked me what my duties were.

Q. Do you understand that as a class representative you have to fairly and adequately represent other members of the class?

A. Yeah.

Q. And what is your understanding of the class that you are asking to represent?

A. Common Romeo Power stock purchasers that have lost money due to Romeo's lies and fraudulent activities.

Q. Do you know the class period at issue?

A. October to August. So October 2021 or -- October to August. So it's October -- yeah, October -- sorry -- October 2020 to August 2021.

Q. Do you know whether your attorneys talked to any other investors in the class?

A. Investors in the class other than representatives?

Q. Anyone in the class?

A. The representatives, of course.

Q. Do you know who the representatives are?

**65**

A. Not -- not that I can recall.

Q. Have you ever spoken to any of them?

A. No.

Q. Have you ever spoken to any other investors in the class?

A. No.

Q. Have you received any payment or compensation for serving as a proposed class representative?

A. No.

Q. Do you anticipate receiving any payment for serving as class representative here?

A. No.

Q. And have you ever served as a class representative for any other securities class action?

A. No.

Q. So let's discuss some of the allegations that are in the Second Amended Complaint.

You don't have -- you don't have your binder with you; right?

A. No. It wasn't delivered in time.

Q. Okay. So I can drop the Second Amended Complaint into the chat, if it's helpful.

A. Please.

**66**

I'm just going to change one of these chairs real quick to see if I can get something with a better backing.

Q. Okay. I dropped the Complaint into the chat. If you can open it and turn to page 63.

A. Okay. It's opened then on page 63.

MS. WOLKE: Allie, real quick. 63 of the PDF or number 63 on the page?

MS. O'HARA: On the page.

MS. WOLKE: Okay.

THE WITNESS: Oh, wait, number 63 on the page?

MS. O'HARA: Yes.

THE WITNESS: What -- what page on the PDF would that be?

MS. O'HARA: 66.

THE WITNESS: Page 66 on PDF, so page 63?

MS. O'HARA: Yes.

THE WITNESS: September 30th, 2020?

MS. O'HARA: Yep, that's right.

By MS. O'HARA:

Q. Do you have it up?

A. Yes.

Q. Okay. So looking at this first bold and italicized statement, it says, "As of September

**67**

30th, 2020, we had a backlog of approximately 310 million, of which approximately 240 million represented the minimum revenue that would be received under such contracts to satisfy take or pay minimum ordered commitments."

Are you alleging that this statement was false or misleading?

A. Yes.

Q. We will get into why this statement is false and misleading based on the Complaint, but are there any other reasons why you think this statement is false or misleading that you did not include in the Complaint?

A. No.

Q. The next statement is, "The portion of backlog" -- the next bold and italicized statement, excuse me, says, "The portion of our backlog as of September 30th, 2020, that is expected to be recognized in the 12-month period following September 30th, 2020, is approximately 59 million."

You're alleging that that statement is also false and misleading?

A. Right. Yes.

Q. So going down to paragraph 183 on the next page, this is where the Second Amended Complaint

**68**

explains why you think those statements were false and misleading.

A. What page?

Q. 63, going onto 64.

A. 63 --

Q. Paragraph 183.

A. Okay.

Q. So first it says that "Romeo did not disclose that it did not have sufficient battery cell inventory and/or access to supply to accommodate user demand and ramp up production for Q2020 and into 2021."

Why did this specific information matter?

MS. WOLKE: Objection. Foundation. Calls for a legal conclusion.

THE WITNESS: Well, it's included in the Complaint.

By MS. O'HARA:

Q. I'm asking why it mattered to you as an investor?

MS. WOLKE: Same objections.

THE WITNESS: If -- if this was known, I would have never invested in it -- in Romeo.

By MS. O'HARA:

Q. What -- what led you to believe that Romeo

81

hold any other Romeo securities?

A. That would be on my -- my -- my broker transaction statements.

Q. Okay. There is no other -- I can represent to you that there is no other sales of Romeo common stock listed in any of your broker statements, so is this the last of your Romeo holdings that you sold on July 16th?

A. Correct.

Q. And you know that the class period here ends in August 2021; right?

A. Yes.

Q. But you didn't own Romeo common stock at the time?

A. Past August?

Q. Correct.

A. No.

Q. Were you still following the company as a potential investment?

A. As a potential investment?

Q. Yes.

A. No.

Q. You have no claimed losses as a result of the August 2021 alleged corrective disclosure; right?

82

A. No. Nowadays, I didn't have anymore stock at that time.

Q. And do you still want to serve as class representative in this case?

A. Yes.

MS. O'HARA: I have no further questions.

MS. WOLKE: I have no questions for the witness.

THE VIDEOGRAPHER: For the record, I will read us off.

This concludes the videotaped deposition of Nathan Tapia. We are going off the record at 12:39.

(Proceedings concluded.)

---o0o---

83

CERTIFICATE OF STENOGRAPHIC REPORTER

I, BURGUNDY B. RYAN, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition,

NATHANIEL TAPIA,

was by me duly sworn to tell the truth, the whole truth, and nothing but the truth, in the within-entitled cause; that said deposition was taken at the time and place therein named; that the testimony of said witness was stenographically reported by me, a disinterested person, and was thereafter transcribed into typewriting.

I further certify that I am not of counsel or attorney for either or any of the parties to said deposition, nor in any way interested in the outcome of the cause named in said caption.

DATED: Thursday, April 13, 2023.

_____
Burgundy B. Ryan, CSR No. 11373, RPR