**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE ROMEO POWER INC. SECURITIES LITIGATION | Case No. 1:21-cv-03362-LGS |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS
REPRESENTATIVES AND CLASS COUNSEL**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    THE COURT SHOULD REJECT DEFENDANTS' ATTEMPTS TO SHORTEN THE CLASS
PERIOD......................................................................................................... 2

    A.    Defendants' Merits-Based Arguments Are Procedurally Improper ...................... 2

    B.    The Class Period Does Not Start Too Soon............................................. 3

    C.    The Class Period Does Not End Too Late .............................................. 4

III.   THE PROPOSED CLASS REPRESENTATIVES ARE TYPICAL AND ADEQUATE ......................... 6

    A.    That The Class Representatives Are "Unrelated" Does Not Render Them
Inadequate ...................................................................................... 6

    B.    The Existence of A Partial Disclosure Does Not Mean that Named Plaintiffs Have
Competing Theories Of Reliance, Causation, Or Damages .................................. 6

    C.    Damages Can Be Calculated On A Class-Wide Basis........................................... 7

    D.    Mr. Castleberg's Transactions In Warrants Does Not Make Him Inadequate ....... 8

    E.    Defendants Do Not Show A Lack Of Reliance For Mr. Castleberg and
Ms. Nguyen ...................................................................................... 9

    F.    Each Plaintiff Demonstrated Their Interest In And Responsibility To This Case....... 9

IV.   CONCLUSION................................................................................................ 10

# TABLE OF AUTHORITIES

<u>CASES</u>

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................................... 1, 9

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ......................................................................................................... 3

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) .................................................................................. 7, 9

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
   284 F.R.D. 173 (S.D.N.Y. 2012) .................................................................................... 2

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ......................................................................................................... 2

*Freudenberg v. E\*Trade Fin. Corp.*,
   712 F.Supp.2d 171 (S.D.N.Y. 2010) ............................................................................. 5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ............................................................................................... 1, 9

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
   422 F.Supp.3d 821 (S.D.N.Y. 2019) ............................................................................. 5

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004) .............................................................................................. 6

*In re Alibaba Grp. Holding Ltd. Sec. Litig.*,
   2023 WL 2601472 (S.D.N.Y. Mar. 22, 2023) ............................................................ 2, 3

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   265 F.R.D. 157 (S.D.N.Y. 2010) .................................................................................... 7

*In re CarLotz, Inc,. Sec. Litig.*,
   2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023) ............................................................ 2, 3

*In re IPO Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) .............................................................................................. 2

*In re JPMorgan Chase & Co. Sec. Litig.*,
   2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015) ............................................................ 8

*In re Monster Worldwide, Inc. Sec. Litig.*,
251 F.R.D. 132 (S.D.N.Y. 2008) .................................................................................. 10

*In re Omnicom ERISA Litig.*,
2022 WL 18957200(S.D.N.Y. Aug. 11, 2022) ............................................................. 6

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...................................................................................... 5

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................... 6

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................................. 6

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................. 8

*In re SunEdison, Inc. Sec. Litig.*,
329 F.R.D. 124 (S.D.N.Y. 2019) ................................................................................. 5

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)................................................................................... 4, 5

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) ...................................................................................... 2

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) ................................................................................. 8

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011).................................................................................................... 4

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) ................................................................................. 7

*Malriat v. Quantumscape Corp.*,
2022 WL 17974629 (N.D. Cal. Dec. 19, 2022).......................................................... 8

*McIntire v. China MediaExpress Holdings, Inc.*,
38 F.Supp.3d 415 (S.D.N.Y. 2014) ............................................................................. 6

*Pelletier v. Endo International,*
*Inc*. 338 F.R.D. 446 (S.D.N.Y. 2021) ...................................................................... 10

iii

*Pirnik v. Fiat Chrysler Autos., N.V.*,
  327 F.R.D. 38 (S.D.N.Y. 2018) ................................................................................... 6

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) .................................................................................. 6

*Wagner v. Barrick Gold Corp.*,
  251 F.R.D. 112 (S.D.N.Y. 2008) ................................................................................ 6

