# EXHIBIT 6

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------x

IN RE ROMEO POWER, INC.    :    Case No.

SECURITIES LITIGATION      :    1:21-cv-03362-LGS

-------------------------x


Videotaped Deposition of

DR. MATTHEW CAIN

New York, New York

Tuesday, April 11, 2023

10:09 a.m.


Job No.: 482991

Pages: 1 - 109

Reported by: KIARA MILLER

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023                    8

Q    So let's go your summary of
opinions on page two.  If you look at the
first sentence there it says:

        "I was asked--"

        I'm skipping a few words.

        "-- to determine whether the
market for Romeo Power common stock was
efficient during the class period."

        Do you see that?

A    Yes.

Q    And then the next sentence says:

        "I was also asked to assess
whether the value impact of any alleged
misstatements would be reflected in Romeo's
warrants ands option prices."

        Do you see that?

A    Yes.

Q    What's the difference between
determining whether the market was efficient
and assessing whether impact would be
reflected?

A    So for conducting an assessment of
market efficient for security like a common
stock, I will analyze the camera factors and
the Crogman factors and a few other analyses

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023                    44

calculating our official inflation ribbon

which is the input out-of-pocket method, is

to the use the output of the event study and

apply that output in some manner, such as

constant dollar, constant percentage back

casting, construct a daily ribbon of

artificial inflation in the stock price over

the four class period.

Q    For holders of options and

warrants you will need to use a

Black-Scholes or other model to determine

the price impact of the alleged

misstatements?

A    That's typically how we do it, is

typically using the output of that event

study on the common stock and feeding that

into the Black-Scholes model to construct

the similar ribbons for the different option

series and warrants on each day during the

class period.

Q    I understand you do it as all

broadly similar, but there are some

different steps for each security.  I'm

trying to understand the full scope of

different steps that you're going to have to

definitely need an entire loss causation
analysis.

Q    You refer to this as a description
of the process.  In the tree you used this
almost identical description of the process
in almost every case in which you've offered
an opinion in the securities class action
recently?

A    I think in basically every market
efficiency report in which I've talked about
the ability to calculate damages I've put
forward the out-of-pocket methodology and so
that methodology is the same regardless of
the case and regardless of the identities of
the class members.  But the key difference
from case to case is really what I refer to
in the first sentence of paragraph 82, which
is really the end of that sentence whether
this can be done in the a methodology that's
consistent with plaintiff's theory of
liability.  So that's really referring back
the section three of the report here where I
summarize the allegations in the case, the
alleged corrected disclosures, and I
consider whether there's an economic

Case 1:21-cv-03362-LGS   Document 158-6   Filed 05/03/23   Page 6 of 12

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023                    51

coherence such that this methodology would

be appropriate, and able to be carried out

in a way that's common across class members

given the allegations of the case.

So there's certainly very

important element here that is unique and

differs across every single case in which I

describe the methodology here.

Q    But you've offered the same

opinion verbatim in a number of cases,

regardless of the types of securities that

are at issue, right?

MS. WOLKE:  Object to form.

Q    Let's look.

(Whereupon, Expert Report of

Matthew Cain Re: 2U, Inc.

Securities Class Action was

marked as Exhibit 50 for

identification as of this date.)

Q    Sir, you've been handed a copy of

your report in the matter called In Re: 2U

Securities Class Action.  It's marked

Exhibit 50.

Do you remember who retained you

in this case?

