**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE ROMEO POWER INC. SECURITIES LITIGATION | Case No. 1:21-cv-03362-LGS <br><br> Honorable Lorna G. Schofield |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND
(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT.................................................................................... 1

II.     NATURE OF THE ACTION AND PROCEDURAL HISTORY ...................................... 3

III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)...................... 7

IV.     ARGUMENT................................................................................................................ 8

        A.      The Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2)
                Factors And The Remaining *Grinnell* Factors.......................................................... 8

                1.      Plaintiffs And Counsel Adequately Represented The Settlement Class..... 8

                2.      The Settlement Is The Result Of Arm's-Length Negotiations ................. 10

                3.      The Settlement Is A Fair And Reasonable Result In Light Of The Benefits
                        Of The Settlement And The Risks Of Continued Litigation .................... 11

                        (a)     Complexity, Expense And Duration Of Litigation ....................... 11

                        (b)     Risks Of Establishing Liability And Damages ............................ 12

                        (c)     Risk Of Maintaining Class Action Status .................................... 14

                        (d)     Range Of Reasonableness In Light Of The Best Possible Recovery
                                And Attendant Risks Of Litigation ............................................. 14

                4.      Rule 23(e)(2)(C)....................................................................................... 15

                5.      The Settlement Treats All Members Of The Settlement Class Equitably
                        Relative To Each Other............................................................................. 17

                6.      The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of
                        Preliminary Approval................................................................................ 17

        B.      Certification Of The Settlement Class Is Appropriate........................................ 18

                1.      The Settlement Class Satisfies The Requirements Of Rule 23(a) ........... 18

                2.      The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ....... 21

                3.      The Court Should Appoint Lead Counsel As Class Counsel .................. 22

        C.      The Court Should Approve The Proposed Form And Method Of Notice............ 23

V.      PROPOSED SCHEDULE OF EVENTS ...................................................................... 24

VI.     PROPOSED DEDUCTIONS FROM THE SETTLEMENT FUND.................................. 24

VII.    CONCLUSION....................................................................................................... 25

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................................................... 18, 21, 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)..................................................................................................................... 20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)............................................................................................................ 9

*Beach v. JPMorgan Chase Bank, N.A.*,
  2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ............................................................................... 8

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)....................................................................................................... 20

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ..................................................................................... 14, 15

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................................... 16

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................................................... 8, 11

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)......................................................................................................... 10

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)....................................................................................................... 18

*Dura Pharms., Inc., v. Broudo*,
  544 U.S. 336 (2005)..................................................................................................................... 13

*Fishoff v. Coty Inc.*,
  2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ............................................................................. 13

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................................................ 14

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................... 23

*In re AOL Time Warner, Inc.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................. 21

*In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................. 10, 17

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)....................................................................... 17

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................................................... 9, 10

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .............................................................. 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).......................................................................................... 13

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................ 10

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)................................................................... 11, 12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................ 14

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................ 17

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................... 18

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
  310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................................... 19, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................ 10

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 Fed. Appx. 760 (2d Cir. 2020)........................................................................ 9, 20

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .................................................................................... 8

iv

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................... 19

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ................................................................................. 19

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ........................................................................... 20

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................... 21

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................................... 16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..................................................................................................... 22

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)......................................................................................... 21

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ......................................................................................... 2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................... 9, 10

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)........................................................................................... 18

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)............................................................ 20

## RULES

Fed. R. Civ. P. 23............................................................................................................ *passim*

Court-appointed Lead Plaintiff Mike Castleberg and additional plaintiffs Joshua Cante, Nathaniel Tapia, Artur Chimchirian, and Van Nguyen (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement, dated December 7, 2023 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class;[2] (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) scheduling of a hearing date ("Settlement Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I. PRELIMINARY STATEMENT

The proposed Settlement, which provides for a non-reversionary cash payment of $14.9

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the accompanying Declaration of Kara M. Wolke ("Wolke Declaration"). All references to "Ex.__" are to exhibits to the Wolke Declaration.

