O1AfROMc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE ROMEO POWER, INC.
SECURITIES LITIGATION,

                                        21 Cv. 3362 (LGS)


                                        Telephone Conference

------------------------------x

                                        New York, N.Y.
                                        January 10, 2024
                                        3:30 p.m.

Before:

              HON. LORNA G. SCHOFIELD,

                                        District Judge

                       APPEARANCES

GLANCY PRONGAY & MURRAY LLP
     Attorneys for Cante, et al.
BY:  KARA M. WOLKE

O1AfROMc

PICK

O1AfROMc

(Case called)

THE COURT:  Thank you for convening.  We're here for a preliminary approval hearing of a proposed settlement, and I have the plaintiff's motion.  They are seeking various things: preliminary approval of a settlement, approval of the form and manner of notice, preliminary certification of the proposed settlement class, appointment of settlement class representatives, appointment of class counsel, appointment of a claims administrator and scheduling a final approval hearing.

I know that those all weren't sort of ticked off in the title of the motion, but it seems to me that those are all things that you're asking more.

Ms. Wolke, are you going to be speaking for the plaintiffs and the proposed class?

MS. WOLKE:  Yes, your Honor.  This is Kara Wolke. That's correct.

THE COURT:  Would you like to make a brief statement? I looked at the papers.  I have various questions, but I'll let you start.

MS. WOLKE:  Sure.  Your Honor, I think the papers set forth that this is both a procedurally and substantively fair settlement.  The settlement was reach the only after the parties conducted two mediations with a neutral mediator, and the settlement was achieved after substantial litigation, including prevailing on the motion to dismiss.  The plaintiffs

O1AfROMc

prevailed against the motion for reconsideration, and we had conducted substantial discovery by the time the settlement was reached.  In fact, we were on the verge of beginning depositions.

As your Honor knows, this case unfortunately ran into some financial difficulties with the defendant Romeo, and we were able to proceed against the individual defendants and obtain the settlement, which we feel is the best result we can we could achieve for the class at the time, given the -- particularly the difficulty of recovering more under the circumstances.

THE COURT:  Just to be clear about that, as I understand it, the amount in play or the maximum amount that could be spent on the litigation either for cost or for any recovery was capped by the D&O insurance policy.

So in effect, the sooner the settlement, the more money available to class members; is that right?

MS. WOLKE:  That's absolutely correct, your Honor.

THE COURT:  And so, one question I had is, does this settlement then cap out the available proceeds under that policy?

Or maybe that's a question for someone else.

MS. WOLKE:  I'm sorry, your Honor.  Just one moment.

THE COURT:  Sure.

MS. WOLKE:  Your Honor, sorry.  This is Kara.  I just

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

O1AfROMc

wanted to confirm with my team that I understood your question.

The settlement amount does not exhaust the entire amount of insurance money that was available -- you know, the individual defendants and the insurance carriers also I know were very adamant about holding a certain amount for other claims, but we do believe that the amount we were able to negotiate and obtain from the policies was the best we could do at the time.

THE COURT:  Okay, understood.  Go ahead.

MS. WOLKE:  Your Honor, that sort of covers on obtaining the settlement, how it was procedurally and substantively fair.  Your Honor, frankly, we're also asking for conditional certification of the class and the class representatives.

As your Honor knows, we filed a motion and, in fact, it was fully briefed, I think.  The docket sets forth that all of the elements for class certification are met and each of the class representatives or proposed class representatives was deposed, produced discovery and demonstrated their both willingness and capability to serve as appropriate class representatives.

And finally, your Honor, is approving the notice for mailing and the claims administrator.  We believe the notice sets forth all of the information as required under the Federal Rules of Civil Procedure and Second Circuit authority, and the

O1AfROMc

claims administrator is an experienced claims administrator in securities settlements and was selected after plaintiffs conducted an RFP process to ensure that we were agreeing to fair and reasonable cost of notice.

THE COURT:  And with respect to the claims administrator, did you pick the lowest bid in the RFP process, or how did you settle on Epiq who I think is the claims administrator here.

MS. WOLKE:  Epiq was the lowest bid in the RFP in this case.

THE COURT:  Okay.  Great.

I have a few requests, comments, and questions.

I understand the gross settlement amount is 14.9 million and that the estimated net settlement amount is about 8.8 million, or about 59 percent of the gross amount.

I think that those dollar amounts, which appear in your papers as well as that percentage, should be in the notice.  And one possible place you could put it would be at page 12, but I leave it to your discretion where you would put it.

