**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE ROMEO POWER INC.
SECURITIES LITIGATION

Case No. 1:21-cv-03362-LGS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR CLASS DISTRIBUTION ORDER**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................... 1

II.     CLAIMS ADMINISTRATION...................................................................................... 3

III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS ............................................................ 5

IV.     THE COURT SHOULD REJECT THE TWO DISPUTED CLAIMS ............................. 7

V.      DISTRIBUTION OF THE NET SETTLEMENT FUND ................................................. 8

VI.     RELEASE OF CLAIMS............................................................................................ 10

VII.    THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED
        FEES AND EXPENSES............................................................................................ 11

VIII.   RECORDS RETENTION AND DESTRUCTION .......................................................... 12

IX.     CONCLUSION......................................................................................................... 12

# TABLE OF AUTHORITIES

CASES

*Hartman v. Powell*,
2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................................ 7

*In re "Agent Orange" Prod. Liab. Litig.*,
689 F. Supp. 1250 (E.D.N.Y. 1988) ......................................................................................... 6

*In re Cendant Corp. Sec. Litig.*,
454 F.3d 235 (3d Cir. 2006) ..................................................................................................... 8

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) ....................................................................... 7, 8

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) ............................................................................................ 5, 6, 7

*In re Medicis Pharm. Corp. Sec. Litig.*,
2013 WL 12149720 (D. Ariz. Mar. 8, 2013) ......................................................................... 11

*In re Nuvelo, Inc. Sec. Litig.*,
2012 WL 12920613 (N.D. Cal. July 16, 2012) ...................................................................... 11

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001) ..................................................................................................... 5

*In re Toyota Motor Corp. Sec. Litig.*,
2014 WL 12586787 (C.D. Cal. Aug. 4, 2014) ................................................................... 6, 11

*Wilson v. LSB Indus., Inc.*,
2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020) ...................................................................... 11

Court-appointed lead plaintiff Mike Castleberg ("Lead Plaintiff")[1], and additional named plaintiffs Joshua Cante, Nathaniel Tapia, Artur Chimchirian, and Van Nguyen (collectively, with Lead Plaintiff, "Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this unopposed motion for entry of the [Proposed] Class Distribution Order (the "Class Distribution Order"), which, among other things, will: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the above-captioned action (the "Action"); (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and  (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The proposed plan for distribution of the Net Settlement Fund is set forth in the Mejia Declaration.  *See* Mejia Decl. ¶¶45(a)-(e).

## I.  INTRODUCTION

On December 7, 2023, the Parties entered into the Stipulation, the terms of which established a $14,900,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities that purchased or otherwise acquired Romeo Securities during the period October 5, 2020, through August 16, 2021, both dates inclusive, and were damaged thereby.[2]

---

[1]  Capitalized terms that are not otherwise defined herein have the same meanings given to them in the Stipulation and Agreement of Settlement dated December 7, 2023 ("Stipulation"; ECF No. 191-1), or the concurrently filed Declaration of Melissa Mejia in Support of Plaintiffs' Unopposed Motion for Class Distribution Order ("Mejia Declaration" or "Mejia Decl.").

[2] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) the Individual Defendants; (ii) present and former parents, subsidiaries, assigns, successors, predecessors and affiliates of Romeo or RMG, including Nikola Corporation; (iii) any person who served as a partner, control person, officer and/or director of Romeo or RMG or Nikola Corporation, and any person or entity with the authority to designate a director of Romeo or RMG or Nikola Corporation, during the Settlement Class Period and their Immediate Family members; (iv) any entity in which the Individual Defendants, Romeo or RMG have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of

The Court entered its Order Preliminarily Approving Settlement and Providing for Notice on January 30, 2024, which, among other things, approved Lead Counsel's selection of Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as the Claims Administrator.  ECF No. 197 (the "Preliminary Approval Order").   Pursuant to the Preliminary Approval Order, the Claims Administrator Epiq has mailed approximately 245,953 Postcard Notices to potential Settlement Class Members, brokers and other nominees.  *See* Mejia Decl., ¶5.