*Wilson v. LSB Indus., Inc.*,
  2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ........................................................... 2

*Zivkovic v. Laura Christy LLC*,
  329 F.R.D. 61 (S.D.N.Y. 2018) .................................................................................. 6

Plaintiffs Castleberg, Cante, Chimchirian, Tapia, and Nguyen ("Plaintiffs") submit this reply in further support of their Motion for Class Certification ("Motion" or "Mot.") (ECF No. 147) and in response to Defendants' Opposition to Plaintiffs' Motion ("Opposition" or "Opp.") (ECF No. 156).[1]

## I.    INTRODUCTION

Plaintiffs' Motion demonstrated that all required elements of Rule 23(a) and 23(b)(3) are met. Significantly, the expert report of Dr. Cain demonstrates market efficiency which gives rise to the fraud-on-the-market presumption of reliance, thus establishing the predominance of common issues under Rule 23(b)(3). *See Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988).

Defendants rightly concede that the elements of numerosity, commonality, and superiority are met. Defendants also concede market efficiency.[2] In their Opposition, Defendants challenge only the length of the Class Period (insisting that it starts too early and ends too late, Opp. 9-13) and quibble that Plaintiffs are inadequate Class Representatives (insisting they have conflicts relating to damages or are otherwise individually "flawed," Opp. 8, 14-23).

Defendants' arguments about the length of the Class Period rest upon merits arguments that are both procedurally improper and substantively incorrect. Defendants' attempts to pick off the Plaintiffs are equally unavailing. As demonstrated in the Motion and discussed herein, each Plaintiff has demonstrated his/her adequacy to represent the Class, and Defendants point to no irreconcilable conflicts of interest or unique defenses that preclude Plaintiffs' service. The Court should reject Defendants' self-serving attempts to defeat class certification based on arguments about the Plaintiffs' supposed inadequacy. Plaintiffs' Motion should be granted in its entirety.

---

[1] Unless otherwise noted, capitalized terms herein have the meaning set forth in Plaintiffs' opening Motion.

[2] Defendants presented no evidence and no argument that the market was not efficient during the Class Period. They make a passing reference to suggest "a lack of price impact that precludes class certification" (Opp. 14, n.6), but they fail to produce any evidence to prove a lack of price impact, as is required to rebut the presumption of reliance. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2415-17 (2014).

## II.    THE COURT SHOULD REJECT DEFENDANTS' ATTEMPTS TO SHORTEN THE CLASS PERIOD

Defendants raise two merits-based arguments attempting to shorten the Class Period. First, they argue the Class Period starts too soon because pre-Merger investors do not have standing to sue. Opp. 9-11. Second, they claim the Class Period ends too late, arguing the fraud was fully revealed on March 30, 2021. Opp. 11-13. These arguments are both procedurally improper and legally incorrect.

### A.    Defendants' Merits-Based Arguments Are Procedurally Improper

Rule 23 is not a device for Defendants to advance merits-based attacks on the sufficiency of the pleadings or evidence in an attempt to seek partial dismissal and/or partial summary judgment. While courts may consider merits-related issues at class certification when necessary to resolve a Rule 23 requirement, the Second Circuit instructs that courts "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, *18 (S.D.N.Y. Aug. 13, 2018), *Report & Recommendation* (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (cleaned up)).[3]

None of Defendants' merits arguments disproves Plaintiffs' showing that the Rule 23 elements are met. In fact, Defendants' arguments themselves raise common issues. For example, Defendants' argument about pre-Merger standing will fail or succeed commonly as to all pre-Merger investors.

---

[3] *See also City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 177 (S.D.N.Y. 2012) ("A motion for class certification following a denial of a motion to dismiss is emphatically not an opportunity for a second round of review, at a higher standard, no less, of the substantive merits of plaintiffs' underlying claims.") (cleaned up); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011) ("While disputes about Rule 23 criteria may overlap with questions going to the merits of the case, the district court should not resolve the merits of the case at class certification."). Notably, the two cases Defendants cite to argue pre-Merger investors lack standing were decided on Rule 12(b)(6) motions to dismiss. Opp. 10-11 (citing *In re CarLotz, Inc,. Sec. Litig.*, 2023 WL 2744064, *4 (S.D.N.Y. Mar. 31, 2023); *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, 2023 WL 2601472, *5 (S.D.N.Y. Mar. 22, 2023)).