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023                    67

indicated as of July 14, 2021, I have not                    11:52:27

done the math to see if this adds up to                    11:52:30

zero, in terms of the quantity, positives                    11:52:34

and negatives but if you're representing                    11:52:36

that it does, then I will take your word for                    11:52:39

it.                    11:52:41

     Q    I will make that representation.                    11:52:42

But, again, at any point we can get you a                    11:52:45

calculator if you'd like.                    11:52:50

          Let's talk about, you said you                    11:52:52

reviewed plaintiff's theory of liability.                    11:52:54

You're aware that plaintiff alleges that                    11:52:56

there were corrective disclosures in this                    11:52:58

case.  When were they?                    11:53:01

     A    I believe there were two                    11:53:04

corrective disclosures that were alleged.                    11:53:05

And I believe that the first alleged                    11:53:10

corrective disclosure was after market hours                    11:53:15

on March 30, 2021, with the fiscal 2021                    11:53:17

financial results and accompanying earnings                    11:53:23

call and then second alleged collective                    11:53:26

disclosure was after market hours on August                    11:53:28

16, 2021, and the company reported Q2 2021                    11:53:31

results.                    11:53:36

     Q    Sitting here today, you have not                    11:53:38

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023                    68

determined how much inflation, if any, was          11:53:40

dissipated from the price of Romeo                   11:53:44

securities on either of those two days,              11:53:49

correct?                                             11:53:50

    A    Correct.                        11:53:51

    Q    If all of the artificial inflation    11:53:52

remained in the stock price through                  11:53:58

August 16, Mr. Tapia wouldn't recover                11:54:00

anything, right?                                     11:54:02

        MS. WOLKE:  Objection.          11:54:03

    Foundation.  Outside the scope of     11:54:04

      this report.                       11:54:12

    A    So if there was no corrective         11:54:13

disclosure on March 30, 2021.                        11:54:16

    Q    Or it just didn't dissipate any       11:54:19

inflation?                                           11:54:22

    A    Well, I guess it would depend on       11:54:24

the artificial inflation ribbon you were             11:54:37

earlier talking about three different                11:54:40

methodologies, if the artificial inflation           11:54:41

would were to fluctuate throughout the class         11:54:45

period, there could be scenarios in which an         11:54:47

individual could have damages.  So it really         11:54:50

depends on the nature of the inflation               11:54:55

ribbon.                                              11:54:57

A    Okay.                                              11:59:57

Q    This is the form 8K that Romeo           11:59:57
filed with the SEC attaching a press release           12:00:06
as Exhibit 99.1, directing your attention to           12:00:09
the third paragraph, the final sentence of             12:00:12
that paragraph.  You can -- could you read             12:00:12
the sentence for me?                                   12:00:17

A    "Any such public warrants that           12:00:17
remained unexercised following 5:00 p.m. New           12:00:29
York City time on April 5, 2021 will be void           12:00:31
and no longer exercisable in the holders of            12:00:35
those public warrants will be entitled to              12:00:38
receive only the redemption price of one               12:00:40
cent per warrant."                                     12:00:42

Q    So again I don't know whether you,       12:00:45
I can't remember your testimony about                  12:00:49
whether you looked at this, but setting that           12:00:51
aside and returning to my question, what is            12:00:53
the value of an unexercised warrant in this            12:01:01
case at expiration?                                    12:01:07

A    This one seems to indicate that          12:01:09
the unexercised warrants would be entitled             12:01:11
to receive only one cent per warrant on the            12:01:17
redemption date.                                       12:01:21

Q    When constructing a class wide           12:01:30

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023                73

damages methodology, how do you factor in

damages for unexercised warrants as of the

redemption date -- withdrawn.

Let me ask it a different way.

When determining your class wide

damages methodology, would you be

calculating damages for unexercised warrants

that were redeemed on the redemption date?

A    I would carry out the methodology

or the model on every day for the

securities, but then there are like we

discussed earlier there are a lot of inputs,

and so if you look at like an artificial

inflation ribbon that can be fluctuating

each day and then you actually calculate

damages per investor there can be additional

limitations or caps, which is like the 90

day look back price for securities and

things like that.  So I'd go through those

steps and apply that in terms of the actual

out-of-pocket methodology.

Q    I understand that that's the

general methodology.  I think what I'm

asking is very specifically with regard to

this class of securities, warrants that were

12:01:33
12:01:40
12:01:47
12:01:52
12:01:55
12:01:56
12:02:01
12:02:06
12:02:13
12:02:14
12:02:19
12:02:22
12:02:25
12:02:29
12:02:32
12:02:35
12:02:38
12:02:41
12:02:43
12:02:45
12:02:52
12:03:01
12:03:03
12:03:04
12:03:06

Transcript of Dr. Matthew Cain
Conducted on April 11, 2023

74

redeemed that were not exercised and redeemed on the redemption date. Are you going to include those in the class wide damages methodology that you're developing?

MS. WOLKE: Objection. Asked and answered. And beyond the scope of this report.

A     I don't see any reason that those would be excluded from the actual out-of-pocket methodology off the top of my head.

Q     How are you going to account for the decision that investors made on or before April 5th whether or not to exercise warrants?

MS. WOLKE: Objection. Beyond the scope of this report.

A     So I guess the way to think about this is that the damages methodology describes an artificial inflation model that constructs this ribbon of artificial inflation for every day during the class period and that can be applied to the purchase and sell dates of any of these securities by any of the class members.

12:03:14
12:03:18
12:03:22
12:03:26
12:03:29
12:03:30
12:03:33
12:03:34
12:03:37
12:03:43
12:03:47
12:03:48
12:03:49
12:03:53
12:03:55
12:03:57
12:03:58
12:04:06
12:04:09
12:04:12
12:04:19
12:04:20
12:04:23
12:04:26
12:04:29

So if an individual decides to redeem a warrant and purchase common stock then there's going to be a purchase that's made at -- on a given date at a potentially inflated stock price based on the inflation ribbon.  So that can be just plugged into the inflation ribbon that's calculated at that point in time.

Q    So if a warrant is in the money, but nonetheless goes unexercised and is redeemed for a penny per warrant, in your view is that person entitled to damages for the difference between the price paid out-of-pocket, to use your terminology, and the one penny because they choose not to redeem?

MS. WOLKE:  Objection.  Vague. And incomplete hypothetical.  In the money when?

MR. HEGT:  On the date of redemption.

A    So I mean looking at the -- I guess just to backup a little bit looking at the Exhibit 47 that you gave me earlier leading up to that redemption date.  It