[2] The Settlement Class means all persons and entities that purchased or otherwise acquired Romeo Securities during the period October 5, 2020, through August 16, 2021, both dates inclusive, and were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; (b)(i) the Individual Defendants; (ii) present and former parents, subsidiaries, assigns, successors, predecessors and affiliates of Romeo or RMG, including Nikola Corporation; (iii) any person who served as a partner, control person, officer and/or director of Romeo or RMG or Nikola Corporation, and any person or entity with the authority to designate a director of Romeo or RMG or Nikola Corporation, during the Settlement Class Period and their Immediate Family members; (iv) any entity in which the Individual Defendants, Romeo or RMG have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

million (the "Settlement Amount") in exchange for the resolution of the Action, represents a fair and reasonable result for the Settlement Class, particularly when juxtaposed against the significant hurdles Plaintiffs would have needed to overcome to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability and damages. The risk of losing was very real, and it was greatly enhanced by the fact that they would be litigating against highly skilled defense counsel under the heightened pleading standards and automatic discovery stay of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Moreover, the Company's assets are subject to an Assignment to the Benefit of Creditors ("ABC") proceeding that has limited the Settlement Class's recovery to the applicable insurance coverage. There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing "Defendants prevail outright in many securities suits.").[3]

Despite these risks, Plaintiffs successfully negotiated a settlement resolving all claims against the Individual Defendants in exchange for a cash payment of $14.9 million for the benefit of the Settlement Class.[4] This recovery represents approximately 6.7% of the maximum recoverable damages related to the pending claims, which is more than three times greater than the 1.8% median recovery of estimated damages in securities class actions in 2022. *See* Ex. 2. When balanced against the many risks of continued litigation, and considering the Settlement is limited to the applicable D&O insurance coverage, there can be no doubt that the Settlement is substantively fair, reasonable, and adequate.

The Settlement is also the product of a procedurally fair process. It was negotiated by

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

[4] On August 21, 2023, the Court entered the clerk's certificate of default against Romeo Power Inc. ("Romeo" or the "Company"). ECF No. 186.

experienced securities class action litigators, after more than two years of hard-fought litigation. By the time the Settlement was reached, the Parties and their counsel were well informed about the strengths and weaknesses of the claims and the Individual Defendants' defenses. Indeed, prior to reaching the Settlement, Lead Counsel: conducted an extensive investigation into Defendants' allegedly wrongful acts; drafted a comprehensive amended complaint[5] based on this investigation; engaged in substantial briefing opposing a motion to dismiss as well as a motion for reconsideration; engaged in substantial fact discovery, including propounding and/or responding to document requests, requests for admission and interrogatories, defending each of the Plaintiffs' depositions, and conducting targeted review and analysis of the more than 2.2 million pages of documents produced by Defendant and third-parties; researched and drafted a motion for class certification and a reply in further support thereof; participated in two separate private full-day mediation sessions under the auspices of a highly-experienced neutral, which included exchanging detailed mediation statements and exhibits for each session; and participated in the extensive settlement negotiations.

As discussed in greater detail below, Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the Settlement Class. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the Settlement.

## II.    NATURE OF THE ACTION AND PROCEDURAL HISTORY

In this securities class action, Plaintiffs alleged that Romeo and the Individual Defendants[6] (together with the Company, "Defendants") made materially false and misleading statements

---

[5] A second amended complaint (ECF No. 135, the "SAC") that substantively mirrors the first amended complaint with the exception of adding three additional named plaintiffs was also filed.

[6] "Individual Defendants" means former CEO Lionel Selwood, Jr., and former CFO Lauren Webb.

about: (1) Romeo's battery cell suppliers and the Company's risk disclosures related thereto; and (2) the Company's contracted revenue (or "backlog"). Plaintiffs further alleged the prices of Romeo publicly traded securities were artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

Beginning on April 16, 2021, two class action complaints were filed in the Court. On July 15, 2021, the Court ordered that the cases be consolidated, appointed Mike Castleberg as Lead Plaintiff, and approved his selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel for the putative class.

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Romeo's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, online webinars, and news articles about Romeo, and (c) Romeo's investor call transcripts; (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Romeo employees and other sources of relevant information; and (3) consulting with experts in the fields of market efficiency, loss causation, and damages.

On September 15, 2021, based on the above investigation, Plaintiffs filed their Amended Class Action Complaint for Violations of the Federal Securities Laws (the "FAC") asserting claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5; against Defendants and the RMG Defendants[7] under Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder; and against the Individual Defendants and

---

[7] RMG Defendants means Robert S. Mancini, D. James Carpenter, Philip Kassin, Steven P. Buffone, W. Grant Gregory, W. Thaddeus Miller, and Craig Broderick.

the RMG Defendants under Section 20(a) of the Exchange Act.