Then what I would ask is, with respect to the various changes that I would request on the notice, if you could submit to me, basically, a black line file, file a black line of the revised notice, so that I can review it.

Let me just move on to the next point, which relates

O1AfROMc

to the plan of allocation.  I know there isn't a motion to approve the plan of allocation and that that is anticipated by the final approval hearing, but you do describe it.  Basically, every detail about is in the notice, so I want to be sure that I'm comfortable with it.  I don't want it to go out in the notice and at some point later say that I don't approve it.

As I understand it, you're going to be calculating, essentially, the realized loss for each class member using a formula and that each class member will be receiving its *pro rata* share.

Is there an easy or short, high-level way to describe how that loss is calculated?  Could you tell me?

MS. WOLKE:  Sure.

There are two alleged price drops in this case, and the table is set forth at paragraph 60 of the proposed notice.

THE COURT:  Okay.

MS. WOLKE:  And so the alleged price drops on March 21, 2021, and August 17, 2021, and essentially what the plan of allocation does is, it calculates how much artificial inflation was in the stock price prior to that price drop, and that is essentially the damages that those people would have experienced per share if they held over those price drop dates.

THE COURT:  Okay.  I assume then that the amount is adjusted depending on when people purchased and when they sold during the class period; is that right?

O1AfROMc

MS. WOLKE:  Correct; it is.

And it's also limited by the 90-day look-back provision, and in fact, I don't know how much -- if that actually -- does that reduce the damages under this?

That's at table two on page 16 of the notice.

The 90 day look-back limitation is set forth at the bottom of page 16.

THE COURT:  Okay.  So, here's what I'd like you to do.

I would like you to actually take the plan of allocation out of the long form notice and have it as a separate document.

As I understand it, you're not sending the long form notice to anyone anyway; you're making it available on the website.  So I would make the plan of allocation available as a separate document on the website and just briefly summarize in the notice that there is a plan of allocation and basically what it does is it calculates each claimant's loss, realized loss, and then distributes the net settlement fund *pro rata* to them based on the amount of law.

MS. WOLKE:  Okay.

THE COURT:  And the reason that I'm asking for that is that the notice, it's very dense.  It's single-spaced.  There's a lot of information in there, and I think it is a bit uninviting and discouraging people from looking at it, and I think it's more likely that someone would look at the notice

O1AfROMc

and appreciate the terms that are most important for the notice if the plan of allocation is just separate, so if you don't mind doing that.

MS. WOLKE:  Of course.  We can do that, your Honor.

THE COURT:  Okay.  The next question I had was about the claims process.  It looked to me like the principal way of submitting claims was by mail, but the claim form also said it could be submitted at the website, and then I think I saw language in the notice saying something like, the claims administrator could ask for a digital submission.

Could you just sort of explain to me what you anticipate about the claims process and how people can submit their claims?

MS. WOLKE:  Sure.

There's two ways to do it.  One is, somebody can actually fill out the claim form physically, writing with ink and then mail it in along with their copies of their statements that support the purchase and sale dates or their holding dates.

The second is online, if they go to the settlement website, there will actually be a claim submission link there where the class member can go in and fill out the claim online.

THE COURT:  That's great.  Okay.

MS. WOLKE:  Yes.

THE COURT:  I mean, that was really my question,

O1AfROMc

because I wasn't sure whether they were going to have to do the pen and ink and you were anticipating just uploading PDFs or something like that or they could actually input the data at the website or some link available at the website so they could do it online if they wanted to do that.

MS. WOLKE:  Yeah.  There will be a link available on the website to submit it electronic directly to the claims administrator.

THE COURT:  That's great.

Another question I had was about the hearing date.  It looks like the final hearing date could precede even the date when the claimants had to be submitted so that I might not know at the hearing how many claims there were, what the percentage of participation was, so what I will do is, when I set the hearing date -- I don't think you have to change anything, but when I set the hearing date, I will set it so that it's after the claims deadline so that you can tell me that information either at the hearing or in your motion papers.

Do you anticipate any problem with that?

MS. WOLKE:  No.  That's fine, your Honor.

We would be happy to have the final hearing date set after the claim submission deadline so that we can provide you an update.

The one thing that I would say is, we may not have final figures for you then at that time, but we can tell you

O1AfROMc

where we stand in terms of the number of claims received and estimates.

THE COURT:  How many shares are accounted for and whether anything's been excluded at that point, and I don't know -- or whether any claims have been rejected.  Obviously, you may not be done with that process, but if I could just have an update on all those at the time, that would be helpful.