The Claims Administrator also published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service); established a case-specific website dedicated to this Settlement (www.RomeoPowerSecuritiesSettlement.com; the "Settlement Website"); and set up a toll-free helpline.  *See* Mejia Decl., ¶2; *see also* ECF No. 204-1 at ¶12, 16.  The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form.  *See id.*, ¶2; *see also* Settlement Website; ECF No. 204-1 at ¶¶16-17.

On August 1, 2024, the Court entered the Judgment Approving Class Action Settlement (ECF No. 213).  The Order Approving the Plan of Allocation of Net Settlement Fund was also entered on August 1, 2024 (ECF No. 211).  The Settlement has reached its Effective Date.  *See* Stipulation, ¶33.

Lead Counsel now requests that the Court authorize the distribution of the Net Settlement

---

an Individual Defendant and/or member(s) of their Immediate Families; and (vi) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (v) hereof.  Also excluded from the Settlement Class are persons and entities who or which submit a request for exclusion from the Settlement Class that were accepted by the Court.

Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked by, or received, no later than May 29, 2024.  *See* ECF No. 204-1, Ex. B (Notice), p. 3 & ¶44.  The Claims Administrator received and reviewed all Claims submitted through September 10, 2024— approximately three and half months past the Court-ordered submission deadline—and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency.  *See* Mejia Decl., ¶¶9-16, 18-24.

Of the 33,058 Claim Forms received by the Claims Administrator, 4,648 were paper Claim Forms or Claims submitted through the Settlement Website.  *Id.*, ¶9.  The remaining 28,410 Claims were Electronic Claims.  Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers").  *Id*., ¶12.  Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry.  *Id.*  This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit B to the Mejia Declaration.  *Id.*, ¶21, Ex. B.  The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the

letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.* Of the 4,648 paper and online Claims, 3,491 Claims (or approximately 75%) were incomplete or had one or more defects or conditions of ineligibility. *Id.*, ¶20.

If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to the E-Claim Filer with an attached spreadsheet containing detailed information associated with the Claims and indicating which of those Claims within the filing were deficient and/or rejected. *Id.*, ¶23. Of the 28,410 Electronic Claims, 15,897 were deficient or ineligible (or approximately 56%). *Id.*

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible. *Id.*, ¶¶9-16, 18-24. Ultimately, as detailed in the Mejia Declaration, after the deficiency process was complete, the Claims Administrator determined that 14,425 Claims are acceptable (in whole or in part) and should receive a distribution. *Id.* at ¶¶38, 41. This number includes 2,006 timely and valid claims, and 12,419 Late But Otherwise Eligible Claims (addressed in Section III below). Mejia Decl., ¶¶36, 38, 40-41, Exs. D-1, D-2. These Claims represent a total Recognized Loss amount of $93,110,630.98.[3] *Id.*, ¶41, Exs. D-1, D-2. The Claims Administrator also determined that 18,712 Claims are not eligible and should be rejected for the following reasons: (i) 15,347 Claims did not result in a Recognized Loss under the Plan of Allocation; (ii) 1,327 Claims had no eligible purchases Romeo Power Securities during the Settlement Class Period; (iii) 1,607 Claims had uncured conditions of ineligibility; (iv) 249 Claims were withdrawn by the filer or voided by request; (v) 103 Claims were duplicate claims; and (vi) 79 were received after the

---

[3] The Recognized Loss amount is $7,090,629.08 for timely and valid Claims, and $86,020,001.90 for Late But Otherwise Eligible Claims. *Id.*, ¶41.

4

filing deadline and after September 10, 2024, the date Epiq stopped accepting Claims in order to complete the *pro rata* distribution. *Id.*, ¶¶38-40, Ex. D-3.