2

Likewise, when evidence is presented on loss causation and damages associated with the August 16, 2021 disclosure, such evidence will apply equally to all members of the proposed Class who continued to hold shares over that date. There is no basis to curtail the Class Period now.

### B.    The Class Period Does Not Start Too Soon

Defendants' argument that the Class Period starts too early because Plaintiffs lack standing (Opp. 9-11) also is legally and factually *wrong*. Plaintiffs allege RMG made misleading statements in its pre-Merger registration statement and other SEC filings. SAC ¶¶58-59, 111, 114-123. The Court held those statements by RMG were actionable.[4] Class Period investors who purchased pre-Merger RMG stock, including Cante and Tapia, have standing to sue RMG (now Romeo) for those statements.

Plaintiffs' allegation of false statements by RMG in RMG's own SEC filings thus distinguishes this case from *CarLotz*. Opp. 10. There, the Court held that the plaintiffs "lack standing to challenge any statements made by Pre-Merger CarLotz about Pre-Merger CarLotz" and noted that "*[a]ll of the challenged pre-merger statements…were made by Pre-Merger CarLotz* about itself, not Acamar." *CarLotz*, 2023 WL 2744064 at \*4-\*5 (emphasis added). Here, ***pre-Merger RMG purchasers challenge pre-Merger statements <u>made by RMG</u> in RMG's own SEC filings***.

This readily satisfies the purchaser-seller rule, and also distinguishes this case from the partial dismissal in *Alibaba*. There, the Court held that the plaintiffs (Alibaba investors) lacked standing to sue Alibaba for statements made by its affiliate, Ant Group, regarding Ant Group's IPO. *Alibaba*, 2023 WL 2601472 at \*3 ("To sue under Section 10(b), Plaintiffs must have 'at least dealt in the security to which the prospectus, representation, or omission relates.'") (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 747 (1975)). Here, ***pre-Merger Plaintiffs dealt in the security to which the prospectus relates: RMG***.

---

[4] *See* ECF No. 107 at 2, 7-8 (claim of four suppliers in RMG registration statement and prospectus actionable); ECF No. 124 at 4-6 (backlog statements in RMG registration statement and prospectus actionable).

Thus, contrary to Defendants' claim, *CarLotz* does not support the "bright-line rule" that pre-merger SPAC investors *never* have standing to sue for pre-merger statements. Opp. 11. Pre-merger RMG investors have standing to sue RMG for allegedly misleading statements *in its own SEC filings*. "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011). Clearly, RMG had "ultimate authority" over the statements in its own SEC filings, and can be held liable to RMG investors for them.

### C.      The Class Period Does Not End Too Late

Defendants' argument that the Class Period should end on March 30, 2021, arguing there is no loss causation on August 16, 2021 (Opp. 11-12), also fails. First, the determination of whether new, fraud-related corrective information was revealed, or whether fraud-related risks further materialized, is squarely within the purview of the jury. *See, e.g.*, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 262-263 (2d Cir. 2016) (affirming jury's finding of loss causation based on "a series of events in the first half of 2002 [that] made the truth about [Vivendi's concealed] liquidity risk come to light.").

Moreover, Defendants' argument that all corrective fraud-related information was fully revealed on March 30, 2021, is foreclosed by the record in this case. The truth of Defendants' misstatements and omissions about Romeo's cell shortage *partially* came to light on March 30, 2021, when Defendants first belatedly disclosed the shortage. SAC ¶¶89-90, 192. Still, Defendants falsely reassured that the shortage was "temporary" and would not impact Romeo's "intermediate" opportunities. *Id.* ¶149; *see also id.* ¶¶157-58. Then, on August 16, 2021, Romeo announced another quarter of financial results hampered by a lack of cells, and Romeo's new CFO admitted that Romeo *still* had not started to ramp production because it *still* lacked cells. *Id*. ¶¶103, 106, 110. And having made only $1 million in 2Q 2021, Romeo further reduced its revenue to be recognized by year-end to $18.9 million. *Id.* at ¶104 & n.3. These are clearly new, fraud-related disclosures that further revealed