On November 5, 2021, Defendants filed a motion to dismiss the FAC. ECF Nos. 90-91. On December 3, 2021, Plaintiffs filed their papers in opposition to Defendants' motion to dismiss, to which Defendants replied on December 17, 2021. ECF Nos. 96, 100. The Court entered its Opinion and Order that granted in part, and denied in part, Defendants' motion on June 2, 2022. ECF No. 107. Based on the Court's Order, the claims pursuant to Section 14(a) of the Exchange Act were dismissed, as were the claims against the RMG Defendants pursuant to Section 20(a) of the Exchange Act.

On June 16, 2022, Defendants filed a motion for reconsideration and/or clarification of the Court's Opinion and Order dated June 2, 2022, to which Plaintiffs replied. ECF Nos. 111, 117. On August 26, 2022, the Court denied Defendants' motion in its entirety. ECF No. 124. On July 14, 2022, Defendants filed an answer to the Amended Complaint. ECF No. 118.

On January 5, 2023, Plaintiffs filed a letter requesting a pre-motion conference with the Court to seek leave to file a motion to add other named plaintiffs in the Action. ECF No. 131. On that same day, the Court directed Plaintiffs to file a second amended complaint naming the additional plaintiffs. ECF No. 132. Plaintiffs filed the SAC on January 17, 2023. ECF No. 135. On January 27, 2023, Defendants answered the SAC. ECF No. 137.

On March 1, 2023, Plaintiffs filed their motion for class certification, together with the expert report of Dr. Matthew Cain regarding market efficiency. ECF Nos. 147-149. On April 19, 2023, after deposing each of the five proposed class representatives and Plaintiffs' market efficiency expert, Defendants filed their response in opposition to Plaintiffs' motion for class certification, to which Plaintiffs replied on May 3, 2023. ECF Nos. 156, 157. On May 10, 2023, Defendants filed a letter motion requesting leave to file a sur-reply in further opposition to

Plaintiffs' motion for class certification, which Plaintiffs opposed on May 17, 2023. The Court granted Defendants' motion and they filed their sur-reply on May 18, 2023. ECF Nos. 160-163.

From July 2022 through August 2023, the Parties completed extensive fact discovery. Plaintiffs propounded two sets of requests for production of documents, one set of interrogatories, and one set of requests for admissions, and Defendants propounded one set of requests for production of documents and one set of interrogatories upon each Plaintiff and a second set of interrogatories upon all Plaintiffs. Plaintiffs served eight subpoenas *duces tecum* on various third parties, including Romeo's purported battery cell suppliers. Lead Counsel conducted a targeted review and analysis of the approximately 2,227,554 pages of documents produced by Defendants and third parties. Plaintiffs produced approximately 6,298 pages of documents to Defendants, responded to Defendants' interrogatories, and prepared and sat for their deposition in connection with Plaintiffs' motion for class certification. While Plaintiffs were actively pursuing fact discovery, Plaintiffs and Defendants agreed to participate in a private mediation. The Parties selected former federal judge Layn R. Phillips to serve as mediator. Plaintiffs and Defendants exchanged extensive mediation statements and exhibits that addressed, among other things, issues related to liability and damages. The Parties participated in a full-day mediation session on March 23, 2023. The session ended without an agreement to settle and discovery continued.

On May 24, 2023, Romeo's counsel filed a motion for leave to withdraw as counsel for Romeo. ECF No. 165. On May 30, 2023, the Court reserved its decision on the motion for leave to withdraw as counsel and directed the Parties to file a joint status letter by June 2, 2023, to which the Parties complied. On June 6, 2023, the Court granted counsel for Romeo's motion to withdraw and further ordered Romeo to retain new counsel.[8] ECF Nos. 171-173.

---

[8] No new counsel for Romeo appeared in the Action. *See* ECF No. 186.

On July 25, 2023, Plaintiffs and Individual Defendants jointly requested an extension of the case schedule which was denied by the Court without prejudice. The Court also directed Romeo's insolvency counsel to inform of any legal impediments to a default judgment. On August 1, 2023, Individual Defendants filed a letter in response to the Court's August 1, 2023 directive.