MS. WOLKE:  Yes.  We will give you an update as it stands at that time, it sounds like, as long as you understand there will be additional math to be done because the claims administrator will probably not have been able to vet everything.

THE COURT:  I understand.

MS. WOLKE:  Okay.

THE COURT:  And the next question I had was about dissemination of the notice.  What I saw was postcard, website, and publication.

I just want to make sure I understand.  First, the postcard, it looks like what you submitted is bigger than a postcard, and so, what I'd like you to submit when you submit the revised notice, also submit the actual size postcard, front and back, so I can see how big the font is and what it looks like and that it's really legible, because what I saw in your papers, the front looked maybe like the front of a postcard, but the back looked like more than a postcard, so --

O1AfROMc

MS. WOLKE:  Sure.

THE COURT:  As far as the website, I guess I don't have any questions about that.

And then for publication, is that how the summary notice gets used?

MS. WOLKE:  Correct.  Yes, the summary notice is what would be published.

THE COURT:  Okay.  Another request I had for the notice, please take my name out of it.  Certainly you can say what the court is and where the final hearing will be, but I just prefer not to have my name in it.

MS. WOLKE:  Yes.  We can do that, your Honor.

THE COURT:  Okay.  We've already talked about the claims administrator.  A question about their fee, which I understand is 325,000 for fees, costs, and expenses.  Is there a fixed, contractual amount, or are they able or likely to come back and say it costs a little bit more, we need more.

MS. WOLKE:  Yes.  I would say that this is -- they would be able to come back, and if something arises that it is costing more, that they would come back and tell us.

This is based on their assumptions that they have made based on the information that they have so far about the size of this case and how many claims they expect to receive that we provided to them.

THE COURT:  Okay.  The reason I ask -- and that's

O1AfROMc

fine.  I understand.  That often happens, but I just want to make sure that you come back to me if the amount increases or if there's anything else that further reduces the net settlement amount above and beyond the assumptions that you've made in presenting the numbers to me.  Okay?

MS. WOLKE:  Yes.  Your Honor, we will.

If we know what at the time of final approval that expenses have gone up, we'll tell you then.  And again, after that point, there still will be a motion for distribution, and if between final approval and distribution something happens that causes the claims and expenses to go up, we'll inform you again at the time of distribution.

THE COURT:  Okay.  You should get my approval for any distribution above and beyond the 325.

MS. WOLKE:  We will do, your Honor.

THE COURT:  Okay.

Two more things.  One is, if you could send me the proposed order by email to my chambers inbox in Word format so that I can make any changes I need to make to it, that would be helpful.

And the last thing I'll mention is about attorneys' fees.  I know that the settlement agreement provides for a maximum amount of attorneys' fees of one-third of the gross settlement fund.

My approach to attorneys' fees is that I apply the

O1AfROMc

factors that the Second Circuit has determined are relevant, but I apply them to a baseline number, and the baseline number is basically the median fee percentage for similar settlements, in other words, securities settlements around the same dollar amount, around 15 million.

You can get the data, you probably already know, but you can get the data.  NERA publishes it annually, and there's some older publication also.

And if you look at prior decisions of mine, there was a case called *Colgate*, which was the first one in which I did this, but are many, many after that.  I've always done it since then, and the reason is that there are all these various criteria to judge whether the settlement is fair or judge whether the attorneys' fees are fair and appropriate, but as compared to what.  If you're going to adjust the amount up or down, what do you adjust it from?  This is my way of having a starting point or a baseline.

I just want to urge you when you make your fee motion to please include that data and cite where you're getting it. You can cite NERA or you can cite the other studies that you're relying on and provide the details, and then when you make your argument applying the various factors, you should understand that what I'm doing is applying those to that number that you've provided.

Do you have any questions about that?  Is that

O1AfROMc

relatively clear?

MS. WOLKE:  Yes, that's clear, your Honor.

And we will be sure to carefully review your other decisions and comply with the information you'd like to see. Absolutely.

THE COURT:  Okay.  That's great.

I don't have anything else, and I do intend to approve it once I get the additional information and revised notice, so the sooner you get me the revised notice and documents, the sooner I'll approve it.

I won't set a due date, because I think in everyone's interest to do that promptly.

Is there anything else you need from me in this proceeding?

MS. WOLKE:  No.  There's nothing else we need from you.

Just a housekeeping question while the court reporter is on the line is how long it might take to get a transcript of today just so we can make sure that we comply.

THE COURT:  I'll leave that to the court reporter.

Thank you.

This matter is adjourned.

Thank you everybody.  Have a great afternoon.

(Adjourned)