## III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the May 29, 2024, claims filing deadline. Mejia Decl., ¶36. There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution. Accordingly, Lead Counsel, after consultation with Epiq, respectfully requests that the Court order that no Claim received after September 10, 2024, be eligible for payment, and no adjustments to Claim Forms received on or before November 14, 2024, that would result in an increased Recognized Loss amount may be accepted.[4] Mejia Decl., ¶37.

Of the 33,137 Claims submitted, 27,697 were received or postmarked after the May 29, 2024, deadline, but before the Claim's Administrator's imposed cut-off date of September 10, 2024. *Id.*, at ¶¶6, 36. Of these 27,697 Claims, 12,419 are otherwise eligible in whole or in part ("Late But Otherwise Eligible Claims"). *Id.*, ¶¶36, 40 & Ex. D-2. These 12,419 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* at ¶36, 40 & Ex. D-2. Lead

---

[4] Should an adjustment be received that results in a lower Recognized Loss amount, that adjustment will be made and the Recognized Loss amount will be reduced accordingly. Mejia Decl., ¶45(d).

Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small.  No significant administrative costs need be incurred to allow the late claims and opt-out claims").  Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Mejia Decl., ¶¶36, 40 & Ex. D-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claim received after September 10, 2024, be eligible for payment, and that no adjustments to Claim Forms received after November 14, 2024, that would result in an increased Recognized Loss amount be accepted. *See id.*, ¶¶37, 45(b) and (d).[5]  "Drawing a line is essential to achieve certainty

---

[5] Lead Counsel and Epiq respectfully request that the Order provide one narrow exception to the bar on acceptance or modification of Proofs of Claim received after September 10, 2024, or adjusted after November 14, 2024.  As set forth in the Mejia Declaration, ¶45(b), if Lead Counsel, in consultation with Epiq, determines that following the Initial Distribution sufficient funds remain to warrant the processing of Proofs of Claim received after September 10, 2024, such claims will be processed, and any such late claims that are otherwise valid, together with any late adjustments to Proofs of Claims received after November 14, 2024, will be paid distribution amounts or additional distribution amounts to bring them into parity with other Authorized Claimants who have cashed their checks in conjunction with the Second Distribution.

and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("at some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and ... the matter must be terminated.'" (quoting *In re Gypsum*, 565 F.2d at 1127)).

## IV.    THE COURT SHOULD REJECT THE TWO DISPUTED CLAIMS

Two Claimants (Claim Nos. 800000125 ("Disputed Claimant No. 1") and 800003929 ("Disputed Claimant No. 2")) disagree with Epiq's determination of ineligibility and have requested Court review of the rejection of their Claims. *See* Mejia Decl., ¶25, Ex. C; *see also* ECF No. 211 (Order Approving Plan of Allocation of Net Settlement Fund). As set forth in the Mejia Declaration, Disputed Claimant No. 1 did not hold his Settlement Class Period purchases of Romeo Common Stock over a corrective disclosure date and, therefore, did not suffer compensable damages under the Plan of Allocation. *See* Mejia Decl., ¶26-28, Ex. C; *see also* ECF No. 204-1, Ex. E (Plan of Allocation) at ¶5 (stating that "[a]lleged corrective disclosures removed the alleged artificial inflation from the prices of the Romeo Securities on March 31, 2021 and August 17, 2021" and providing that "in order to have a Recognized Loss Amount, Romeo Securities must have been purchased or otherwise acquired during the Settlement Class Period and held at the opening of trading on at least one of the alleged Corrective Disclosure Dates."). Accordingly, the Court should reject Claim Number 800000125.

The Court should also reject Claim Number 800003929. The Plan of Allocation provides "[t]o the extent a Claimant had a market gain with respect to his, her, or its overall transactions in Romeo Securities during the Settlement Class Period, the value of the Claimant's Recognized Claim shall be zero." ECF No. 204-1, Ex. E (Plan of Allocation) at ¶21. Disputed Claimant No.