4

the truth about, and constituted a further materialization of the risk of, the alleged fraud.[5]

Defendants' argument that loss causation cannot be shown because Romeo's 2Q'21 revenue missed Street consensus—rather than Defendants' own projections—misapprehends the law on loss causation. Opp. 12. Plaintiffs need not prove Defendants themselves disclosed a mirror-image correction of a previous statement to show loss causation. *E.g.*, *Freudenberg v. E\*Trade Fin. Corp.*, 712 F.Supp.2d 171, 202 (S.D.N.Y. 2010) (loss causation does not require "a corrective disclosure be a 'mirror image' tantamount to a confession of fraud."). Rather, Plaintiffs need only allege a "sufficiently direct" relationship between the losses that investors suffered and the information that was previously "misstated or concealed by [Defendants]." *Vivendi*, 838 F.3d at 262-63. Loss causation is often shown based on news revealed by third parties, including where a company's performance missed analyst expectations and the miss was within the "zone of risk" created by the fraud. *See, e.g.*, *id*. (loss causation with respect to analyst downgrades); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 422 F.Supp.3d 821, 855 (S.D.N.Y. 2019) (loss causation in connection with earnings miss where the poor performance was within the "zone of risk" created by the fraud and cause of the miss was disclosed by a third party days later).[6]

---

[5] This case is thus readily distinguished from *In re SunEdison, Inc. Sec. Litig.*, 329 F.R.D. 124, 134 (S.D.N.Y. 2019) (Opp. 11), where the Court shortened a class period to end earlier where all material information related to the challenged statements was disclosed and corrected. Further, whether Mr. Castleberg could personally identify the new corrective information revealed on August 16, 2021 (Opp. 12), is irrelevant to whether there *was* new corrective information revealed on August 16, 2021.

[6] Defendants' citation to the inapposite *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (Opp. 13) also shows their argument is premature. At **summary judgment**, the court held that the plaintiffs failed "to create a triable dispute that Oracle's share price dropped as a result of the market learning of and reacting to Defendants' purported fraud, as opposed to Oracle's poor financial health generally." *Id.* The court cited "overwhelming evidence produced during discovery indicat[ing] the market understood Oracle's earnings miss to be a result of several deals lost in the final weeks of the quarter due to customer concern over the declining economy" and not, as the plaintiffs had alleged, problems with the "quality and success" of a single Oracle product. *Id.* at 393. Here, the evidence—including the admission of Romeo's own CFO—will show the market understood Romeo's poor performance to be the result of its failure to ramp production due to the continued lack of cells despite Defendants' interim assurances; *i.e.*, the market learning more about the alleged fraud.

5

### III.    THE PROPOSED CLASS REPRESENTATIVES ARE TYPICAL AND ADEQUATE

#### A.    That The Class Representatives Are "Unrelated" Does Not Render Them Inadequate

Plaintiffs seek to appoint multiple representatives not because they concede Mr. Castleberg is unsuitable (Opp. 8), but in anticipation of Defendants' "kitchen sink" attacks on Mr. Castleberg (and the other proposed representatives) in an attempt to avoid certification of the Class. Ironically, Defendants cite purported concerns of efficiency and protection of the Class's interests in arguing no Class should be certified at all. Opp. 8-9, 23-24. As courts often caution, "[p]ermitting defendants to police the adequacy of class representatives and their counsel is like 'permitting a fox ... to take charge of the chicken house.'" *In re Pfizer Inc. Sec. Litig*., 282 F.R.D. 38, 48 (S.D.N.Y. 2012) (collecting cases). Thus, "court[s] must be wary of a defendant's efforts to defeat representation [] on grounds of inadequacy." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 72 (S.D.N.Y. 2018) (citations omitted).