As fact discovery progressed, the Parties agreed to engage in another mediation session to re-visit whether a settlement could be reached, with Judge Phillips again serving as mediator. The Parties exchanged supplemental mediation statements and exhibits on the issues of liability and damages in advance of another full-day mediation session with Judge Phillips, which occurred on August 8, 2023. The session culminated in Judge Phillips presenting a mediator's recommendation that the Action be settled for $14,900,000, which the Parties accepted. An agreement in principle to settle the Action was then memorialized in a term sheet (the "Term Sheet") executed that same day. The Term Sheet sets forth, among other things, Plaintiffs' agreement to settle and release all claims asserted against Individual Defendants in return for a cash payment of $14,900,000 by or on behalf of Individual Defendants for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Stipulation was executed by the Parties on December 7, 2023.

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the

following in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitable relative to each other.

These new factors "add to, rather than displace, the *Grinnell* factors"[9] traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the non-duplicative *Grinnell* factors.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2) Factors And The Remaining *Grinnell* Factors

#### 1.    Plaintiffs And Counsel Adequately Represented The Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary

---

[9] The *Grinnell* factors are: (1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (similar, and noting that the "adequacy of representation [also] entails inquiry as to whether . . . plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[10]

Here, Plaintiffs' claims are typical of and coextensive with the Settlement Class's claims, and they have no antagonistic interests. Plaintiffs claim to have suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is, therefore, aligned with other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). Plaintiffs diligently oversaw, and significantly contributed to, the Action by, *inter alia*: overseeing the litigation and regularly communicating with Lead Counsel; responding to document requests and interrogatories, producing documents, and sitting for deposition; and participating in settlement discussions with Lead Counsel. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected lead plaintiffs is entitled to an even greater presumption of reasonableness.").

Second, Plaintiffs retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. ECF No. 149-7 (GPM firm resumé). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's

---

[10] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Sec. II, *supra*) (detailing Lead Counsel's extensive investigation, briefings on the motion to dismiss and class certification, significant discovery efforts, and hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2.    The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel. *Wal-Mart*, 396 F.3d at 116. Here, as detailed above (Sec. II, *supra*), the Parties' settlement negotiations were mediated by former federal judge Layn R. Phillips through two formal mediation sessions that ultimately culminated in the Parties' accepting Judge Phillips' recommendation to settle the Action for $14,900,000. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Bear Stearns Cos., Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a settlement fair where the parties engaged in "arm's length negotiations," including mediation before "retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases").[11]

---

[11] *See also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding settlement "procedurally fair" where it "was the product of prolonged, arms-length

### 3. The Settlement Is A Fair And Reasonable Result In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[12] As discussed below, each supports preliminary approval.

### (a) Complexity, Expense And Duration Of Litigation

This Action involved alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe the claims asserted have merit. They acknowledge, however, the expense and duration of continued proceedings necessary to pursue their claims against the Individual Defendants through trial and appeals, as well as the substantial risks they would face in establishing liability, loss causation, and damages (as discussed below). Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Additionally, Plaintiffs' ability to collect any potential judgment was severely impacted by the commencement of the ABC proceeding for Romeo's remaining assets during the pendency of this case. This development limited any recovery for the Settlement Class to the available D&O insurance coverage, which was rapidly

---

negotiation, including as facilitated by a respected mediator"—Judge Phillips).

[12] Rule 23(e)(2)(C)(i) essentially incorporates six of the *Grinnell* factors: complexity, expense, and likely duration of the litigation (first factor); risks of establishing liability and damages (fourth and fifth factors); risks of maintaining class action status through trial (sixth factor); and range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

wasting. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all."). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

(b)    <b>Risks Of Establishing Liability And Damages</b>

In considering these factors, "a court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *Id.* at 694. While Lead Counsel believe Plaintiffs' claims have merit, they also recognize substantial obstacles to proving liability and class-wide damages. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and weigh heavily in favor of preliminary approval.