2 sold his Romeo Common Stock and had an overall market gain of $4,629.83 on his transactions. *See* Mejia Decl., ¶30, Ex. C (showing calculations under the Plan of Allocation resulted in an overall market gain).  Numerous courts have approved plans of allocation including market gain (or netting) provisions.  *See, e.g.*, *In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 246-47 (3d Cir. 2006) (upholding application of a "netting provision" providing that "all profits shall be subtracted from all losses on all transactions of CUC and Cendant publicly-traded securities during the class period to determine the net claim of each class member.  If a class member made a net profit, the value of his, her or its claim shall be zero."); *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *2-4 (overruling objection based on objector's "aggregate gain" from class period transactions where plan of allocation provided: "[t]o the extent an Authorized Claimant had an aggregate gain from his, her or its transactions in Citigroup common stock during the Class Period, the value of his, her or its total Recognized Loss will be zero.").

Accordingly, the Court should affirm Epiq's determination that Claim Numbers 800000125 and 800003929 should be rejected.

## V.    DISTRIBUTION OF THE NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution").  *See* Mejia Decl., ¶¶45(a)(i)-(iii).  Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly.  To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses

relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id*., ¶45(a)(iv).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id*., ¶45(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed as follows: (i) first, if Lead Counsel, in consultation with Epiq, determines sufficient funds remain to warrant the processing of Proofs of Claim received after September 10, 2024, such claims will be processed, and any such late claims that are otherwise valid, together with any late adjustments to Proofs of Claims received after November 15, 2024, will be paid distribution amounts or additional distribution amounts to bring them into parity with other Authorized Claimants who have cashed their checks ("Post September 10 Authorized Claimants"); and (ii) second, on a *pro rata* basis to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds and the September 10 Authorized Claimants. If Lead Counsel, in consultation with Epiq, determines it is not cost effective to process Proofs of Claim received after September 10, 2024, or adjustments to Proofs of Claims received after November 15, 2024, those claims will be not be processed or

9

adjusted, and the Second Distribution will be limited to Authorized Claimants in the Initial Distribution who cashed their Initial Distribution check and would receive at least $10.00 from such distribution based on their *pro-rata* share of the remaining funds. *Id.*

Additional re-distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective. At that point, the residual balance will be contributed—subject to Court approval—to Public Justice, a nonsectarian, not-for-profit 501(c)(3) organization dedicated to, among other things, investor education and advocacy. *See id.*, ¶45(c); *see also* Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10; and 11-12 (securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Plaintiffs respectfully request that the Court: (a) release and discharge all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from

10

any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014); *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

## VII.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

Based on the work performed by the Claims Administrator, the total amount of the fees and expenses charged and incurred by the Claims Administrator through October 31, 2024, is

11

$327,620.34, all of which has been paid. Mejia Decl., ¶44. The estimate to conduct the Initial Distribution is $13,837.50. *Id.* Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $13,837.50 in anticipation of the work that will be performed for the Initial Distribution.[6] *Id.*

## VIII. RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, one year after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claim Forms and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claim Forms and all supporting documentation. *Id.*, ¶45(e).

## IX. CONCLUSION

For these reasons, Plaintiffs respectfully requests that the Court grant the unopposed Motion and enter the proposed Distribution Order.

Dated: November 20, 2024

GLANCY PRONGAY & MURRAY LLP

By: /s/ Joseph D. Cohen
Joseph D. Cohen (admitted pro hac vice)
Kara M. Wolke (admitted pro hac vice)
Melissa C. Wright (admitted pro hac vice)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: jcohen@glancylaw.com
       kwolke@glancylaw.com
       mwright@glancylaw.com

---

[6] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund. *See* Mejia Decl., ¶44.

-and-

Gregory B. Linkh
230 Park Avenue, Suite 358
New York, New York 10169
Telephone:  (212) 682-5340
Email:  glinkh@glancylaw.com

Attorneys for Plaintiffs and the Settlement
Class

13

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: November 20, 2024                                     */s/ Joseph D. Cohen*
                                                             Joseph D. Cohen

14