Despite Defendants' assertions that the addition of class representatives is improper (Opp. 8-9), such additions are entirely appropriate and in the interests of the Class.[7] Indeed, courts in this Circuit routinely appoint multiple class representatives, including unrelated individuals or entities.[8]

#### B.    The Existence of A Partial Disclosure Does Not Mean that Named Plaintiffs Have Competing Theories Of Reliance, Causation, Or Damages

Defendants' argument that Mr. Cante and Ms. Nguyen are atypical or inadequate because they continued to purchased Romeo stock after the first partial disclosure (Opp. 15-16) contravenes

---

[7] *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004) (affirming addition and appointment of three named plaintiffs to serve as class reps alongside the lead plaintiff, the Court held "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class").

[8] *See Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 (S.D.N.Y. 2018) (appointing 3 class reps); Wolke Reply Decl. Ex. 8, *In re Alibaba Grp. Holding Ltd. Sec. Litig.*, No.1:15-md-02631-CM (S.D.N.Y. May 1, 2018) (six class reps); *In re Omnicom ERISA Litig.*, 2022 WL 18957200 at *13(S.D.N.Y. Aug. 11, 2022) (five class reps); *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 100 (S.D.N.Y. 2011) (five class reps); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F.Supp.3d 415, 421 (S.D.N.Y. 2014) (five class reps); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 301 (S.D.N.Y. 2010) (five class reps); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 114-15 (S.D.N.Y. 2008) (three class reps).

established law. Numerous cases have held that the proposed class representative's purchases of stock after adverse disclosures do not destroy typicality. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157 (S.D.N.Y. 2010) (cleaned up), *vacated and remanded*, 689 F.3d 229 (2d Cir. 2012) (stating that despite purchases after a corrective disclosure, "there is no evidence that Lead Plaintiffs were aware of further, undisclosed frauds"). Here, both Mr. Cante and Ms. Nguyen testified that they made additional purchases after the first disclosure because they did not realize the extent of the fraud.[9]

Defendants alternatively argue that the fact that some, but not all, Plaintiffs held over the second corrective disclosure gives rise to intra-Class conflicts relating to damages. Opp. 16-18. The law on damages at class certification is clear: potential individualized issues of damages do not preclude certification. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 75 (S.D.N.Y. 2015). Defendants' argument would mean that a case with more than one loss causation date could *never* be certified, because investors who held over only one disclosure always could theoretically recover more if more damages are assigned to that date than another. That is not the law.[10]

### C.  Damages Can Be Calculated On A Class-Wide Basis

Despite Defendants' arguments about damages (Opp. 17-18), Dr. Cain, in his report and at deposition, has demonstrated how to develop a workable damages model based on an event study for all Romeo securities at issue.[11] His methodology is similar to that which he propounded in a recently-

---

[9] Wolke Reply Decl. Ex. 4 (Cante Tr.) at 43:17-44:4 (testifying that he purchased after first disclosure because Selwood stated that "the shortage is temporary and [Defendants are] confident that it will not affect intermediate and longer term opportunities. So at that point in time, when I did purchase, I still had faith in that company"); *id.* Ex. 5 (Nguyen Tr.) at 65:20-66:8, 70:9-19 (testifying that she still believed in Romeo).

[10] To defeat class certification, Defendants must show that a conflict or unique defense will "threaten to become the focus of the litigation." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008). The threat must be real—"the court should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate." *Id.*

[11] Dr. Cain detailed in his Expert Report (ECF No. 149-1) how he would calculate damages on a class-wide basis. Artificial inflation can be calculated through (1) an event study to measure security price reactions to corrective disclosures, *id.* at ¶85; and (2) a model to evaluate price inflation throughout the Class Period, *id.* at

certified securities class action. *See Malriat v. Quantumscape Corp.*, 2022 WL 17974629 (N.D. Cal. Dec. 19, 2022). Indeed, numerous courts have held that such a methodology is sufficient to support class certification in this District. *See, e.g.*, *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 371-72 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017); *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *7 (S.D.N.Y. Sept. 29, 2015).