**Establishing Liability:** Despite successfully surviving the pleading stage, Plaintiffs still need to ***prove*** their case. While Plaintiffs strongly believe the evidence supports their version of events, a jury may nevertheless agree with the Individual Defendants' narrative of the case. Indeed, the Individual Defendants argued at the pleading stage, and would continue to argue at summary judgment and/or trial, that they made no actionable misrepresentations under the federal securities laws, including that: (1) there was no previously-known supply chain crisis preventing the Company from meeting its stated revenue guidance, and the mere fact Romeo was unable to obtain the full volume production as anticipated does not constitute falsity; and (2) the statements about Romeo's ability to fulfill its backlog were accurate at the time they were made and the supply issues were unforeseeable and only temporary. Additionally, the Individual Defendants would

12

likely argue that the Company's forward-looking statements concerning Romeo's backlog were protected by the PSLRA safe harbor.

The Individual Defendants would also likely contest scienter, arguing Plaintiffs could not establish motive and opportunity especially considering that both Individual Defendants increased their Romeo stock holdings during the class period. The Individual Defendants would also challenge scienter by arguing that a non-fraudulent inference—that the unforeseeable shortage of supplies and operations disruptions were a direct impact of the COVID-19 pandemic—was more plausible. While Plaintiffs believe that they could establish scienter after the development of the evidentiary record, they also recognize the difficulties in proving scienter. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at \*2 (S.D.N.Y. Jan. 25, 2010) ("the element of scienter is often the most difficult and controversial aspect of a securities fraud claim.") *aff'd*, 634 F.3d 647 (2d Cir. 2011).

**Loss Causation and Damages:** Even if Plaintiffs established liability, they faced significant challenges to proving loss causation and damages. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation."). The Individual Defendants would likely argue that the class period should end on March 31, 2021, because the truth of the alleged fraud was revealed on this date. Had this loss causation argument prevailed, potential class-wide damages would have been reduced to approximately $164.7 million.

Of course, to resolve all disputed issues regarding damages and loss causation, the Parties would have relied on expert testimony. This creates further litigation risk because Plaintiffs could not be certain whether a jury would accept the view of their experts or of the well-qualified experts

13

that the Individual Defendants would no doubt present at trial. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 2015 WL 6971424, at \*5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

(c)    <strong>Risk Of Maintaining Class Action Status</strong>

At the time the Settlement was reached, the Individual Defendants had already challenged Plaintiffs' motion for class certification; thus, the risks and uncertainty surrounding certification support preliminary approval of the Settlement. While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. IV.B, *infra* , a class has not yet been certified, and Plaintiffs are aware that there is a risk the Court could also disagree. Even if the Court were to certify a class, there is always a risk that it could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").

(d)    <strong>Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation</strong>

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case*." In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed Settlement provides a cash payment of $14,900,000 for the benefit of the Settlement Class. This is a highly favorable

14

result in light of the significant risks of continued litigation. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed on all their claims at summary judgment and after a jury trial, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' **best case scenario**—the total **maximum** damages **potentially** available in this Action would be approximately $221.7 million. However, as detailed in Sec. IV.A.3(b), *supra*, there were credible arguments that the Individual Defendants would have likely asserted at summary judgment, which if the Court found persuasive would have significantly reduced Plaintiffs' potential recovery to approximately $164.7 million. A recovery range of 6.7%-9% is well above the median recovery of 1.8% of estimated damages in securities class actions in 2022. Ex. 2 (Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at p. 18 (Fig. 19)).

### 4.      Rule 23(e)(2)(C)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each either supports preliminary approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23(e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief includes well-established, effective procedures for processing claims and distributing the Net Settlement Fund. The Claims Administrator will process claims, under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and mail Authorized Claimants their *pro rata* share of the Net

Settlement Fund (per the Plan of Allocation), after Court approval. This proposed method is standard in securities class action settlements and has been long found to be effective, as well as necessary as neither Plaintiffs nor the Individual Defendants possess the individual investor trading data required to distribute the Net Settlement Fund on a claims-free basis.[13]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Postcard Notice and Notice, Lead Counsel will be applying for a percentage of the common fund fee award, in an amount not to exceed 33⅓%, to compensate them for the services they rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for 33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties entered into a confidential agreement establishing certain conditions under which the Individual Defendants may terminate the Settlement if Settlement Class Members, who collectively purchased a specific percentage of Romeo common stock eligible to participate in the Settlement request exclusion. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

---

[13] This is not a claims-made settlement. If the Settlement is approved, neither the Individual Defendants nor their insurance carriers will have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation, ¶13.