### D.    Mr. Castleberg's Transactions In Warrants Does Not Make Him Inadequate

That Mr. Castleberg purchased warrants (Opp. 19-20) does not render him atypical or inadequate to represent the Class. *Petrobras*, 312 F.R.D. at 360-61; *see also* Motion at 11.

Moreover, while the law is clear that damages need not be calculated now,[12] Defendants' argument about Mr. Castleberg's supposed lack of damages is *wrong*. Opp. 20-21. Defendants themselves introduced a deposition exhibit showing the price of Romeo's warrants fell 50% following the March 30, 2021 disclosure. Wolke Reply Decl. Ex. 7. Further, Dr. Cain has shown that damages for warrants can be determined by calculating the difference between the warrant purchase price (at inflated value) versus the warrant price that would have prevailed absent any artificial inflation in the underlying stock price.[13] Defendants' argument ignores the artificial inflation *at the time of purchase* relative to the inflation at the time of sale or expiration. In other words, they fail to account for the theory that Mr. Castleberg's damages stem from the fact that, due to the fraud, he paid more for his warrants than he should have, regardless of whether the warrants ultimately expired or were sold.

---

¶86. He further explained the commonly-used techniques that could be used to apply these models to calculate damages for options or warrants. *Id*. at ¶87. He extrapolated further on each of these issues at his deposition. *See e.g.* Wolke Reply Decl. Ex. 6 (Cain Tr.) at 50:3-51:8; 67:7-68:25; 72:25-75:8.

[12] *See In re Scotts EZ Seed Litig.,* 304 F.R.D. 397, 414 (S.D.N.Y. 2015) (an expert is not required "to perform his [damages] analyses at the class certification stage") (citing cases).

[13] *See* Wolke Reply Decl. Ex. 6 (Cain Tr.) at 8:18-9:1, 44:9-20 (the price impact of misstatements on warrants can be determined by "using the output of that event study on the common stock and feeding that into the Black-Scholes model to construct the similar ribbons for the different option series and warrants on each day during the class period"). Contrary to Defendants' argument, a warrant that is "out-of-the-money" is not without value; it has value because the stock price may rise before expiration (which is the point of warrants and call options).

**E.    Defendants Do Not Show A Lack Of Reliance For Mr. Castleberg and Ms. Nguyen**

Plaintiffs need not prove specific reliance to attain class certification because they have invoked the fraud-on-the-market presumption of reliance and Defendants have failed to rebut it. *Basic*, 485 U.S. at 246; *Halliburton*, 134 S. Ct. at 2417. Defendants concede market efficiency and make no attempt to rebut the presumption of reliance with evidence of a lack of price impact. Instead, Defendants argue that they have sufficiently rebutted the presumption as to Mr. Castleberg and Ms. Nguyen because they are supposedly "serial SPAC investors" who did not rely on Defendants' misstatements and were "indifferent" to the alleged fraud. Opp. 16. The testimony of both Mr. Castleberg and Ms. Nguyen readily refutes this argument. Both testified that they were focused on the merits of Romeo as an investment, and feel strongly that Defendants misled them and other investors.[14]

**F.    Each Plaintiff Demonstrated Their Interest In And Responsibility To This Case**

While Defendants argue the size of Mr. Cante's financial loss renders him inadequate (Opp. 22), this argument contravenes the purpose of class actions to protect the interests of individuals whose losses would otherwise be too small to pursue an individual claim. *See, e.g.*, *Carpenters*, 310 F.R.D. at 74. Further, despite Defendants' characterizations, Mr. Cante testified that his loss was a significant "hit" to him.[15] More importantly, Mr. Cante already has demonstrated his interest in this litigation— and fulfillment of his duties—by, among other things, reviewing and approving pleadings and written

---

[14] *See e.g.*, Wolke Reply Decl. Ex. 1 (Castleberg Tr.) at 54:3-13 (testifying as to reasons he invested in Romeo); 109:6-110:7 (risk factors about supply chain issues were misleading because the risk factors were "definitely portrayed as . . . something that was a potential, something in the future" but the risks "were ongoing at the time"); *id.* Ex. 5 (Nguyen Tr.) at 92:8-18 (stating that Defendants lied to investors when "they didn't have enough supply to make the battery production, but told the investors differently" and "they lied [when] they said they will ramp up the production . . . but they didn't . . . actually do anything").