16

**5.      The Settlement Treats All Members Of The Settlement Class Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on pp. 13-20 of the proposed Notice (Ex. A-1 to Ex. 1 of the Wolke Declaration), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

**6.      The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval**

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267. Here, by the time the Settlement was reached, Plaintiffs had, among other things: opposed a motion to dismiss and a motion for reconsideration; engaged in extensive discovery; and researched and drafted Plaintiffs' motion for class certification and their reply in further support thereof. *See* Section II, *supra*. Thus, Plaintiffs and their counsel had sufficient information to evaluate the strengths and weaknesses of the case at the time of settlement. There can be no question that this factor supports preliminary approval.

**The Ability of Defendants to Withstand a Greater Judgment:** "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where the

17

other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). Here, collecting a large judgment after trial and appeals was not a foregone conclusion. As detailed above, the Company's assets were subject to an ABC proceeding and the Individual Defendants have limited personal resources, leaving the satisfaction of a judgment limited to the available D&O insurance coverage. Given the significant time required to get to trial and resolve all appeals in this Action, there is simply no guarantee that the proceeds from the wasting insurance policies would be sufficient to cover a larger award than the Settlement if the litigation were to continue. Under these circumstances, the ability to pay weighs in favor of preliminary approval.

## B.     Certification Of The Settlement Class Is Appropriate

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested[.]"). As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

### 1.     The Settlement Class Satisfies The Requirements Of Rule 23(a)

**Numerosity:** The first element of the four-part threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "In securities fraud class actions relating to publicly owned and nationally listed

corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class is comprised of purchasers of RMG Units, and Romeo Common Stock and Warrants. During the Settlement Class Period, Romeo Common Stock was actively traded on the NYSE, with an average of 24.11 million shares traded weekly during the Settlement Class period. ECF No. 149-1 (Expert Report of Matthew D. Cain, Ph.D.) at ¶¶29-30. Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the thousands. Accordingly, the Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied. *In re Sadia*, 269 F.R.D. at 304 ("Sufficient numerosity can be presumed at a level of forty members or more.").

**Common Questions:** Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions[.]" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, questions of law and fact regarding Plaintiffs' Exchange Act claims will be common to the Settlement Class, including whether, during the Settlement Class Period, the Individual Defendants' alleged omissions and/or representations to the investing public were "materially misleading" and whether the prices of Romeo Securities were artificially inflated. These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**Typicality:** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the

defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Plaintiffs' claims are typical of the Settlement Class because they all arise from damages caused by the Individual Defendant's alleged misstatements and omissions that resulted in the artificial inflation in the prices of Romeo Securities during the Settlement Class Period. Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (finding typicality where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:** As explained in Sec. IV.A.1, *supra*, Plaintiffs are adequate representatives. First, Plaintiffs and Settlement Class Members purchased Romeo Securities during the Settlement Class Period, and they were all injured by the allegedly materially false statements and omissions. Plaintiffs' interests are entirely aligned with the Settlement Class, they have participated in discovery, and demonstrated a commitment in pursuing this Action for the benefit of all Settlement Class Members. Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses. *Patriot*, 828 Fed. Appx. at 764. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, Plaintiffs demonstrated their commitment to this litigation by retaining qualified counsel. *See, e.g.*, *Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as lead or co-lead counsel in class action securities litigation.").

**2.     The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)**

**Common Questions Predominate:** Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.

Here, there are common questions of law and fact involving violations of the federal securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("The common issues in this action include whether defendants issued materially false and misleading statements . . ., scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). Predominance has, therefore, been satisfied. *See id.*; *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *5 (S.D.N.Y. Apr. 6, 2006) (predominance readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by...class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3). Securities suits

easily satisfy Rule 23(b)(3)'s superiority requirement because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3.    The Court Should Appoint Lead Counsel As Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in July 2021 (ECF No. 69), and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating, and settling the claims in this matter. Moreover, as explained in Section IV.A.1, *supra*, GPM has substantial experienced prosecuting securities class actions. For these reasons, among others,

Plaintiffs respectfully request that the Court appoint GPM to serve as Class Counsel.