While Defendants argue that errors in Ms. Nguyen's certification (which were subsequently corrected) render her inadequate, Defendants cite cases concerning the appointment of lead plaintiff. Opp. 22-24. In those cases, the transactions are directly relevant to the determination of the "largest financial interest" for appointment of lead plaintiff under the PSLRA. Here, by contrast, Lead Plaintiff has already been appointed, and Ms. Nguyen's transactions are irrelevant to any PSLRA financial interest determination.

[15] Wolke Reply Decl Ex. 2 (Cante Tr.) at 51:14-25.

discovery, producing documents, traveling to New York to sit for his deposition, and understanding and communicating his duties as a proposed Class Representative.

Finally, Defendants' assertions that Plaintiffs have "abdicated their responsibilities" (Opp. 23) is refuted by each Plaintiff's testimony. Each Plaintiff has testified that they understand their duties to the Class[16] and spent significant time consulting with counsel and preparing for their deposition.[17] This testimony strongly supports each Plaintiff's adequacy.[18]

## IV.   CONCLUSION

For the reasons above and in Plaintiffs' Motion, the Court should grant the Motion in full.[19]

Dated: May 3, 2023                    By: */s/ Kara M. Wolke*
                                      **GLANCY PRONGAY & MURRAY LLP**
                                      Kara M. Wolke (admitted *pro hac vice*)
                                      Melissa C. Wright (admitted *pro hac vice*)
                                      1925 Century Park East, Suite 2100
                                      Los Angeles, CA 90067
                                      Telephone: (310) 201-9150
                                      kwolke@glancylaw.com
                                      mwright@glancylaw.com

---

[16] *See e.g.*, Wolke Decl. Ex. 1 (Castleberg Tr.) at 92:6-13; *id.* Ex. 2 (Cante Tr.) at 52:11-53:1; *id.* Ex. 5 (Nguyen Tr.) at 89:8-12; *id.* Ex. 4 (Chimchirian Tr.) at 82:12-83:18; *id.*Ex. 3 (Tapia Tr.) at 63:25-64:2.

[17] *See e.g.*, Wolke Decl. Ex. 1 (Castleberg Tr.) at 11:10-20; *id.* Ex. 2 (Cante Tr.) at 11:15-12:14; *id.* Ex. 5 (Nguyen Tr.) at 15:13-24; *id.* Ex. 4 (Chimchirian Tr.) at 14:4-15:6; *id.* Ex. 3 (Tapia Tr.) at 11:4-21.

[18] This is in stark contrast to *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135-36 (S.D.N.Y. 2008) (Opp. 24), where, the deponent for plaintiff "did not know the name of either individual defendant, did not know whether STA–ILA ever owned Monster stock, did not know if an amended complaint had been filed, did not know whether he had ever seen any complaint in the action, did not know that defendant McKelvey had moved to dismiss the complaint, and did not know that STA–ILA had moved for pre-discovery summary judgment". Here, each Plaintiff demonstrated sufficient knowledge of the case. Wolke Reply Decl. Exs. 1-5.

[19] Defendants argue that the inclusion of the language "and were damaged thereby" in the Class definition creates an improper "fail-safe" class. Opp. 24-25. Courts in this Circuit regularly certify securities class action classes with such definitions. *See Pelletier v. Endo International, Inc.* 338 F.R.D. 446, 478-79 (S.D.N.Y. 2021) (collecting cases). Nevertheless, if the Court is concerned with this language, Plaintiffs will not object to its removal from the class definition. *Id.* at 479.

**GLANCY PRONGAY & MURRAY LLP**
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
glinkh@glancylaw.com

*Lead Counsel for Plaintiffs and the Proposed Class*

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
fcruz@frankcruzlaw.com

*Additional Counsel for Plaintiffs and the Proposed Class*

11

**PROOF OF SERVICE**

I hereby certify that on this 3rd day of May 2023, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Kara M. Wolke*
Kara M. Wolke