### C.     The Court Should Approve The Proposed Form And Method Of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail, by first-class mail, individual copies of the Postcard Notice (Stipulation, Ex. A-4) to all potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice (Stipulation, Ex. A-1) and the Claim Form (Stipulation, Ex. A-2) will be posted on a website to be developed for the Settlement. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online.[14] The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to mailing the Postcard Notice, the Summary Notice (Stipulation, Ex. A-3) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

It is "more than sufficient" to use "a combination of a mailed post card [sic] directing class members to a more detailed online notice[.]" *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Accordingly, Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

---

[14] Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.

## V.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Plaintiffs request that Court schedule the Settlement Hearing for a date at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice (which date shall be the "Notice Date") | No later than 20 business days after entry of the Preliminary Approval Order (Prelim. App. Order ¶7(a)) |
| Publication of Summary Notice. | No later than 10 business days after Notice Date. (Prelim. App. Order ¶7(c)) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses. | 35 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶27) |
| Deadline for receipt of exclusion requests and objections. | Received no later than 21 calendar days prior to Settlement Hearing (Prelim. App. Order ¶¶14, 17) |
| Date for filing reply papers in support of the Settlement, the Plan, and application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the Settlement Hearing. (Prelim. App. Order ¶27) |
| Deadline for filing Claim Form. | No later than 120 calendar days after Notice Date. (Prelim. App. Order ¶11) |
| Settlement Hearing. | At least 120 days after the entry of Prelim. App. Order [15] |

## VI.    PROPOSED DEDUCTIONS FROM THE SETTLEMENT FUND

Pursuant to this Court's Individual Rules and Procedures for Civil Cases, Item III.C.5, Plaintiffs and Lead Counsel respectfully provide the following anticipated deductions from the total Settlement Fund:

---

[15] The proposed schedule provides Settlement Class Members sufficient time to file claims, request exclusion from or submit objections to the Settlement, and for Plaintiffs to file their motion papers.

|  | Amount | Settlement Fund % | Average Per Damaged Security[16] |
|---|---|---|---|
| Settlement Fund Value | **$14,900,000** | **100%** | **$0.17** |
| Claims Administrator Fees, Costs, and Expenses | **$325,000** | **2.18%** | **$0.004** |
| Proposed Attorneys' Fees | **$4,966,170** | **33⅓%** | **$0.06** |
| Litigation Expenses | **$566,000** | **3.80%** | **$0.007** |
|     Attorneys' Costs and Expenses | $486,000 | 3.26% | $0.006 |
|     PSLRA Reimbursements | $80,000 | 0.54% | $0.001 |
|         Lead Plaintiff Mike Castleberg | $20,000 | 0.13% | $0.00023 |
|         Joshua Cante | $15,000 | 0.10% | $0.00017 |
|         Nathaniel Tapia | $15,000 | 0.10% | $0.00017 |
|         Artur Chimchirian | $15,000 | 0.10% | $0.00017 |
|         Van Nguyen | $15,000 | 0.10% | $0.00017 |
| Broker Reimbursement[17] | **$100,000** | **0.67%** | **$0.001** |
| Estimated Taxes[18] | **$155,400** | **1.04%** | **$0.002** |
| Anticipated Recovery | **$8,787,430** | **58.98%** | **$0.10** |
| Anticipated Recovery To Settlement Class Members As A Percentage of Damages | | **3.96-5.34%** | |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

---

[16] Plaintiffs' consulting damages expert estimates the alleged conduct at issue in the Action affected approximately 85.88 million Romeo Securities purchased during the Settlement Class Period.

[17] Nominees may request reimbursement for distributing notices to potential settlement class members. This estimate is based on certain parameters provided by Lead Counsel during the RFP process, and does not include nominee reimbursement.

[18] According to the Claims Administrator, this estimate is considered a "high-end" estimate based on similarly-sized class action settlements.

Dated:  December 8, 2023

By: /s/ *Kara M. Wolke*

Kara M. Wolke (admitted *pro hac vice)*
Melissa C. Wright (admitted *pro hac vice)*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
kwolke@glancylaw.com
mwright@glancylaw.com

*Attorneys for Lead Plaintiffs and the
Settlement Class*

**PROOF OF SERVICE**

I hereby certify that on this 8th day of December, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_s/ Kara M. Wolke_
Kara M. Wolke